UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SELINA SOULE, ET AL.<br>*Plaintiffs* | CIVIL ACTION NO.<br>3:20-CV-00201 (RNC) |
| v. | |
| CONNECTICUT ASSOCIATION<br>OF SCHOOLS, INC., ET AL.<br>*Defendants* | FEBRUARY 26, 2020 |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO INTERVENE**

The Commission on Human Rights and Opportunities ("Commission") seeks to intervene in this action pursuant to Fed. R. Civ. P. 24(a) and (b). The grounds are set forth below for intervention as of right or, in the alternative, permissive intervention.

**I.    STATEMENT OF FACTS**

On February 12, 2020, Selina Soule (Bianca Stanescu), Chelsea Mitchell (by Christina Mitchell), and Alanna Smith (by Cheryl Radachowsky) (collectively, "Plaintiffs") filed a complaint against the Connecticut Association of Schools, Inc. and the School Boards of Bloomfield, Cromwell, Glastonbury, Canton, and Danbury (collectively, "Named Defendants"). Compl., 1. The complaint alleges violations of Title IX. Id., at 46-49.

**II.    THE COMMISSION'S MOTION SHOULD BE GRANTED.**

"To be granted intervention as of right or by permission, an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." (Internal quotation marks omitted.) Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014).

### A. The Commission May Intervene as of Right.

"Federal Rule of Civil Procedure 24(a) provides for intervention as of right, stating in relevant part [that] [o]n timely motion, the court *must* permit anyone to intervene who... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." (Emphasis in original.) Id.; Fed. R. Civ. P. 24(a)(2).

### 1. The Commission's motion is timely.

"Timeliness defies precise definition, although it certainly is not confined strictly to chronology." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). "Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Id.

The Commission became aware of this action when it was filed, just two weeks ago. Discovery has not commenced. One of the Named Defendants has yet to appear. There need be no delay in the proceedings. Nor are there any unusual circumstances that would suggest otherwise. Certain issues are, however, beginning to be considered, as exemplified by the Court's upcoming status call. Denial of the motion could accordingly prejudice the Commission as a matter of timing. Given this posture, the Commission's motion is well within a timeframe which courts have found to be acceptable. See, e.g., Brennan v. N.Y.C. Bd. of Ed., 260 F.3d 123, 129 (2d Cir. 2001) (timeliness of intervention "not questioned" despite coming well after the completion of discovery).

2

## 2. The Commission has an interest in this case.

"Rule 24(a)(2) requires not a property interest but, rather, an interest relating to the property or transaction which is the subject of the action." (Internal quotation marks omitted.) Id., at 130. The Commission is the state agency "charged with the primary responsibility of determining whether discriminatory practices have occurred and what the appropriate remedy for such discrimination must be." Boy Scouts of Am. v. Wyman, 335 F.3d 80, 97 (2d Cir. 2003) (affirming decision in case where Commission permitted to intervene). "Unlike courts, which are concerned primarily with the enforcement of private rights although public interests may thereby be implicated, administrative agencies are predominantly concerned with enforcing public rights although private interests may thereby be affected." FCC v. National Broadcasting Co., 319 U.S. 239, 248 (1943) (Frankfurter, J., dissenting). "[I]n enforcing the laws against discrimination, the commission acts in a dual role: it protects both the public interest and the private complainant." CHRO v. Bd. of Ed. of Cheshire, 270 Conn. 665, 683 (2004).

"[M]any discriminatory practices made illegal under federal law are also made illegal under Connecticut statutes, [although] the Connecticut antidiscrimination laws are more extensive than their federal counterparts. *Compare* Conn. Gen. Stat. § 42a–60 *with* Title VII. To the extent that a discriminatory practice which is illegal under federal law is also illegal under Connecticut law, the [Commission] may assert jurisdiction over the claim." (Emphasis in original.) Holt v. Cont'l Group, Inc., 631 F. Supp. 653, 657 (D. Conn. 1985) (Burns, J.), aff'd, 788 F.2d 3 (2d Cir. 1986), cert. denied, 479 U.S. 839 (1986). The

Commission does so through Conn. Gen. Stat. § 46a-58(a),[1] which by its terms "makes it a violation of state law to deprive an individual of rights protected by federal law". City of Shelton v. Collins, Docket No. 3:12-CV-1176 (JBA), 2014 WL 1032765, *4 n.8 (D. Conn. March 14, 2014), aff'd sub nom. City of Shelton v. Hughes, 578 Fed. Appx. 53, 54 (2d Cir. 2014) ("Because § 46a–58(a) explicitly adopts federal antidiscrimination law as part of the substantive conduct it regulates, claimants may allege violations of federal law, such as Title VII of the Civil Rights Act of 1964, in actions before the CHRO."). See also Bd. of Ed. of Cheshire, 270 Conn. at 688 ("broad and inclusive language" of Conn. Gen. Stat. § 46a-58(a) "strongly suggests a reference to the broad and inclusive panoply of rights… derived from a broad and inclusive set of sources, namely, any federal or state laws, or either or both constitutions.").

While decisions such as Holt and Collins discussed the Commission's authority to enforce state law based on deprivations of Title VII rights, the same concept applies to deprivations of Title IX rights. Courts apply similar principles in Title IX cases as they do in Title VII cases. See, e.g., Menaker v. Hofstra Univ., 935 F.3d 20, 32 (2d Cir. 2019) ("[w]e apply similar principles in both Title VII and Title IX when seeking to identify discriminatory intent"); Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994) ("courts have interpreted Title IX by looking to the body of law… interpreting Title VII"). The Commission therefore has interest in cases where, as here, the Court will be called on to consider claims under Title IX. See SEC v. U.S. Realty & Imp. Co., 310 U.S. 434, 460

---

[1] Conn. Gen. Stat. § 46a-58(a) states, in relevant part: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of… sex, [or] gender identity or expression".

4

(1940) (SEC had "sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it [to] intervention").

### 3. The Commission's interest could be impaired by the disposition of this case.

"If the foundation of intervention practice is the prevention of injury, it seems that the right of intervention should logically be extended to federal and state governments wherever harm is threatened to the 'public interest.' The logic of thus extending to governmental agencies the right "to intervene in suits between private parties to protect a public interest" is confirmed by the cases." Raoul Berger, Intervention by Public Agencies in Private Litigation in the Federal Courts, 50 Yale L.J. 65, 66 (1940)

Courts have recognized that the Commission's interests may be negatively affected where a judicial decision has "impaired the integrity of the commission's decision-making process and its ability to carry out its responsibilities." Williams v. CHRO, 257 Conn. 258, 265–66 (2001). See also, State v. State, Docket No. CV-95-57527-S, 1996 WL 737513, *2 (Conn. Super. Ct. Dec. 16, 1996) (recognizing that Commission's "legal rights regarding its duties" as state civil rights enforcement agency "would be jeopardized by a ruling that is contrary to its established duties and which would adversely affect its ability to carry out its charter").

The Plaintiffs' complaint implicates issues relating to sex and gender identity; Compl. ¶ 2; both of which are explicitly protected by the antidiscrimination statutes enforced by the Commission. See, e.g., Conn. Gen. Stat. § 46a-58(a). The Connecticut Supreme Court has made clear that our state's antidiscrimination statutes are to be applied equally among the protected classes. Evening Sentinel v. Nat'l Org. for Women, 168 Conn. 26, 29 (1975) ("There is no indication in the text of [the statute] which would

permit classification based upon sex to be treated differently than classifications based upon race, religion, age, national origin or ancestry."); Connecticut Inst. for the Blind v. CHRO, 176 Conn. 88, 95 (1978) (applying same principle to physical disability).

A decision in this case which tips the scales in favor of one protected class over another could impair the Commission's ability to maintain this equality. "A different result might be reached if [the] court were able to draw upon administrative experience to form the basis of its judgment. It is clearly in the public interest that an agency's experience should not go for naught." Berger, supra, at 68.

### 4. The Commission's interest is not adequately protected by the existing parties to the action.

"An applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden should be treated as minimal.... The applicant must at least overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to the existing suit." (Internal citation and quotation marks omitted.) USPS v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). Though a private entity's interest may be similar to that of a government entity, the protections of the interests by the named party may still be inadequate where "the parties' primary motivations for achieving their objective diverge." Ass'n of Connecticut Lobbyists LLC v. Garfield, 241 F.R.D. 100, 103 (D. Conn. 2007).

The interest of the Named Defendants in this case is similar to that of the employer in Brennan v. N.Y.C. Bd. of Ed., which the Second Circuit noted "may have an interest in defending its... practices... [but] may have an equally strong or stronger interest in bringing [the] litigation to an end by settlements." Brennan, 260 F.3d at 133. Such a defendant "may, in short, behave like a stakeholder rather than an advocate." Id.

6

The role of the Commission, meanwhile, is that of an advocate for the public at large to ensure proper enforcement of Connecticut's civil rights and antidiscrimination statutes. Bd. of Ed. of Cheshire, 270 Conn. at 683. This interest extends to schools. Id., at 725 ("Although we do not deny the state board[ of education]'s expertise over matters involving the public schools, and that such expertise would certainly cover claims of various forms of discrimination, we also recognize the commission's expertise over such claims."). See Berger, supra, at 68 ("It is a commonplace that administrative activities have expanded in response to the need for expertise in dealing with highly technical problems."). In the absence of other parties speaking for a public interest rather than a private one, the Commission is not adequately represented by the existing parties.

### B. The Standards for Permission Intervention are Also Met.

"It is a living tenet of our society and not mere rhetoric that a public office is a public trust. While a public [agency] may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which [the agency] is officially concerned is involved in the litigation." Nuesse v. Camp, 385 F.2d 694, 706 (D.C. Cir. 1967).

Rule 24(b) allows for permissive intervention based on the same considerations as intervention by right. Floyd, 770 F.3d at 1057. For the reasons already explored, the Commission satisfies those considerations. But Rule 24(b)(2) also permits intervention by state agencies "if a party's claim or defense is based on: (A) a statute or executive order administered by the… agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2).

7

"Whether to allow intervention under Rule 24(b) is within the court's discretion, yet (d)istrict courts should not be[grudge] allowing a government agency to intervene in cases involving a statute it is required to enforce; indeed, a hospitable attitude is appropriate." Meyer v. Macmillan Pub. Co., Inc., 85 F.R.D. 149, 150 (S.D.N.Y. 1980) (quoting Blowers v. Lawyers Co-op. Pub. Co., 527 F.2d 333, 334 (2d Cir. 1975)). "[T]he whole thrust of [Rule 24(b)(2)] is in the direction of allowing intervention liberally to governmental agencies... seeking to speak for the public interest and... courts have permitted intervention accordingly." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1912 (3d ed. 2002).

The Connecticut Supreme Court has often "referred to the commission's first-order administrative oversight and enforcement [of claims of discrimination, and its]... initial responsibility for the investigation and adjudication of such claims." (Alterations in original.) Bd. of Ed. of Cheshire, 270 Conn. at 683. Among the statutes administered by the Commission is Conn. Gen. Stat. § 46a-58(a) which, as discussed, makes it an enforceable violation of state law to deprive someone of rights under Title IX. Id., at 688.

The Commission also enforces, through Conn. Gen. Stat. § 46a-58(a), violations of Conn. Gen. Stat. § 10-15c, which requires that children in public schools be afforded "an equal opportunity to participate in the activities, programs and courses of study offered in such public schools... without discrimination on account of... sex[ or] gender identity or expression". Conn. Gen. Stat. § 10-15c(a). See Bd. of Ed. of Cheshire, 270 Conn. at 706. The policies and practices being challenged here conform to Conn. Gen. Stat. § 10-15c(a), insofar as they allow students to participate in athletic activities in accordance with their gender identity. The claims in this case will therefore implicate the Commission's administration of Conn. Gen. Stat. § 46a-58(a).

8

The Commission has also administered executive orders, including Executive Order 56 issued by then-Governor Dannel Malloy. This Order recognized that "a school's failure to accommodate a student's gender identity or expression is subject to enforcement action by the Commission". Conn. Exec. Order 56 (Feb. 23, 2017). The Order also directed the Commission, together with the State Department of Education, to develop and present guidance regarding "policies that allow student's access to school facilities in a manner consistent with a student's gender identity or expression". Id. The claims, then, would implicate administration of this Executive Order as well.

## III.   CONCLUSION

"The public has an interest in availing itself of administrative experience when a private suit tests a carefully wrought administrative policy. And [an] agency itself may in a real sense claim that a decision which [affects] a particular administrative structure will result in an impairment of its functions." Berger, supra, at 88. "[While] the final power to determine whether the statute supports the administrative structure is lodged in the courts… in making that determination, courts should *hear* an agency when [the agency] believes that a given construction of a statute which it administers impairs its functions or runs counter to the public interest." (Emphasis in original.) Id., at 88–89. The Commission satisfies the criteria for intervention. Its Motion to Intervene should therefore be granted.

**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

By: /s/ Michael E. Roberts
Michael E. Roberts [ct30824]
Human Rights Attorney
Commission on Human Rights & Opportunities
450 Columbus Blvd., Ste. 2, Hartford CT 06103
Tel: (860) 541-4715 | Fax: (860) 246-5265
Email: michael.e.roberts@ct.gov

9

## CERTIFICATION

Electronic service will be made through CM/ECF transmission notice to:

Attorney Elizabeth Mott Smith
Attorney Johanna G. Zelman
Ford Harrison, LLP
185 Asylum St., Ste. 610
Hartford, CT 06103
esmith@fordharrison.com
jzelman@fordharrison.com

Attorney David S. Monastersky
Howd & Ludorf, LLC
65 Wethersfield Ave.
Hartford, CT 06114-1190
dmonastersky@hl-law.com

Attorney Peter J. Murphy
Attorney Linda L. Yoder
Shipman & Goodwin, LLP
One Constitution Plaza
Hartford, CT 06103
pjmurphy@goodwin.com
lyoder@goodwin.com

Attorney Dan Barrett
American Civil Liberties Union – CT
765 Asylum Ave., 1st Fl.
Hartford, CT 06105
dbarrett@acluct.org

Attorney Howard M. Wood, III
Phelon, Fitzgerald & Wood
773 Main St., Manchester, CT 06040
howard.wood@pfwlaw.com

Attorney Kristen Waggoner
Attorney Christiana M. Holcomb
Alliance Defending Freedom
440 First St. NW, Ste. 600
Washington, DC 20001
kwaggoner@adflegal.org
cholcomb@adflegal.org

Attorney Jeff Shafer
Attorney Roger Greenwood Brooks
Alliance Defending Freedom
15100 N. 90th St., Scottsdale, AZ 85260
jshafer@adflegal.org
rbrooks@adflegal.org

Service will be made by first class mail to:

Danbury Public Schools Board of Education
63 Beaver Brook Rd, Danbury, CT 06810

                                              /s/ Michael E. Roberts
                                              Michael E. Roberts [ct30824]