UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SELINA SOULE, a minor, by Bianca Stanescu, her mother; CHELSEA MITCHELL, a minor, by Christina Mitchell, her mother; ALANNA SMITH, a minor, by Cheryl Radachowsky, her mother,<br><br>Plaintiffs,<br><br>v.<br><br>CONNECTICUT ASSOCIATION OF SCHOOLS d/b/a CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE; BLOOMFIELD PUBLIC SCHOOLS BOARD OF EDUCATION; CROMWELL PUBLIC SCHOOLS BOARD OF EDUCATION; GLASTONBURY PUBLIC SCHOOLS BOARD OF EDUCATION; CANTON PUBLIC SCHOOLS BOARD OF EDUCATION; DANBURY PUBLIC SCHOOLS BOARD OF EDUCATION,<br><br>Defendants. | Case No.: 3:20-cv-00201(RNC)<br><br>**MEMORANDUM IN OPPOSITION TO MOTION OF THE COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES TO INTERVENE AS DEFENDANTS**<br><br>March 6, 2020 |

## Introduction

The Connecticut Commission on Human Rights and Opportunities (CHRO) appears to believe that it holds a roving commission to opine on non-discrimination laws in all contexts. It does not. CHRO "is a state agency established under state law to enforce state-created rights." *Holt v. Continental Group, Inc.*, 631 F. Supp. 653, 657 (D. Conn. 1985). This lawsuit is exclusively concerned with federal law and federally created rights of Plaintiffs. CHRO has neither any statutory authority to speak to these questions, nor any legitimate interests that could

1

satisfy the requirements for intervention as of right or permissive intervention. The desire of this state-created commission to see federal law interpreted according to its wishes is not an "interest" that could justify intervention.

In addition to (1) a timely filing, the applicant for intervention must "(2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. . . . Failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (cleaned up). Because it has no cognizable interest, CHRO fails the second, third, and fourth factors required for intervention as of right or by permission.[1]

**I.      CHRO has no statutory authority to intervene in this litigation.**

At the threshold, CHRO identifies no Connecticut statute that grants it authorization to seek party status in federal litigation, and there is none. "Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." *Castro v. Viera*, 207 Conn. 420, 428 (1988). The general authority to litigate on behalf of Connecticut's interests and institutions is granted to the State Attorney General, *see* Conn. Gen. Stat. § 3-125, who has not sought to intervene. While a specific statute grants CHRO authority to initiate lawsuits only in *state* Superior Court and only in specific contexts for specified types of claims, Conn. Gen. Stat. § 46a-55(c), no such statutory power is given it to intervene in federal litigation. This

---

[1] "The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed.R.Civ.P. 24(a)(2), or 'permissive' under Fed.R.Civ.P. 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238, 240 (2d Cir. 2006), citing *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 300 n.5 (2d Cir. 2003).

narrow authorization to litigate, together with the complete absence of any general authorization to speak for Connecticut law or interests in federal court, leaves no room to imply such free-ranging authorization. It is true that CHRO was permitted to intervene in *Boy Scouts of Am. v. Wyman*, 335 F.3d 80 (2d Cir. 2003), but its statutory authority to do so was not challenged or considered in that case, which in any event involved a specific challenge to the constitutionality of specific "declaratory rulings" issued by CHRO under state law. *Id*. at 86. No state law and no ruling by CHRO is challenged in the present litigation.

**II.     CHRO is not entitled to intervene as of right.**

    A.     <u>CHRO has no interest in this case that would authorize its intervention.</u>

No doubt it is often true that many individuals and state institutions are "interested" in litigation that may set important precedent. Some may seek leave to file amicus briefs; others may publish opinion commentary or petition legislators to change the law. But few have a "legal interest" within the meaning of the test for intervention under federal law. CHRO may be interested, but it has no "interest" in the present litigation. *cf. H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.*, 797 F.2d 85 (2d Cir. 1986) (finding that state "fails to assert 'a legal interest as distinguished from interests of a general and indefinite character'") (citation omitted).

In *Brewer v. Republic Steel Corp.*, 513 F.2d 1222 (6th Cir. 1975), the Sixth Circuit reviewed a similar motion by the Ohio Civil Rights Commission to intervene in a private federal lawsuit filed under Title VII. The Commission argued that it had an interest to intervene under Rule 24 because it has enforcement responsibility for state civil rights laws that are comparable to federal law, and the court's rulings on federal law may impair its ability to enforce state laws. *Id.* at 1223. The court ruled against the Commission, explaining:

> The Commission's duty and its interest lies in enforcing the Ohio civil rights statutes, not the parallel federal laws. The federal and state provisions relating to employment discrimination overlap in application. Nevertheless, they do provide separate and independent avenues of relief that were not designed to be pursued through a unitary enforcement procedure. . . . No doubt the Commission would find it convenient if the result reached in the federal suit were consistent with the Commission's assessment of the defendants' liability under the [state] statutes. This is not, however, the type of interest contemplated by Rule 24(a).

*Id*. at 1223-24.

In another context, the Second Circuit held that the "dispositive question" with respect to a claimed "interest" was whether the proposed intervenor had a claim under the governing statute at issue in the litigation: "[i]f it did not, [proposed intervenor] had no interest to protect, and consequently, no right to intervene." *R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238, 241 (2d Cir. 2006). CHRO has neither claims, rights, nor obligations under Title IX. It has no authority to enforce Title IX. It cannot be held liable to these Plaintiffs (or any other) based on any claim under Title IX. In short, it has no legal interest in the outcome of this case.

In its memorandum, CHRO consistently blurs federal and state law and jurisdiction, but this is error. CHRO may be charged by Connecticut with "with the primary responsibility of determining whether discriminatory practices have occurred and what the appropriate remedy for such discrimination must be," *Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 97 (2d Cir. 2003) (CHRO Mem. 3), but this is necessarily only with respect to state law, and through state venues assigned it by statute. CHRO has neither authority over nor expertise in the interpretation and enforcement of federal antidiscrimination law. CHRO misunderstands *Holt v. Continental Grp.*, 631 F.Supp. 653, 657 (D. Conn. 1985), *aff'd*, 788 F.2d 3 (2d Cir. 1986), when it takes out of context the statement that "[t]o the extent that a discriminatory practice which is illegal under federal law is also illegal under Connecticut law," CHRO "may assert jurisdiction over the

4

claim." (CHRO Mem. 3.) That court was merely noting the obvious fact that both federal and state law may outlaw the same act. It was *not* suggesting that CHRO has any authority to interpret or enforce any federal law. Precisely to the contrary, the *Holt* court noted the limited jurisdiction of CHRO, emphasizing that "the CCHRO is a state agency established under state law to enforce state-created rights." *Holt*, 631 F.Supp at 657.

Thus, the fact that the *federal* Securities and Exchange Commission "had sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it" to intervene in a *federal* bankruptcy filed by an enforcement target to evade the SEC's oversight, *Securities and Exchange Comm'n. v. U.S. Realty and Imp. Co.*, 310 U.S. 434 (1940) (*see* CHRO Mem. 5), does not suggest in the least that a state entity has a legally cognizable interest in opining in federal court on the proper interpretation of federal law.

CHRO variously argues the rather opposite points that because there might be *conflicts* between Title IX and state law (CHRO Mem. 5-6, 8-9), or because state law is definitionally *tied* to Title IX (CHRO Mem. 3-4, 8), CHRO has an "interest" in the interpretation of Title IX. But given that federal law is by its very nature nationwide in scope, if CHRO's purported "interest" in seeing Title IX interpreted according to its druthers is cognizable and sufficient to justify intervention, then *representatives of all 50 states* have absolutely equal interests in being parties to this litigation, since the application of Title IX may equally affect their citizens and the application of their own state laws "relating to sex and gender identity" (CHRO Mem. 5). But that would be chaos, and that is not the law.

If Connecticut state law in fact diverges from the requirements of Title IX, this creates no novel question or problem for CHRO in its legitimate role of enforcing state law. Depending on the particulars, either Connecticut citizens must comply with both, or (if they are in conflict) then

5

the Supremacy Clause renders the state law invalid and unenforceable. U.S. CONST. art. VI, cl. 2; "Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are 'without effect.'" *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (citation omitted). Title IX was indeed *intended* to override state law regimes that deprive girls and women of equal opportunities in athletics. For example, federal interpretation of Title IX for decades has been recognized to *require* separate male and female athletic competition programs in some contexts. *See* ECF 12-1, Pls. Mem. Supp. of Prelim. Inj. at 13. There is no need to decide whether CHRO is correct that its vaguely stated policy goal of applying state antidiscrimination statutes "equally among the protected classes" (CHRO Mem. 5) *prohibits* separating athletic competitions by sex; federal law controls and inconsistent state law cannot be enforced. "[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt Ass'n.*, 505 U.S. 88, 108 (1992) (internal quotation marks omitted).

If, on the other hand, Connecticut has chosen by statute to *define* its own state law non-discrimination requirements by reference to federal law (CHRO Mem. 4; Conn. Gen. Stat § 46a-58(a)), neither does that legislative choice give CHRO a legal "interest" in the construction of federal law by federal courts. Indeed, it cannot be true that a state can grant itself an "interest" and thus roving power to intervene in private federal civil rights litigation merely by linking state law to federal law. The Connecticut legislature is free to retain or break the statutory link between Connecticut anti-discrimination laws and Title IX. It is not free to intervene in federal litigation to opine on what federal law should be.[2]

---

[2] CHRO cites two cases in which Connecticut courts have flexibly interpreted CHRO's statutory authority to enforce Connecticut law. *See Williams v. Comm'n. on Human Rights and*

B.      CHRO has not shown inadequate representation by the named defendants.

CHRO has not shown any legally cognizable interest in this litigation, and it has also entirely failed to show that even the supposed "interests" it seeks to assert will not be adequately represented by the named defendants. "[T]he movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001). "Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Washington Elec. Co-op, Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990). This is all the more true where, as here, the named defendant school districts are public agencies. "The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*." *U.S. v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999). Here, the named governmental defendants not only themselves developed and adopted the policy challenged by plaintiffs, but have affirmatively declared that they "intend to vigorously defend the lawfulness of their policies." ECF 56, Bloomfield and Cromwell Bd.s of Educ. Mem. in Supp. of Yearwood and T.E. Mot. to Intervene at 2. Meanwhile, CHRO makes no effort, strong or otherwise, to show inadequacy. The named defendants' representation is thus presumed adequate. *Nat. Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 62 (2d Cir. 1987) (adequate representation by named parties found where proposed intervenor failed to show they would be less able to assert the defenses it would present).

---

*Opportunities*, 257 Conn. 258, 259-60 (2001), *State v. State*, Docket No. CV-95-57527-S, 1996 WL 737513 *2 (Conn. Super. Ct. Dec. 16, 1996) (which CHRO cites at Mem. 5). Both cases are utterly irrelevant, saying nothing at all about any CHRO authority to intervene in private actions in federal court, or to enforce federal law.

7

CHRO makes a vague claim to special "expertise in dealing with highly technical problems" (CHRO Mem. 7), but this is neither demonstrated nor sufficient. CHRO has no jurisdiction to enforce Title IX, and has not demonstrated any special expertise in interpreting it or its implementing federal regulations and authoritative interpretations. Nor has it shown that counsel for the named defendants are not equally or better capable of explicating these to the Court. *See Allco Finance Ltd v. Etsy*, 300 F.R.D. 83, 87-88 (D. Conn. 2014) ("Intervenors' speculative concerns are insufficient to rebut the presumption that the existing parties will adequately represent their interest."); *Great Atlantic & Pac. Tea Co., Inc. v. Town of E. Hampton*, 178 F.R.D. 39, 43 (E.D.N.Y. 1998) (rejecting as "speculative" the notion that the movant "might be more persuasive" due to its particular perspective and expertise).

**III.    Permissive intervention should also be denied.**

The lack of cognizable interest and failure to demonstrate inadequate representation detailed above equally weigh against granting permissive intervention. *See United States v. New York City Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (listing factors relevant to grant of permissive intervention).

CHRO attempts to buttress its plea for permissive intervention by invoking Fed. R. Civ. P. 24(b)(2), which provides for permissive intervention by a government agency "if a party's claim or defense is based on: (A) a statute or executive order administered by the … agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order."

The Rule has no application here. The basis for plaintiff's claims is exclusively federal Title IX, which CHRO does not administer. Nor can any state law or regulation provide a defense against a violation of Title IX.  (*See supra* p. 6.) CHRO's discussions of Conn. Gen.

Stat. § 10-15c (CHRO Mem. 8), and its strained construction of a Connecticut Executive Order (CHRO Mem. 9),³ are thus irrelevant to any "claim or defense."

Attempting to shift the focus away from claims and defenses, CHRO cites *Meyer v. Macmillan Pub. Co., Inc.* 85 F.R.D. 149, 150 (S.D.N.Y. 1980), to assert a general "hospitable attitude" to intervention by government agencies "in cases involving a statute [the agency] is required to enforce." But both *Meyer* and *Blowers v. Lawyers Co-operative Publishing Company*, 527 F.2d 333 (2d Cir. 1975), on which *Meyer* relied, involved requests by the *federal* EEOC to intervene in cases asserting violations of *federal* Title VII, which the EEOC is tasked to enforce. But CHRO is powerless, not "tasked," to enforce Title IX. As reviewed above, Connecticut law may track federal law, but if CHRO engages in any enforcement, it is of state, not federal, law. *See* pp. 4-6, above. No precedent invites a "hospitable attitude" towards *state* entities that wish to kibitz on the interpretation of federal law. CHRO has identified no legitimate justification for permissive intervention.

## Conclusion

"Congress did not adopt or incorporate state law into the substantive provisions of Title [IX]. . . . [B]ecause of the separate, self-contained nature of Title [IX] and the [state] civil rights act, the Commission does not have the kind of substantial interest in this litigation that Rule 24(a) contemplates." *Brewer,* 513 F.2d at 1224. For this reason and those set forth above, the

---

³ This Executive Order states in a preamble that public school students "have an equal opportunity to participate in school activities *without regard to their gender identity* or expression." (Emphasis added.) This precisely describes the operation of Title IX, whereby students participate in sex-segregated athletic competitions based on sex, "without regard to their gender identity." The CIAC policy, on the contrary, requires schools to permit male students to participate in female athletic competitions "without regard to their sex," and instead based *solely* with "regard to their gender identity."

9

motion of the Connecticut Commission on Human Rights and Opportunities to Intervene as a Defendant should be denied.

                    Respectfully submitted this 6th day of March, 2020.

By: *s/ Howard M. Wood II*

Howard M. Wood III
CT Bar No. 68780, CT Fed. Bar No. 08758
James H. Howard
CT Bar No 309198, CT Fed. Bar No 07418
Fiorentino, Howard & Petrone, P.C.
773 Main Street
Manchester, CT 06040
Telephone: (860) 643-1136
Fax: (860) 643-5773
Email: howard.wood@pfwlaw.com
Email: james.howard@pfwlaw.com

Roger G. Brooks
CT Fed. Bar No. PHV10498
Jeffrey A. Shafer
CT Fed. Bar No. PHV10495
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
Email: rbrooks@ADFlegal.org
Email: jshafer@ADFlegal.org

Kristen K. Waggoner
CT Fed. Bar No. PHV10500
Christiana M. Holcomb
CT Fed. Bar No. PHV10493
Alliance Defending Freedom
440 First St. NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: kwaggoner@ADFlegal.org
Email: cholcomb@ADFlegal.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2020, a copy of the foregoing Memorandum in Opposition to Motion of Connecticut Commission on Human Rights and Opportunities to Intervene as Defendant was filed electronically with the Clerk of Court. Service on all parties will be accomplished by operation of the court's electronic filing system.

                                          *s/ Howard M. Wood II*
                                          Attorney for Plaintiffs