UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SELINA SOULE, a minor, by Bianca Stanescu, her mother; CHELSEA MITCHELL, a minor, by Christina Mitchell, her mother; ALANNA SMITH, a minor by Cheryl Radachowsky, her mother, | : : : : : | 3:20-cv-00201-RNC |
| Plaintiffs | : : | |
| v. | : : | |
| CONECTICUT ASSOCIATION OF SCHOOLS, INC. d/b/a CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE; BLOOMFIELD PUBLIC SCHOOLS BOARD OF EDUCATION; CROMWELL PUBLIC SCHOOLS BOARD OF EDUCATION; GLASTONBURY PUBLIC SCHOOLS BOARD OF EDUCATION; CANTON PUBLIC SCHOOLS BOARD OF EDUCATION; DANBURY PUBLIC SCHOOLS BOARD OF EDUCATION | : : : : : : : : : : : : : | March 13, 2020 |
| Defendants. | | |

## DEFENDANTS' INITIAL
## SUMMARY OF THE ISSUES

Pursuant to the Court's February 27, 2020 order, defendants Bloomfield Board of

Education, Cromwell Board of Education, Glastonbury Board of Education, Canton Board of

Education, and Danbury Board of Education (collectively the Board of Education Defendants),

and the Connecticut Association of Schools, Inc., d/b/a Connecticut Interscholastic Athletic

Conference (CIAC),  submit this initial outline of their position on the issues involved in this

case, which need to be addressed further among the parties at the March 19, 2020 meet and

1

confer conference. In the interest of efficiency, Defendants have consulted with counsel for Proposed Intervenors Andraya Yearwood and Thania Edwards on behalf of her daughter, T.M., and have included the position of Proposed Intervenors with respect to additional factual and legal issues involved in this case.

This outline is based on the Defendants' current assessment of the pleadings, and Defendants all collectively and individually reserve the right to make other and additional arguments during and after the March 19th conference, and to pursue any relief available under the applicable rules and statutes.

**I.      Jurisdictional Issues.**

    **A.      Subject Matter Jurisdiction**

Pursuant to the Complaint filed on February 12, 2020, this Court has original federal jurisdiction over claims made in this action alleging violations of Title IX of the Civil Rights of Act of 1964 as amended ("Title IX"). Title 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), 2201. Jurisdiction of this court is further invoked pursuant to Title 42 U.S.C. § 1988. Although the Court has general subject matter jurisdiction over Title IX claims, at this time Defendants may raise the following issues regarding subject matter jurisdiction.

        1.      *Whether CIAC is subject to Title IX.*

By its terms, Title IX applies only to recipients of federal funds. See Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 460 (1999). The Board of Education defendants do not contest that they are recipients of federal funds and subject to Title IX. The CIAC however is a private non-profit organization organized under the laws of the State of Connecticut. It does not receive any direct federal funding. Plaintiffs allege that CIAC is subject to Title IX because it

"indirectly receives federal funding" from its public schools members in the form of dues and also because it is "controlled" by member schools that are subject to Title IX.  CIAC disagrees.

    2.    *Whether Plaintiffs lack standing to pursue their claims.*

Article III, § 2, cl. 1 of the Constitution states requires that for this Court to have jurisdiction over this Complaint, it must present a case and controversy, meaning that Plaintiffs must have suffered an actual harm to have standing in this Court. "Standing under Article III… depends on an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  (Internal alterations omitted). Citizens for Responsibility & Ethics in Wash. v. Trump, 939 F.3d 131, 148 (2d Cir. 2019) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)).  As this matter was not brought as a class action, the three individual plaintiffs may not seek relief on behalf of others. In other words, the plaintiffs lack standing to purport to seek injunctive or other relief for sports, meets or events for which they have not sought to participate or are ineligible to participate because of the schools that they attend.  The plaintiffs need to amend the Complaint to limit the claims accordingly.  Hereafter, defendants will address its discussion to this narrower set of allegations without waiving these broader standing claims.

These three Plaintiffs bring claims based on harm they have purportedly suffered by finishing behind a runner who is transgender in a specific championship track event in the past, and purported injuries they may suffer at championship track meets in Spring 2020.  For example, Plaintiffs claim that but for the participation of students Andraya Yearwood and T.M. in the Indoor Track 55m event at the 2019 State Open, Plaintiff Chelsea Miller would have finished 2nd instead of 4th.  See Complaint ¶ 90.  Such allegations will be referred to as "placement injuries."  Plaintiffs also allege that on one occasion in June 2017 for Chelsea

Mitchell (See Complaint ¶ 86) and one occasion in 2019 for Selina Soule (See Complaint ¶ 90) they ran slower times than either T.M. or Ms. Yearwood, or both (and four other cisgender athletes), and therefore finished outside of the top six places in their races, which prevented them from moving on to the New England Championships. Such allegations will be referred to as "advancement injuries."

Defendants submit that these allegations are insufficient to confer standing upon the Plaintiffs to pursue the claims made and relief sought in this lawsuit against any of the Defendants. More specifically, Defendants contend that neither the alleged placement injuries nor the alleged advancement injuries that occurred in the past are sufficient to constitute an injury under Title IX. In particular, with regard to a claim for injunctive relief to prohibit Ms. Yearwood and T.M. from participation in **any** track and field events during the spring 2020 season that have been "sponsored, organized or participated in" by any of the Defendants, Plaintiffs' claims are overbroad because these claims include meets in which neither Ms. Yearwood nor T.M. will participate as such meets are limited to students attending specific schools. Similarly, these individual plaintiffs have no standing to complain about and seek to deprive Ms. Yearwood or T.M. from participating in events in which they do not plan to compete. Further, with regard to the select few events in which these runners potentially may be participating in the same events at the same meet, the allegations of potential harm are not (a) concrete and particularized, and (b) actual or imminent, but instead raise conjectural or hypothetical injuries. Such allegations are insufficient to establish injury in fact. Accordingly, Plaintiffs lack standing to proceed against any of the Defendants.

       3.    *Plaintiffs lack standing to pursue claims against Cromwell and Bloomfield Boards of Education.*

Plaintiffs attend school in Glastonbury, Canton, and Danbury. They do not attend school in Cromwell or Bloomfield. Yet, Plaintiffs also have named Cromwell and Bloomfield as defendants in this matter. Because Plaintiffs do not attend school in either district, however, Cromwell and Bloomfield contend that Plaintiffs lack standing to proceed with their claims against either district. See Biediger v. Quinnipiac Univ., No. 3:09-cv-621 (SRU), 2010 U.S. Dist. LEXIS 50044, at *14-15 (D. Conn. May 20, 2010) ("I am concerned whether people who have not enrolled and have no plans of enrolling at Quinnipiac have standing to bring this Title IX claim….") (citing Preyer v. Dartmouth Coll., 968 F. Supp. 20, 25-26 (D.N.H. 1997) (holding that plaintiff lacked standing to sue under Title IX because she was not a student); see also, e.g., Arora v. Daniels, No. 3:17-cv-134, 2018 U.S. Dist. LEXIS 55777, at *25 (W.D.N.C. Apr. 2, 2018) ("Because there is no authority in this Circuit or elsewhere supporting [the plaintiff]'s statutory standing to bring suit against an institution which, at the time of the allegations, she did not attend, was not an applicant for, and did not receive federal educational benefits from, her claims under Title IX must be dismissed.")

        4.    *Plaintiffs lack standing to pursue claims against Glastonbury, Canton and Danbury Boards of Education*

Plaintiffs attend school in Glastonbury, Canton, or Danbury. There is no claim in this action that these schools have permitted athletes with an XY genotype to compete on their rosters as girls in any event in which the plaintiffs have participated or allege that they will be participating. The injunctive relief sought, that these schools must somehow prevent athletes with an XY genotype from participation in events sponsored by the CIAC and that these schools change the records of events sponsored by the CIAC, is beyond the authority and control of these Defendants. The only potential relief against these Defendants would be an injunction against any participation by these schools in girls' track and field events that include athletes with an XY

genotype. The Plaintiffs' should clarify if they are seeking such relief because this is not clear from the Complaint as written. For these reasons, the Plaintiffs lack standing to seek the requested relief against these defendants.

## II.     Legal and Factual Issues That Need To Be Addressed By The Parties Or The Court.

### A.     Claims of Plaintiffs:

Defendants contend that the following issues need to be resolved either between the parties or by the Court. These include the following:

    1.     In the Complaint, Plaintiffs repeatedly use the names of minor children who are not parties to this action. Such conduct is a blatant violation of FRCP 5.2, which provides that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party . . . making the filing may only include . . . (3) the minor's initials." Plaintiffs should be compelled to correct this violation of Rule 5.2.

    2.     To the extent that the Plaintiffs do not amend the Complaint to limit the allegations as discussed in the standing section above, the Court will need to the address the standing of each of the Plaintiff to bring the claims and seek the requested relief from each of the Defendants. . Plaintiffs have not sought to bring a class action or other action on behalf of other individuals or entities. Rather, they have file this action as individuals. However, Plaintiffs include factual allegations throughout the Complaint relating to athletes who are not parties to this action and for whom Plaintiffs cannot seek any relief. These allegations include claimed results from track meets in jurisdictions across the country, as well as within Connecticut. Plaintiffs also include allegations regarding sports other than track and field, and meets and events in which the Plaintiffs are not eligible to participate, have chosen not to participate and in which the Plaintiffs

have not yet qualified to participate. Defendants contend that these allegations are immaterial and impertinent, and should be removed without necessity of a FRCP 12(f) motion.

        3.      As discussed above, the relief sought extends well beyond the scope of the factual allegations in the Complaint, which focus on girls' track events. Plaintiffs are only entitled to seek relief with regard to their individual claims regarding the girls' track events in which they compete against identified athletes with an "XY genotype." If the Plaintiffs do not limit the claims for relief to the claims that each is entitled to make as an individual, the Court will need to rule on this issue.

        4.      As an initial matter, this Court will need to determine the definition of "sex" as it is used in Title IX with respect to sex-separated athletic activities. Plaintiffs define "sex" for purposes of Title IX as being based on "biological" sex. Plaintiffs further allege that any individual who has an "XY genotype" is male and must be prohibited under Title IX from participation in any sporting activities covered by Title IX that have been limited to girls, women or females. Complaint pg. 1-2, 49. They allege, therefore, that Ms. Yearwood and T.M. are "male" based on their chromosomes. Defendants disagree. Title IX does not define sex as chromosomes and does not require schools to exclude boys and girls who are transgender from playing on boys' and girls' teams. Cf. Parents for Privacy v. Barr, 949 F.3d 1210, 1227 (9th Cir. 2020) ("[J]ust because Title IX authorizes sex-segregated facilities does not mean that they are required, let alone that they must be segregated based only on ["]biological sex["] and cannot accommodate gender identity."). Proposed Intervenors T.M. and Yearwood have advised Defendants that they would submit expert medical testimony to rebut Plaintiffs' assertions that a person's "sex," in the context of sex-separated athletic competitions, can or should defined by chromosomes. Proposed Intervenors would also submit testimony from themselves, their coaches, and their teammates to establish: the

7

fact that they are girls and are treated as girls in all aspect of their lives; their medical diagnosis of and treatment for gender dysphoria; and the steps they have taken as part of medical and social transition to live as girls in all aspects of life.

5. Plaintiffs should clarify the nature of the injunction sought, and the legal standard applicable to the requested injunction. At this time, Defendants understand Plaintiffs to be seeking a mandatory injunction to change the status quo, and therefore understand that a higher standard of proof is applicable to Plaintiffs. See, e.g., Patterson v. Lichtenstein, No. 3:18-CV-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020) ("Where the plaintiff seeks a mandatory injunction, i.e., an injunction seeking to order the defendants to perform positive acts, he must meet a higher standard. . . . A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief.'"). If Plaintiffs disagree, they should provide the legal and factual basis for that disagreement.

### B. Defenses and Claims of the Defendants:

Defendants contend that there are numerous legal issues and defenses that need to be resolved either between the parties or by the Court. These include the following:

1. *Whether OCR guidance is entitled to any deference from the Court.*

On May 13, 2016, the U.S. Department of Justice ("DOJ") and the U.S. Department of Education ("DOE") issued a joint "Dear Colleague Letter on Transgender Students" summarizing public schools' obligations regarding transgender students under Title IX and explaining how those departments evaluate a school's compliance with those obligations. That position included notice that Title IX protected students from discrimination in school on the basis of gender identity, including in the context of names and pronoun use, restroom access, and

8

athletic participation. The guidance made clear that Title IX allows students to participate in sex separated activities and access sex separated facilities consistent with their gender identity.

On February 22, 2017, the DOE and DOJ issued another Dear Colleague Letter that rescinded the May 2016 DOJ and DOE guidance. As one court has noted, "the 2017 Guidance did not propound any 'new' or different interpretation of Title IX or the Regulation, nor did the 2017 Guidance affirmatively contradict the 2015 and 2016 Guidance documents. It instead appears to have generated an interpretive vacuum pending further consideration by those federal agencies of the legal issues involved in such matters." Evancho v. Pine-Richland Sch. Dist., 237 F. Supp. 3d 267, 298 (W.D. Pa. 2017). At this time, therefore, Defendants believe that the Court will need to address what deference is applicable to OCR's prior actions.

> 2. *Whether the Court needs to make a preliminary finding on the definition of sex for purposes of sex-segregated teams under Title IX includes transgender females.*

Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." As mentioned previously, Plaintiffs contend that the definition of sex does not include transgender girls for purposes of sex separated sports teams. Other courts have disagreed with such a rigid definition of sex in regard to such activities, most recently the Ninth Circuit when addressing a challenging addressing sex-segregated bathroom facilities. See Parents for Privacy, 949 F.3d at 1227 (rejecting plaintiffs claim that "Title IX's text and its legislative history make clear that the permitted basis on which 'separate' facilities may be segregated --'sex'--refers to 'biological sex' as assigned at birth, and cannot encompass gender identity."). The parties and the Court need to decide whether, if Plaintiffs are incorrect, their claims fail as a matter of law and whether there is a need to proceed

with additional analysis under the effective accommodation and equal treatment forms of analysis set forth in McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004).

> 3. *Whether State Law Protecting Transgender Individuals has Bearing on Defendants' Obligations under Title IX as Applicable to this Case.*

Connecticut law specifically protects transgender students. Conn. Gen. Stat. § 10-15c(a) states that all students in the State of Connecticut "shall have…an equal opportunity to participate in the activities, programs and courses of study offered in [] public schools…without discrimination on account of…sex, gender identity or expression…." Thus, the Board of Education Defendants would be in violation of State law if they were to prohibit the participation of athletes who are transgender in interscholastic track events. If this Court were to find that Plaintiffs are correct in how they assert "sex" should be defined by Title IX, the Court may be required to then determine whether Title IX preempts Conn. Gen. Stat. § 10-15c(a). In the alternative, if Conn. Gen. Stat. § 10-15c(a) is not preempted by Title IX, then this Court may not need to decide the meaning of "sex" under Title IX.

> 4. *Whether Congress clearly and unambiguously put Defendants' on notice of the interpretation of sex under Title IX for purposes of sex separated athletics.*

The Spending Clause to the U.S. Constitution precludes the federal government from imposing an obligation on States, as a condition of receipt of federal funds, that Congress did not make clear in the statutory language. Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 24-25 (1981). When interpreting language in spending legislation, courts insist that Congress speak with a clear voice, recognizing that there can, of course, be no knowing acceptance of the terms of the putative contract if a State is unaware of the conditions imposed by the legislation or is unable to ascertain what is expected of it. LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 640 (1999). "Looking at both the specific and broader context of the use of the term

'sex,' neither Title IX nor the implementing regulations define the term 'sex' or mandate how to determine who is male and who is female …." Board of Ed. of the Highland Local Sch. Dist. v. United States Dep't of Education, 208 F. Supp. 3d 850, 867 (S.D. Ohio 2016). Courts have found, therefore, that "the term 'sex' as used in Title IX is ambiguous as applied to transgender students." Kasper v. School Board of St. Johns County, 318 F. Supp. 3d 1293, 1321 (M.D. Fl. 2018).  Before the Court can determine if Defendants have violated Title IX, the Court must find that Congress clearly and unambiguously gave notice to Defendants of how sex is interpreted until Title IX.

        **C.**      **Defenses and Claims of Third Party Defendants:**

As the Court is aware, both T.M. and Ms. Yearwood have moved to intervene in this matter.  Given Plaintiffs' decision to directly name both individuals in the Complaint, the specific allegations made against both individuals, and the requested relief that, if granted, would directly impact the final season of high school sports for those two girls, the Defendants have informed the Court that they have no objection to both girls intervening in this matter. The CHRO also has moved to intervene in this matter. Because the CHRO is the agency charged with enforcing this State's civil rights laws, including, but not limited to, Conn. Gen. Stat. § 10-15c(a), and this lawsuit addresses the civil rights of the Plaintiffs as well as transgender girls such as T.M. and Ms. Yearwood, the Defendants have no objection to the CHRO intervening as well.

Proposed Intervenors have advised that, in addition to the issues raised above, other material factual and legal question include:

        1.      Whether Plaintiffs' factual allegations regarding "athletic advantage" are correct. Andraya and T.M. both receive gender affirming hormone therapy and have reduced their levels of testosterone to the range typical for non-transgender women. Proposed Intervenors intend to

11

submit expert testimony to rebut Plaintiff's assertions that they—or other transgender athletes—have an "athletic advantage" when compared to other elite female athletes.

2.      Whether Plaintiffs factual allegations regarding recruitment and scholarship opportunities are correct.

3.      Whether Plaintiffs have stated a claim for denial of "effective accommodation" under 1979 Policy Statement § VII.C.4.b.  Plaintiffs cite no authority for the proposition that Title IX provides a cause of action for girls to exclude other girls from competing on their team.  None of Plaintiffs' cases about competition with boys dealt with girls who are transgender and have been receiving puberty blockers and hormones thus lowering their testosterone to the same level as non-transgender girls.  And, even with respect to contexts actually involving boys, none of the cases held that Title IX *required* schools to exclude boys from trying out for volleyball or field hockey.  The courts simply held that they were *permitted* to do so.

Even if such a claim were cognizable, Plaintiffs cannot show that non-transgender girls "do not possess sufficient skill to compete actively" on a team with girls who are transgender, as required by the 1979 Policy Statement.  One of the Plaintiffs has competed against Andraya and T.M. and *won* on several occasions.

4.      Whether Plaintiffs have stated a valid "equal treatment" claim under 34 C.F.R. § 106.41(c) and the 1979 Policy Statement.  Claims for "equal treatment" focus on the equal treatment of the boys' and girls' athletic teams.  But Plaintiffs in this case have not alleged that their schools or the CIAC have treated the boys' track team differently from the girls' track team in any of these respects.  Plaintiffs are challenging the *composition* of the girls' track team, and challenges to the composition of teams are analyzed as "effective accommodation" claims, not "equal treatment" claims.

5. Whether the injunction requested by Plaintiffs would violate Andraya and T.M.'s rights under Connecticut law, Title IX, or the Equal Protection Clause.

The Board Defendants and the CIAC agree with and adopt the proposed intervenors' list of issues to be addressed.

### III. Statement of Undisputed Facts

At this time, the parties have not agreed upon any statement of undisputed facts. The parties will discuss such their ability to stipulate to facts at the March 19th meet-and-confer meeting.

### IV. Witnesses/Experts

Plaintiffs already have disclosed an expert witness, and the Defendants anticipate conducting discovery related to that expert disclosure. At this time the Defendants anticipate that they will need to disclose expert witnesses on several topics. At this juncture, Defendants have not specifically identified their potential expert witnesses, and reserve their right to disclose such experts in a timely manner in accordance with the Scheduling Order to be entered in this matter.

### V. Joinder of Additional Parties:

1. As noted previously, both T.M. and Ms. Yearwood have moved to intervene in this matter. The CHRO also has moved to intervene in this matter. Such motions should be decided so the current parties understand whether or not the proposed interveners need to be included in the planning on this case.

2. Plaintiffs should be allowed until March 26, 2020, to file motions to join additional parties and/or to file motions to amend the pleadings.

3.      Defendants should be allowed until March 26, 2020, to file motions to join additional parties. As noted in the Complaint and in Plaintiffs' February 12th press conference, Plaintiffs previously filed a complaint with OCR in June 2019, which remains pending. OCR is the federal agency charged with interpreting and enforcing Title IX. OCR currently is investigating CIAC's transgender student-athlete policy, as well as the Board Defendants' adherence to that policy, which is the same policy at issue in this lawsuit. OCR clearly has an interest in the subject matter of this lawsuit, and if OCR is not brought into this lawsuit then the Court cannot provide full relief to the parties and the CIAC and the Board of Education defendants would be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FRCP 19(a). Therefore, Defendants anticipate at this time that they will move to add OCR as a party to this lawsuit.

THE DEFENDANTS

BY: /s/ Peter J. Murphy
PETER J. MURPHY (ct26825)
LINDA L YODER (ct01599)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: 860-251-5950
Facsimile: 860-251-5316
Email: pjmurphy@goodwin.com
For Connection Association of School and the Danbury Board of Education


BY: /s/ Johanna G. Zelman
Johanna G. Zelman (ct26966)
Elizabeth M. Smith
FordHarrison, LLP
CityPlace II
185 Asylum Street, Suite 610
Hartford, CT 06103
Telephone: 860-740-1355
Facsimile: 860-578-2075
Email: jzelman@fordharrison.com
For the Cromwell Board of Education and the Bloomfield Board of Education

14

BY: /s/ David S. Monastersky
David S. Monastersky (ct13319)
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 061114
Telephone: 860-249-1361
Facsimile: 860-249-7665
Email: dmonastersky@hl-law.com
For the Canton Board of Education and the Glastonbury Board of Education