# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SELINA SOULE, a minor, by Bianca | : | 3:20-cv-00201-RNC |
| Stanescu, her mother; CHELSEA | : | |
| MITCHELL, a minor, by Christina Mitchell,: | | |
| her mother; ALANNA SMITH, a minor | : | |
| by Cheryl Radachowsky, her mother, | : | |
| | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT ASSOCIATION OF | : | March 27, 2020 |
| SCHOOLS, INC. d/b/a CONNECTICUT | : | |
| INTERSCHOLASTIC ATHLETIC | : | |
| CONFERENCE; BLOOMFIELD PUBLIC | : | |
| SCHOOLS BOARD OF EDUCATION; | : | |
| CROMWELL PUBLIC SCHOOLS | : | |
| BOARD OF EDUCATION; | : | |
| GLASTONBURY PUBLIC SCHOOLS | : | |
| BOARD OF EDUCATION; CANTON | : | |
| PUBLIC SCHOOLS BOARD OF | : | |
| EDUCATION; DANBURY PUBLIC | : | |
| SCHOOLS BOARD OF EDUCATION | : | |
| | : | |
| *Defendants.* | | |

## PARTIES' JOINT RESPONSE FROM
## MEET-AND-CONFER CONFERENCE

Pursuant to the Court's February 27, 2020 order, the parties submit this joint summary of the results from their March 19, 2020 meet-and-confer. The individuals who participated were the following:

For Plaintiffs Selina Soule, Chelsea Mitchell, and Alanna Smith: **Roger Brooks, Esq. and Jeffrey Shafer, Esq.**

1

For Bloomfield Board of Education and Cromwell Board of Education: **Johanna Zelman, Esq.**

For Glastonbury Board of Education and Canton Board of Education: **David Monastersky, Esq.**

For Danbury Board of Education and the Connecticut Association of Schools, Inc., d/b/a Connecticut Interscholastic Athletic Conference (CIAC): **Peter J. Murphy, Esq. and Linda L. Yoder, Esq.**

For Proposed Intervenors Andraya Yearwood and Thania Edwards on behalf of her daughter, T.M. (listening only): **Joshua Block, Esq., Dan Barrett, Esq., and Chase Strangio, Esq.**

For Proposed Intervenor Connecticut Commission on Human Rights and Opportunities (listening only): **Michael Roberts, Esq.**

## I.   <u>SUBJECT MATTER JURISDICTION</u>

Pursuant to the Complaint filed on February 12, 2020, this Court has original federal jurisdiction over claims made in this action alleging violations of Title IX of the Civil Rights Act of 1964 as amended ("Title IX").  Title 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), 2201. Jurisdiction of this court is further invoked pursuant to Title 42 U.S.C. § 1988.

## II.   <u>PROPOSED SCHEDULE</u>.

At this time, the CIAC has not cancelled the Spring 2020 season, and has publicly stated that it will try to get a season or a part of a season in if students return to school for the end of the 2019-2020 school year.  Therefore, as requested by the Court, the parties discussed a proposed schedule for the preliminary injunction proceedings.  At the meet-and-confer, the parties were

unable to agree on such a schedule, and they therefore set forth separate proposals for the Court's consideration.

### A.   Plaintiffs' proposed schedule

Defendants are correct when they state below that, during the meet-and-confer, "Plaintiffs indicated . . . that they did not consent [to Defendants proposed dates]." Plaintiffs indeed clearly stated that the dates proposed by Defendants would not provide adequate protection for Plaintiffs' spring season. Thus, Plaintiffs do not understand Defendants' additional statements below that at the conclusion of the meet-and-confer "Defendants believed they had reached a mutually agreeable schedule," or that that the schedule they propose represents "compromise dates."

Plaintiffs believe that a schedule should be set that permits the Court to hear argument before Plaintiffs may first be obliged to race against male athletes as a result of the CIAC Policy. Currently, Plaintiffs believe that one or more of the Plaintiffs is likely to compete against T.M. at the Middletown Invitational scheduled for May 2, the Hartford Classic scheduled for May 9, and the Track & Field Classic scheduled for May 16.

Invitational meets such as these conducted subject to CIAC rules make up a major part of the competitive athletic experience offered to female athletes by Connecticut high schools, including the defendant schools, and indeed certain of these are high-prestige, high-visibility events. These "invitationals" provide opportunities for runners to achieve qualification times and seeding for state championships, and account for many of the "over 40 more missed championships, recognition, and participation opportunities" referenced in the Complaint. (V.C. ¶ 105.) In the 2018 outdoor season, Selina Soule was denied a first-place title in the 200 meter at the Bristol Invitational held on April 27, when T.M. took first place and Andraya Yearwood took

second place. Chelsea Mitchell was likewise denied a first-place title in the 100 meter at the

Bristol Invitational when T.M. took first place and Yearwood took second. Selina Soule

competed against one or both of them again at the Middletown Invitational held on May 5 and at

the Greater Hartford Invitational held on May 12. In the 2019 outdoor season, Chelsea Mitchell

and Selina Soule competed against T.M. on May 11 at the Greater Hartford Invitational, where

Chelsea was denied a first-place medal in both the 100- and 200-meter events as a result of

T.M.'s participation.

Meanwhile, it has been over five weeks since Plaintiffs served Defendants with their

complaint, preliminary injunction motion, expert declaration, and motion to expedite; nine

months have elapsed since Plaintiffs' Title IX challenge was filed with OCR and delivered to

Defendants. Accordingly, the parties are not approaching this preliminary injunction motion

from a standing start.

Further, Plaintiffs believe that the meaning and operation of the words in Title IX's

athletic regulations are matters of law, not matters contingent on factual evidence or opinion

testimony from experts.

Accordingly, Plaintiffs believe that the following schedule is both appropriate and

feasible to allow the court to hear the parties' arguments before the May 2 invitational. The dates

below present a hearing-readiness date six weeks after our meet-and-confer of last Thursday,

which is eleven weeks after serving our motions for injunction and expedited hearing.

> **April 1, 2020**:  Identify fact witnesses to give live testimony (limited to
> two), plus those fact witnesses submitting declarations. Depositions
> thereafter.

> **April 6, 2020**:  Expert reports exchanged.

One expert each side giving live testimony, with rebuttal at hearing by cross-examination and/or declaration. Second expert each side, if desired, will give testimony by declaration.

**April 9, 2020**:  Defendants file memorandum in response to Plaintiffs' preliminary injunction motion. This response date is approximately eight weeks after filing and service of Plaintiffs' motion.

**April 15, 2020**:  Expert rebuttal reports exchanged.

**April 13-24, 2020**:  Expert witness depositions conducted.

**April 23, 2020**:  Plaintiffs' preliminary injunction reply memorandum filed.

**April 29, 2020**:  Parties submit to the court joint statement of undisputed facts.

**April 30-May 1, 2020**:  Preliminary injunction hearing-ready.

Plaintiffs recognizes that currently scheduled events may yet be postponed or cancelled due to the ongoing national health crisis.  Plaintiffs suggest that if such changes materially postpone the first competitions in which Plaintiffs can reasonably expect to be forced to compete against a male athlete pursuant to the Policy, then the schedule proposed above should be proportionately extended to allow all parties to take advantage of that additional time.

In addition, Plaintiffs propose that the parties identify intended hearing exhibits and resolve any objections to such exhibits as follows:

**Seven days prior to "hearing-ready" date**:  Parties identify ITEs;

**Five days prior to "hearing-ready" date**:  Parties exchange objections to ITEs; and meet and confer telephonically or in person concerning any objections;

**Two days prior to "hearing-ready" date**:  Parties submit to the court a list of agreed ITEs and positions on disputed ITEs.

**B.**     **Defendants' proposed schedule.**

During the March 19th meet-and-confer conference, Defendants proposed a schedule for the parties' consideration. Plaintiffs believed that Defendants' dates were too far out, and therefore the parties then discussing compromise dates, including numerous dates and issues related to expert disclosures.  At the conclusion of that discussion of specific dates, Defendants believed they had reached a mutually-agreeable schedule.  Plaintiffs indicated, however, that they did not consent and would circulate a counter proposal--which they did by letter dated March 23, 2020. That counter proposal was even more restrictive than their original proposal on March 19th. Despite Plaintiffs backing off from the schedule discussed in the meet-and-confer, Defendants are still willing to proceed with that schedule.  The compromise schedule is as follows:

- April 6, 2020 – Defendants disclose expert witnesses
- April 20, 2020 – Plaintiffs disclose rebuttal expert witness
- April 20, 2020 – Defendants respond to the Complaint
- Weeks of April 20 and 27, 2020 – Expert witness depositions
- May 8, 2020 – Defendants' brief in response to motion for preliminary injunction due
- May 15, 2020 – Plaintiffs' reply brief due
- May 18, 2020 – hearing ready

In addition to proposing their own schedule, the Defendants must also respond to the points raised above by Plaintiffs in support of their proposed schedule. Plaintiffs base their scheduled on the need to decide the injunction before invitational meets in May. Plaintiffs did not cite invitational meets in their Complaint or the Preliminary Injunction brief.  Instead, they only raise these invitational meets now, after being informed during the meet-and-confer that

6

none of the Plaintiffs currently are scheduled to run against either T.M. or Ms. Yearwood during the 2020 regular season according to the CIAC's schedule.[1]

Second, the earliest schools in Connecticut could resume is April 20, 2020.[2]  Even if that happens, which seems increasingly unlikely given Governor Lamont's subsequent comment that students likely will not return to until Fall 2020, it is unreasonable to expect that the three invitational meets cited by Plaintiffs would proceed as currently scheduled. Third, accordingly to the publically-available schedules for all five high schools, the only school that is scheduled to compete in those three meets at all is Glastonbury.[3]

As the Defendants represented in the original call with the Court, because there are not currently-scheduled meets involving any of the five girls during the regular season, the first time Plaintiff Miller could run against T.M. or Ms. Yearwood would be in the State Class M Final, and the first time that Plaintiff Soule or Plaintiff Smith could run against either T.M. or Ms. Yearwood would be in the subsequently-held, intra-class State Open Final.  Those events currently are scheduled on June 2, 2020, and June 6, 2020, respectively.  Given the focus on

---

[1] The use of the term "male" in this document is by Plaintiffs only. Defendants object to use of the term "male" in reference to Ms. Yearwood and T.M., both of whom identify as female, are known by friends and family as women, and use the pronouns she/her/hers. They are not "male," even if that was their assigned gender at birth. They are, plain and simple, female.

[2] On March 24, 2020, Governor Lamont issued Executive Order 7L, which cancelled all classes at public schools through at least April 20, 2020.  See https://portal.ct.gov/Office-of-the-Governor

[3] The schedules for all five schools, which are available on the CIAC's website, are the following:
- Canton: https://tinyurl.com/s28nzon
- Glastonbury: https://tinyurl.com/u86ovp2
- Danbury: https://tinyurl.com/s7trzuj
- Bloomfield: https://tinyurl.com/rvnzf66
- Cromwell: https://tinyurl.com/uvyhbnd

those two events in the Complaint, they should be the dates the parties and the Court work off of to schedule any preliminary injunction hearing.

## III.    RELIEF SOUGHT AND APPROPRIATE SCOPE OF RELIEF

### A.    Relief Sought

Plaintiffs have detailed the relief they seek in their Complaint (ECF No. 1) at pp. 49-50. To summarize the principal points:

**Plaintiffs** seek **declaratory relief** declaring that the policy and practice of permitting males to compete in girls' or women's athletic events violates Title IX when participated in by an institution subject to Title IX, because it denies equal treatment, benefits, and opportunities to girls in athletic competition, and fails to provide competitive opportunities that effectively accommodate the abilities of girls.

**Plaintiffs** seek permanent **injunctive relief** to:

(a) prevent defendants from permitting males to compete in girls' or women's athletic events sponsored, organized, or participated in by any of the Defendants;

(b) prevent any of the defendant schools from providing interscholastic competitive opportunities for their students through any meet, league or association (including CIAC) that denies equal competitive opportunities to girls and fails to effectively accommodate the abilities of girls, by permitting males to compete in girls' or women's athletic events;

(c) require each defendant to correct any records maintained by that defendant, whether public or private, to accord appropriate recognition to female athletes.

**Plaintiffs** seek **preliminary injunctive relief** to:

(a) prevent Defendants from applying the Policy so as to permit males to compete against any of the Plaintiffs in girls' or women's athletic events sponsored, organized, facilitated, or participated in by any of the Defendants;

(b) prevent any of the defendant schools from providing interscholastic competitive opportunities for their students through any meet, league or association (including CIAC) that applies the Policy so as to deny equal competitive opportunities to girls and fails to effectively accommodate the abilities of girls, by permitting males to compete against any of the Plaintiffs in girls' or women's athletic events.

**B.      Appropriate Scope of Relief**

**Defendants** contend that the relief sought, like the Complaint itself, extends well beyond the scope of relief available. Plaintiffs seek declaratory judgment and injunctive relief for all athletics. However, the Plaintiffs only compete against Ms. Yearwood and T.M. in a select few track and field events held in the winter and spring seasons. Plaintiffs are only entitled to seek relief with regard to their individual claims regarding the girls' track events in which they compete against Ms. Yearwood and T.M. It is insufficient for Plaintiffs to merely concede the point with respect to the preliminary injunction. In fact, Defendants have asked Plaintiffs to amend their Complaint and request for relief to limit both to issues related directly to the Plaintiffs, but they have declined to do so. Thus, Defendants reserve the right to move to strike such allegations and claims for relief.

Moreover, the cases cited by Plaintiffs below are inapposite. Of course, if CIAC's policy violates Title IX, then it would be enjoined from using it going forward. However, Plaintiffs seek much more than that. They seek this court to order that *all* prior athletic results in *all* prior events

be changed, even for those sports and track and field events in which Plaintiffs do not participate. It is this that clearly exceeds the scope of what relief to which Plaintiffs are entitled.

**Plaintiffs** contend that the natural and proper result from a judicial conclusion that the CIAC Policy violates Title IX when applied to track and field events will be an injunction against its operation. *cf. Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."); *National Min. Assn. v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998), quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 931 (1990) (Blackmun, J., dissenting) ("if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief that affects the rights of parties not before the court.").  However, Plaintiffs note that—solely for purposes of their request for Preliminary Injunction—Plaintiffs limit their request for relief to protection from the application of the Policy as it impacts themselves.

IV.   **ISSUES TO BE DECIDED**

    A.   **Whether the Policy, or Offering Athletic Opportunities for Girls Through Athletic Competitions Run Subject to the Policy, Violates Title IX.**

        1.   Alleged sex discrimination by failure to provide equal treatment, benefits and opportunities for girls.

**Plaintiffs** contend that, where institutions subject to Title IX choose to provide separate athletic opportunities for girls and boys, they must do so in a manner that provides equal treatment, benefits, and opportunities for girls. *Policy Interpretation*, 44 Fed. Reg. 71,416, 74,415 (1979). By permitting males to compete in girls' track and field events based on a claim

of gender identity, the Defendants have created a situation in which, in the affected events and as detailed in the complaint, students born male have captured 23 out of 28 first and second place awards in seven state-level competitions, while students who by "accident of birth," *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973), are female were left with only five first and second place victory experiences and recognitions in those seven state-level events. *See* Verified Complaint (V.C.) at ¶¶ 100-102. Plaintiffs contend that this does not constitute the provision of equal treatment, benefits, and opportunities for girls. Plaintiffs further contend that Defendants' persistent refusal to repair and prevent this discrimination after notice and repeated requests itself constituted further discriminatory conduct in violation of Title IX.

**Defendants** contend that claims for "equal treatment" focus on the equal treatment of the boys' and girls' athletic teams.  But Plaintiffs in this case have not alleged that their schools or the CIAC have treated the boys' track team differently from the girls' track team in any of these respects.  Plaintiffs are challenging the *composition* of the girls' track team, and challenges to the composition of teams are analyzed as "effective accommodation" claims, not "equal treatment" claims.

> 2. <u>Alleged sex discrimination by failure to provide effective accommodation for the physical abilities of girls.</u>

**Plaintiffs** contend that, where institutions subject to Title IX choose to provide separate athletic opportunities for girls and boys, they must do so in a manner that effectively accommodates the physical abilities of girls. *Policy Interpretation*, 44 Fed. Reg. 71,416, 74,414. As detailed in the expert declaration already submitted by Dr. Gregory Brown, extensive science documents the large physiological advantages in athletic capability enjoyed by boys over girls beginning early in the puberty process, including changes that are not fully reversed by later administration of puberty blockers or cross-sex hormones. As a result, and as documented in Dr.

Brown's declaration and in independent studies, female athletes have little or no chance of beating comparably gifted and trained male athletes in most athletic events, including track and field events. *See* V.C. ¶¶ 48-55. Thus, a school or league that provides interscholastic competitive opportunities for girls through meets in which males are permitted to compete in competitions designated as for girls or women fails to provide such opportunities in a manner that provides effective accommodation for the physical abilities of girls, and thus violates Title IX.

**Defendants** contend that Plaintiffs have not stated a claim for denial of "effective accommodation" under 1979 Policy Statement § VII.C.4.b.  Plaintiffs cite no authority for the proposition that Title IX provides a cause of action for girls to exclude other girls from competing on their team, and none of the cases cited by Plaintiff about competition with boys dealt with girls who are transgender and have been receiving puberty blockers and hormones thus lowering their testosterone to the same level as non-transgender girls.  Moreover, none of those cases held that Title IX *required* schools to exclude boys from trying out for volleyball or field hockey.  The courts simply held that they were *permitted* to do so.  Even if such a claim was cognizable, Plaintiffs cannot show that non-transgender girls "do not possess sufficient skill to compete actively" on a team with girls who are transgender, as required by the 1979 Policy Statement.  Indeed, one of the Plaintiffs has competed against Andraya and T.M. and *won* on several occasions.

To the extent necessary, Defendants will also contest the legal and factual sufficiency of Plaintiffs' factual allegations regarding "athletic advantage." Defendants and proposed intervenors intend to submit expert testimony to rebut Plaintiffs' assertions that Ms. Yearwood

and T.M.—or other transgender athletes—have an "athletic advantage" when compared to other elite female athletes.

   3. <u>The meaning of "sex" as used in Title IX.</u>

  The parties are agreed that in the course of deciding the issues presented the Court will need to construe the word "sex" as used in Title IX and in regulatory guidance that has been issued with respect to the application of Title IX to athletic programs. Defendants assert that this is a threshold issued that needs to be decided by the Court.

  **Plaintiffs** contend that the meaning of "sex" as used in this context is a question of law, and that the terms, structure, history, and policy logic of Title IX's athletic regulations require that "sex" in its provisions be understood in its universal historic sense, as a reference to the physiological distinctions involved in the male-female binary related to reproductive function. The U.S. Department of Justice has now filed a Statement of Interest explicating in detail the reasons that "sex" as used in Title IX can only be understood to refer to genetic, biological sex, not gender identity, including the universal understanding of the word at the time that Title IX was adopted, the use of "sex" in Title IX to refer to "immutable," binary categories determined "at birth," and the nature of the historical discrimination that Title IX was enacted to redress. (ECF No. 75.)

  **Defendants** contend that Title IX does not define "sex" at all, much less for purposes of sex-segregated activities as being based on chromosomes and Title IX does not require schools to exclude boys and girls who are transgender from playing on boys' and girls' teams. *Cf. Parents for Privacy v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020) ("[J]ust because Title IX authorizes sex-segregated facilities does not mean that they are required, let alone that they must be segregated based only on [']biological sex['] and cannot accommodate gender identity.").

Proposed Intervenors T.M. and Yearwood have advised Defendants that they would submit expert medical testimony to rebut Plaintiffs' assertions that a person's "sex," in the context of sex-separated athletic competitions, can or should be defined by chromosomes. Proposed Intervenors would also submit testimony from themselves, their coaches, and their teammates to establish: the fact that they are girls and are treated as girls in all aspect of their lives; their medical diagnosis of and treatment for gender dysphoria; and the steps they have taken as part of medical and social transition to live as girls in all aspects of life. The parties and the Court need to decide whether, if Plaintiffs are incorrect, their claims fail as a matter of law and whether there is even a need to proceed with additional analysis under the effective accommodation and equal treatment forms of analysis set forth in *McCormick v. School District of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004).

4. <u>Whether OCR guidance exists and is entitled to any deference from the Court.</u>

On May 13, 2016, the U.S. Department of Justice ("DOJ") and the U.S. Department of Education ("DOE") issued a joint "Dear Colleague Letter on Transgender Students" summarizing public schools' obligations regarding transgender students under Title IX. On February 22, 2017, the DOE and DOJ issued another Dear Colleague Letter that rescinded the May 2016 DOJ and DOE guidance.

**Defendants** contend that the Court will need to address what deference is applicable to OCR's prior actions. The May 13, 2016 letter included notice that Title IX protected students from discrimination in school on the basis of gender identity, including in the context of names and pronoun use, restroom access, and athletic participation. The guidance made clear that Title IX allows students to participate in sex-separated activities and access sex-separated facilities consistent with their gender identity. As one court has noted, "the 2017 Guidance did not

14

propound any 'new' or different interpretation of Title IX or the Regulation, nor did the 2017 Guidance affirmatively contradict the 2015 and 2016 Guidance documents. It instead appears to have generated an interpretive vacuum pending further consideration by those federal agencies of the legal issues involved in such matters." *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 298 (W.D. Pa. 2017).

**Plaintiffs** contend that, in light of the 2017 formal withdrawal by the DOE and DOJ of the 2016 letter, no question concerning any degree of "deference" owed to the 2016 "guidance" arises.

5.      Whether Defendants have failed to receive any required "notice" of the requirements of Title IX as applied to student athletics.

**Defendants'** Position: The Spending Clause to the U.S. Constitution precludes the federal government from imposing an obligation on States, as a condition of receipt of federal funds, that Congress did not make clear in the statutory language. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 24-25 (1981).  When interpreting language in spending legislation, courts insist that Congress speak with a clear voice, recognizing that there can, of course, be no knowing acceptance of the terms of the putative contract if a State is unaware of the conditions imposed by the legislation or is unable to ascertain what is expected of it. *LaShonda D. v. Monroe County Bd. of Ed.*, 526 U.S. 629, 640 (1999).  "Looking at both the specific and broader context of the use of the term 'sex,' neither Title IX nor the implementing regulations define the term 'sex' or mandate how to determine who is male and who is female …." *Board of Ed. of the Highland Local Sch. Dist. v. United States Dep't of Education*, 208 F. Supp. 3d 850, 867 (S.D. Ohio 2016). Courts have found, therefore, that "the term 'sex' as used in Title IX is ambiguous as applied to transgender students." *Kasper v. School Bd. of St. Johns County*, 318 F. Supp. 3d 1293, 1321 (M.D. Fl. 2018). Before the Court can determine if Defendants have violated Title IX, the Court must find that

Congress clearly and unambiguously gave notice to Defendants of how sex is interpreted in Title IX.

   **Plaintiffs** contend that the meaning of "sex" as used in Title IX's regulations of athletics is clear, and for the reasons explained in Section IV.A.3 above. Further, the *Pennhurst* "notice" standard is relevant to damages claims, but is not applicable to claims seeking prospective injunctive relief, which is the sole remedy sought in Plaintiffs' motion for preliminary injunction. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 286-87 (1998) (distinguishing damages claims (which implicate the *Pennhurst* concern over adequate notice of potential financial liability) and equitable claims for prospective relief (which do not)).; *cf. id.* at 287 ("relief in an action under Title VI alleging unintentional discrimination should be prospective only"). Finally, even as to damage claims, "*Pennhurst* does not bar a private damages action under Title IX where the funding recipient engages in intentional conduct that violates the clear terms of the statute." *Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 642 (1999). In *Davis* the Court found that school officials' deliberate indifference to student-on-student sexual harassment is clearly forbidden by Title IX, though it had not made that finding before, and Title IX does not identify it specifically. "Congress need not specifically identify and proscribe each condition in the legislation." *Id.* at 650. "The … conclusion that Title IX does not prohibit retaliation because it is silent on the subject ignores the import of this Court's repeated holdings construing 'discrimination' under Title IX broadly to include conduct, such as sexual harassment, which the statute does not expressly mention." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 168 (2005). Here, by contrast, Title IX's governing regulations of athletics provide clear and lengthy standards that speak directly to the question now under consideration.

B.        **Injury in Fact and Plaintiffs' Standing.**

**Plaintiffs** contend that they have amply alleged personalized injury in fact adequate to support standing, including deprivation of specific victories, championships, and opportunities to participate in elite competitions, *see Beidiger v. Quinnipac Univ.*, 691 F.3d 85, 93 (2d Cir. 2012); ECF No. 12-1, Pl. PI Mem. at 18, and the public recognition associated with these things, *see* 34 C.F.R. §106.41(c)(10); V.C. ¶¶ 94-97, but equally importantly, deprivation of the enjoyment of fair competition, a "quality of competition," *see* 1996 Clarification, and a "potential" for victory, *McCormick*, 370 F.3d at 279, 294-95; *see* ECF No. 12-1, Pl. PI Mem. at 19, equivalent to that enjoyed by boys in Connecticut.

**Defendants** contend that Plaintiffs lack standing to bring this lawsuit. Article III, § 2, cl. 1 of the Constitution states that for this Court to have jurisdiction over this Complaint, it must present a case and controversy, meaning that Plaintiffs must have suffered an actual harm to have standing in this Court. "Standing under Article III… depends on an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  (Internal alterations omitted). *Citizens for Responsibility & Ethics in Wash. v. Trump*, 939 F.3d 131, 148 (2d Cir. 2019) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).[4] These three Plaintiffs bring claims based on harm they have purportedly suffered by finishing behind a runner who is transgender in a specific championship track event in the past, and purported injuries they may suffer at championship track meets in

---

[4] Defendants assert that as this matter was not brought as a class action, and plaintiffs lack standing to seek injunctive or other relief for sports, meets or events for which they have not sought to participate or are ineligible to participate because of the schools that they attend.

Spring 2020.[5]  These allegations are insufficient to confer standing upon the Plaintiffs to pursue

the claims made and relief sought in this lawsuit against any of the Defendants, as there are no

cognizable claims of injury under Title IX.  More specifically, the allegations of potential harm

are not (a) concrete and particularized, and (b) actual or imminent, but instead raise conjectural

or hypothetical injuries. Such allegations are insufficient to establish injury in fact. To the extent

the Plaintiffs have alleged any injury constituting injury in fact, Defendants will contest

Plaintiffs' factual allegations regarding recruitment and scholarship opportunities being impacted

by the participation of Ms. Yearwood or T.M., or any other transgender athlete, as well as any

claim that any of the Plaintiffs have suffered a loss of recruitment or scholarship opportunities.

## C.    **Availability of Relief Against Specific Defendants**

### 1.    Whether CIAC is subject to Title IX

**Plaintiffs** contend that CIAC is subject to the requirements of Title IX because: (a) CIAC

indirectly receives federal funding through its member public schools, *see* V.C. ¶25; 34 C.F.R.

§106.2(i); (b) CIAC is fully controlled by member schools that are subject to the obligations of

Title IX, *see* V. C. ¶¶ 26-27; and (c) schools subject to Title IX have effectively out-sourced

control of their interscholastic athletic competitions to CIAC, *see* V.C. ¶28; *Brentwood Acad. V.

Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 3030-305 (2001); *Clark v. Ariz.

Interscholastic Ass'n*, 695 F.3d 1126, 1128 (9th Cir. 1982).

_____

[5] Defendants further explain: For example, Plaintiffs claim that but for the participation of students Andraya Yearwood and T.M. in the Indoor Track 55m event at the 2019 State Open, Plaintiff Chelsea Miller would have finished 2nd instead of 4th.  See Complaint ¶ 90.  Such allegations will be referred to as "placement injuries." Plaintiffs also allege that on one occasion in June 2017 for Chelsea Mitchell (See Complaint ¶ 86) and one occasion in 2019 for Selina Soule (See Complaint ¶ 90) they ran slower times than  either T.M. or Ms. Yearwood, or both (and four other cisgender athletes), and therefore finished outside of the top six places in their races, which prevented them from moving on to the New England Championships.

**Defendants.** The Board of Education defendants do not contest that they are recipients of federal funds and subject to Title IX. The CIAC however is a private non-profit organization organized under the laws of the State of Connecticut. It does not receive any direct federal funding, and by its terms, Title IX applies only to recipients of federal funds.  See Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 460 (1999). Plaintiffs allege that CIAC is subject to Title IX because it "indirectly receives federal funding" from its public schools members in the form of dues, and also because it is "controlled" by member schools that are subject to Title IX.  The CIAC reserves its right to challenge Plaintiffs' jurisdictional allegations.

2.    Claims against Cromwell and Bloomfield Boards of Education

**Defendants** contend that Plaintiffs lack standing to assert claims against Cromwell and Bloomfield Boards of Education because none of the Plaintiffs attend schools in those districts. *See Biediger v. Quinnipiac Univ.*, No. 3:09-cv-621 (SRU), 2010 U.S. Dist. LEXIS 50044, at *14-15 (D. Conn. May 20, 2010) ("I am concerned whether people who have not enrolled and have no plans of enrolling at Quinnipiac have standing to bring this Title IX claim….") (citing *Preyer v. Dartmouth Coll.*, 968 F. Supp. 20, 25-26 (D.N.H. 1997) (holding that plaintiff lacked standing to sue under Title IX because she was not a student). Plaintiffs do not seem to be able to offer a single case that would provide them with standing for a claim against either Bloomfield or Cromwell. Neither Bloomfield nor Cromwell owes any duty under Title IX to an athlete that does not attend their schools. Bloomfield and Cromwell owe a duty only to T.M. and Ms. Yearwood, respectively.

**Plaintiffs** contend that no case holds that an educational institution that is subject to Title IX may evade liability when it inflicts discrimination based on sex on students who attend *other* schools that are also subject to Title IX. In fact, Defendants argue for a construction of Title IX

19

under which, even if all of Plaintiffs' allegations are true and the Policy does in fact deny girls

equal athletic opportunities, Title IX affords no remedy against the schools that certify male

students to compete against Plaintiffs in interscholastic competition, nor against the girls' own

schools that provide interscholastic competitive opportunities for their female students only

through meets subject to rules that permit males to compete in girls' or women's events, nor

against the CIAC league—fully controlled by its member schools—that sanctions and requires

this unfair competition. No case justifies this result. *Preyer v. Dartmouth College*, 968 F.Supp.

20, 25-26 (D. N.H. 1997) involved an attempted Title IX claim by a food service employee, not a

student, and stands for the proposition that "Title IX applies only to students and participants in

educational programs or activities." *Biediger v. Quinnipiac University*, No. 3:09-CV-00621

(SRU), 2010 U.S. Dist. LEXIS 50044  (D. Conn. May 20, 2010), held that the class of women

who declined to enter Quinnipiac due to a discriminatory athletic program was unascertainable.

The court expressed "concern" about whether those not enrolled at Quinnipiac had standing to

assert a Title IX claim against Quinnipiac, but the court did not rule on that point and the focus

of its "concern" was "whether a person who has been merely deterred from enrolling in a school

has suffered an injury that Title IX can redress." Here, Plaintiffs have alleged specific injury that

Title IX can redress.

> 3.      Claims against Glastonbury, Canton and Danbury Boards of Education

**Defendants** contend that Plaintiffs lack standing to seek the requested relief against the

Glastonbury, Canton and Danbury Boards of Education—the districts in which the three

Plaintiffs attend school.  There is no claim in this lawsuit that these schools have permitted

athletes with an XY genotype to compete on their rosters as girls in any event in which the

plaintiffs have participated or allege that they will be participating. The injunctive relief sought,

that these schools must somehow prevent athletes with an XY genotype from participation in events sponsored by the CIAC and that these schools change the records of events sponsored by the CIAC, is beyond the authority and control of these Defendants.  The only potential relief against these Defendants would be an injunction against any participation by these schools in girls' track and field events that include athletes with an XY genotype--which would preclude them from participating in the CIAC currently.  For these reasons, the Plaintiffs lack  standing to seek the requested relief against  these defendants.

**Plaintiffs** contend that the Glastonbury, Canton and Danbury school districts violate Title IX in at least two distinct ways, including by offering interscholastic competitive opportunities for girls through a league and in meets subject to rules which deny equal competitive opportunities and effective accommodation to girls, and by failing (and indeed refusing) to exercise their control as voting members of CIAC to induce CIAC to change its Policy that discriminates against girls in violation of Title IX. Plaintiffs contend that Title IX does indeed prohibit subject schools from offering interscholastic competitive opportunities for girls through a league and in meets subject to rules which deny equal competitive opportunities and effective accommodation to girls.

### D.   Connecticut State Law

**Plaintiffs** contend that, as a result of the Supremacy Clause of the U.S. Constitution, art. VI, cl. 2, this Court will have no occasion to decide questions of Connecticut state law. Title IX takes precedence over potentially conflicting state law. *See New York SMSA Ltd. Partnership v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) ("Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are 'without effect.'") (citation omitted); *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 108 (1992) ("[A]ny

state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.").

**Defendants** contend that the Court will need to address whether the injunction requested by Plaintiffs would violate Andraya and T.M.'s rights under Connecticut law. Connecticut law specifically protects transgender students. Conn. Gen. Stat. § 10-15c(a) states that all students in the State of Connecticut "shall have…an equal opportunity to participate in the activities, programs and courses of study offered in [] public schools…without discrimination on account of…sex, gender identity or expression…." Thus, the Board of Education Defendants would be in violation of State law if they were to prohibit the participation of athletes who are transgender in interscholastic track events. If this Court were to find that Plaintiffs are correct in how they assert "sex" should be defined by Title IX, the Court may be required to then determine whether Title IX preempts Conn. Gen. Stat. § 10-15c(a). In the alternative, if Conn. Gen. Stat. § 10-15c(a) is not preempted by Title IX, then this Court may not need to decide the meaning of "sex" under Title IX.

### E.   Equal Protection

**Defendants and proposed intervenors** contend that the Court will need to address whether the injunction requested by Plaintiffs would violate the Equal Protection Clause of the U.S. Constitution.

**Plaintiffs** contend that the requirements of Title IX's athletic regulations (and thus the injunction sought to enforce them) do not consider or act upon a person's fluid and immaterial sense of gender identity; its regulatory classifications are only in terms of an individual's physical sex as male or female. Title IX cannot be deemed to discriminate based on classifications it neither considers nor regulates.  Further, male athletes who assert a female

gender identity are not similarly situated to female athletes with respect to physiological characteristics relevant to athletic competitions, so their differential treatment does not implicate equal protection standards.

## V.   **OTHER DISPUTED ISSUES**

### A.   Anonymity

**Defendants** object that Plaintiffs repeatedly use the names of minor children who are not parties to this action, in particular the name of T.M. This conduct violates of FRCP 5.2, and such names should be removed from the Complaint.

**Plaintiffs** state that they have, in their submission to the Court dated March 17, 2020, explained how the publicity choices made by T.M. and T.M.'s counsel, the ACLU, well before this lawsuit was filed rendered any "anonymity" with respect to T.M.'s identity (and indeed photograph and video images) fictional and unrecoverable, and Plaintiffs await the Court's direction in that regard.

### B.   **Relevance of Certain Evidence**

**Defendants** note that Plaintiffs have not sought to bring a class action or other action  on behalf of other individuals or entities. Rather, they have filed this action as individuals. However, Plaintiffs include factual allegations throughout the Complaint relating to athletes who are not parties to this action (for whom Plaintiffs cannot seek any relief), track meets in jurisdictions across the country, sports other than track and field, and meets and events in which the Plaintiffs are not eligible to participate, have chosen not to participate, and in which the Plaintiffs have not yet qualified to participate.  These allegations are immaterial and impertinent, and should be removed without necessity of a FRCP 12(f) motion.

**Plaintiffs** contend that evidence demonstrating the broad impact of competition by males in girls' or women's athletic competitions, and facts and statistics concerning the athletic performance and records of boys and men on the one hand, and girls and women on the other hand, goes directly to the question of whether the Policy effectively accommodates the athletic abilities of girls, and whether the Policy results in depriving girls of equal treatment, benefits, and opportunities in athletic competition and experience—questions central to Plaintiffs' claims that the Policy violates Title IX.

### C.    Proper Standard for Grant of Preliminary Injunction

**Defendants** understand Plaintiffs to be seeking a mandatory injunction to change the status quo, and therefore understand that a higher standard of proof is applicable to Plaintiffs. *See, e.g., Patterson v. Lichtenstein*, No. 3:18-CV-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020) ("Where the plaintiff seeks a mandatory injunction, i.e., an injunction seeking to order the defendants to perform positive acts, he must meet a higher standard. . . . A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief.'").

**Plaintiffs** contend that the preliminary injunction they seek is not a mandatory injunction within the meaning of the law cited by Defendants, because Plaintiffs only seek to restore and preserve the "status quo ante." *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37 n.5 (2d Cir. 2018) (collecting cases). "The court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, i.e., the situation that existed between the parties immediately prior to the events that precipitated the dispute." *Al-Bukhari v. Department of Correction*, No. 3:16-CV-53 (SRU), 2019 WL 859265, at

*1 (D.Conn. 2019). The status quo ante is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam); *accord O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (per curiam) ("requir[ing] a party who has recently disturbed the status quo to reverse its actions ... restores, rather than disturbs, the status quo ante"). Here, the status quo ante for decades within Connecticut is that only females were permitted to compete in girls track and field events, and only females did so. The Policy at issue only became known to Plaintiffs, and to at least the large majority of students and parents in Connecticut, in 2017 when Yearwood first began competing in girls' events, and Plaintiffs have moved promptly since then to seek redress, first by appeal to CIAC and school officials (V.C. ¶¶ 116-124), then by filing a complaint with the Department of Education Office for Civil Rights, and then by filing the present lawsuit.

## VI.   <u>STATEMENT OF UNDISPUTED FACTS</u>

The parties have agreed to negotiate a statement of undisputed facts. A time for submission of that statement is included in the schedules for preparation for the preliminary injunction hearing proposed by the parties.

## VII.   <u>FACT AND EXPERT WITNESSES</u>

**Plaintiffs** propose that—without prejudice to the number of witnesses the parties may call live or by deposition testimony at full trial on the merits—for purposes of the preliminary injunction hearing each side be limited to offering, live, by deposition testimony or declaration, or a combination of any of these:

- Two fact witnesses, and

- Two expert witnesses, and in the interests of time, only one of these shall testify live at the preliminary injunction hearing.

The opposing parties shall be entitled to depose each such witness in advance of the hearing, pursuant to the schedule to be set by the Court.

Plaintiffs recognize that if a material divergence between positions taken by some Defendants later develops, it might become necessary to modify "per side" limitations that are otherwise appropriate and efficient.

Plaintiffs already have disclosed and provided a declaration from one expert witness, Dr. Gregory Brown.

**Defendants'** position is that they are unable at this time to agree to a limit on proposed limit on fact or expert witnesses testimony for any preliminary injunction hearing. Nor can the Defendants agree to any admission of expert testimony by way of declaration or deposition transcript prior to having received all such reports and having the opportunity depose any such purported expert witnesses.  As set forth above, there also are issues that need to be addressed by the court that will impact the scope of any such hearing. Several other issues will impact the Defendants' respective positions on possible fact and expert testimony at such a hearing, including the extent of stipulated facts, whether Ms. Yearwood and T.M. are admitted as parties, and the number of expert witnesses disclosed by the Defendants and/or proposed intervenors. The Defendants pledge to work among themselves and with Plaintiffs to narrow any such testimony to the extent possible as this case progresses and as those issues are resolved.

**VIII.   INTERVENTION BY OR IMPLEADING OF THIRD PARTIES**

**A.    Pending Motions to Intervene**

**Defendants'** position**:** As the Court is aware, both T.M. and Ms. Yearwood have moved to intervene in this matter. Given Plaintiffs' decision to directly name both individuals in the

Complaint, the specific allegations made against both individuals, and the requested relief that, if granted, would directly impact the final season of high school sports for those two girls, the Defendants have informed the Court that they have no objection to and support both girls intervening in this matter. The CHRO also has moved to intervene in this matter. As set forth in the CHRO's briefs in support of its motion to intervene, the CHRO is the agency charged with enforcing this State's civil rights laws, including, but not limited to, Conn. Gen. Stat. § 10-15c(a).  Because this lawsuit addresses the civil rights of the Plaintiffs as well as transgender girls such as T.M. and Ms. Yearwood, the Defendants have no objection to and support the CHRO intervening as well.

Defendants respectfully request that such motions should be decided as soon as the Court is able, and to the extent possible before the disclosure of expert witnesses, so that the parties can incorporate their status into the planning on this case.

**Plaintiffs'** position: For the reasons set out in its submissions dated February 26, 2020 (ECF No. 47), March 4, 2020 (ECF No. 57), and March 6, 2020 (ECF No. 60), Plaintiffs believe that the motions to intervene of the individuals and of CHRO should be denied.  Plaintiffs note that the Attorney General of Connecticut, *not* CHRO, has statutory authority to represent the interests and views of the State of Connecticut in federal court, *see* Conn. Gen. Stat. § 3-125, and the State Attorney General has not sought to intervene.

        **B.**      **Participation by U.S. Governmental Agencies.**

           1.      U.S. Department of Justice

**Plaintiffs** note the filing, on March 24, of a Statement of Interest by the Attorney General of the United States and the Civil Rights Division of the Department of Justice.

        2.      <u>Department of Education Office for Civil Rights ("OCR")</u>

Plaintiffs previously filed a complaint with OCR in June 2019, which remains pending. OCR is the federal agency charged with interpreting and enforcing Title IX. OCR currently is investigating CIAC's transgender student-athlete policy, as well as the Board Defendants' adherence to that policy.

**Defendants** contend that because the investigation by OCR concerns the same policy at issue in this lawsuit, OCR clearly has an interest in the subject matter of this lawsuit, and if OCR is not brought into this lawsuit then the Court cannot provide full relief to the parties and the CIAC and the Board of Education defendants would be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FRCP 19(a). Therefore, Defendants anticipate at this time that they will move to add OCR as a party to this lawsuit, and request that they be allowed until March 26, 2020, to file motions to join additional parties.

**Plaintiffs** note that since filing their complaint with the OCR on June 17, 2019, Plaintiffs have had very little visibility into the OCR investigation and enforcement process. The OCR regulatory enforcement process is established and regulated by federal law and regulation, and Plaintiffs do not at present know whether or under what conditions this Court has authority to intervene in an OCR investigation outside the mechanisms provided by those laws and regulations. Other courts have permitted OCR investigations under Title IX and private lawsuits to proceed independently without attempting to combine the two by making the OCR a party to the litigation. *See Weckhorst v. Kansas State Univ.*, 241 F. Supp.3d 1154, 1157 (D. Kan. 2017) (civil lawsuit proceeding, with DOJ statement of interest filed on behalf of plaintiff, even while "Plaintiff's administrative complaint is still pending" before the Department of Education OCR);

*Grandson v. University of Minnesota*, 272 F.3d 568 (8th Cir. 2001) (private litigation filed

shortly after OCR investigation initiated).


THE PLAINTIFFS

BY:  /s/ Roger G. Brooks
Roger G. Brooks
CT Fed. Bar No. PHV10498
Jeffrey A. Shafer
CT Fed. Bar No. PHV10495
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
Email: rbrooks@ADFlegal.org
Email: jshafer@ADFlegal.org

Kristen K. Waggoner
CT Fed. Bar No. PHV10500
Christiana M. Holcomb
CT Fed. Bar No. PHV10493
Alliance Defending Freedom
440 First St. NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: kwaggoner@ADFlegal.org
Email: cholcomb@ADFlegal.org

Howard M. Wood III
CT Bar No. 68780, CT Fed. Bar No. 08758
James H. Howard
CT Bar No 309198, CT Fed. Bar No 07418
Fiorentino, Howard & Petrone, P.C.
773 Main Street
Manchester, CT 06040
Telephone: (860) 643-1136
Fax: (860) 643-5773
Email: howard.wood@pfwlaw.com
Email: james.howard@pfwlaw.com

THE DEFENDANTS

BY: /s/ Peter J. Murphy
PETER J. MURPHY (ct26825)
LINDA L YODER (ct01599)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: 860-251-5950
Facsimile: 860-251-5316
Email: pjmurphy@goodwin.com
For Connection Association of School and the Danbury Board of Education


BY: /s/ Johanna G. Zelman
Johanna G. Zelman (ct26966)
Elizabeth M. Smith
FordHarrison, LLP
CityPlace II
185 Asylum Street, Suite 610
Hartford, CT 06103
Telephone: 860-740-1355
Facsimile: 860-578-2075
Email: jzelman@fordharrison.com
For the Cromwell Board of Education and the Bloomfield Board of Education

BY: /s/ David S. Monastersky
David S. Monastersky (ct13319)
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 061114
Telephone: 860-249-1361
Facsimile: 860-249-7665
Email: dmonastersky@hl-law.com
For the Canton Board of Education and the Glastonbury Board of Education