UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SELINA SOULE**, *et al.*, | : | Docket No. 3:20-cv-00201-RNC |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **CONNECTICUT ASSOCIATION OF** | : | |
| **SCHOOLS, INC.**, *et al.*, | : | |
| Defendants | : | April 20, 2020 |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION**
**TO JOIN THE DEPARTMENT OF EDUCATION AS A PARTY TO THE ACTION**

In 2016, the U.S. Department of Justice ("DOJ") and the U.S. Department of Education ("DOE") (collectively "the Departments") issued a joint "Dear Colleague Letter on Transgender Students" stating that the "Departments treat a student's gender identity as the student's sex for purposes of Title IX and its implementing regulations."  That letter further stated that, when a school provides sex-segregated activities and facilities, "transgender students must be allowed to participate in such activities . . . consistent with their gender identity." At the same time, the Departments issued a document with "examples of policies and emerging practices for supporting transgender students." In the section addressing athletics, the Departments cited examples from New York, Rhode Island, and California that allowed students who are transgender to participate in athletics consistent with their gender identity.[1]

---

[1] Both of these documents remain available on the DOE's website. See: https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201702-title-ix.pdf; and https://www2.ed.gov/about/offices/list/oese/oshs/emergingpractices.pdf

In February 2017, the Departments withdrew and rescinded that 2016 guidance, but they did not replace it with anything different. In the absence of any guidance, the Departments stated that "there must be due regard for the ***primary role of the States and local school districts*** in establishing educational policy." This position was repeated again in a March 2020 report by DOE Office for Civil Rights ("OCR").[2] In Connecticut, Section 10-15c of the Connecticut General Statutes protects the fundamental rights of transgender students and ensures that such students have equal access to educational programming and activities, free of discrimination. Just like in the New York, Rhode Island, and California polices cited in the DOE's May 2016 document, the transgender participation policy adopted by the Connecticut Association of Schools ("CAS")/Connecticut Interscholastic Athletic Conference ("CIAC") provides that students who are transgender participate in athletics consistent with their gender identity.[3]

Despite the position expressed in February 2017 and March 2020 about "due regard for the primary role of States and local school districts," and despite the lack of any subsequently-issued guidance from the DOE on this subject, on March 24, 2020, the DOJ filed a Statement of Interest in this case. [Ecf. 75] In that Statement, the DOJ suggests that "the Court should not read Title IX to compel schools to require students to participate on sex-specific teams solely on the basis of their gender identity." The Statement fails to mention any of the prior guidance issued by the Departments.  Moreover, the Statement fails to mention the DOE at all.

---

[2] See https://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2017-18.pdf?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=, pp. 11 & 19.

[3] The CIAC is a division of the Connecticut Association of Schools, Inc.  See www.cas.casciac.org

The DOE is the federal agency charged with interpreting and enforcing Title IX of the Education Amendments of 1972 ("Title IX") on behalf of the United States.[4] Individuals who believe their Title IX rights have been violated may therefore file a complaint with the DOE's Office for Civil Rights.[5] In the Complaint, Plaintiffs acknowledge that they filed a complaint in 2019 with OCR, and that OCR is continuing with that proceeding. See Complaint ¶ 116-124.[6] Plaintiffs' complaint also is listed as an open proceeding on the DOE's website.[7]

It is a well-established concept that courts can and should join all absent persons to pending litigation who are necessary to avoid duplicative litigation, inconsistent judicial determinations, or other practical impairment of their legal interests all current parties to a litigation. The DOJ's recently-filed Statement of Interest states that the United States government has an interest in the subject matter of this litigation. That interest is located in the DOE, which interprets and enforces Title IX, and which is continuing its proceedings on

---

[4] See, e.g., https://www2.ed.gov/about/offices/list/ocr/frontpage/pro-students/issues/sex-issue.html ("The Office for Civil Rights (OCR) enforces Title IX of the Education Amendments of 1972, which prohibits discrimination based on sex in education programs and activities that receive federal financial assistance.").

[5] See https://www2.ed.gov/about/offices/list/ocr/complaintintro.html

[6] On April 17, 2020, Plaintiffs filed an Amended Complaint. [Ecf. 89]. Plaintiffs' filing was not in compliance with Fed. R. Civ. P. 15 because Plaintiffs did not receive Defendants' consent or permission from the Court to file an amended complaint. In fact, Plaintiffs did not even mention their intent to file the Amended Complaint in a telephone conference the day before with both the Defendants and the Court. At this time, the Defendants are assessing their possible responses to the purported Amended Complaint. Therefore, the citations in the text above are to the original, operative Complaint. [Ecf. 1]

[7] See https://www2.ed.gov/about/offices/list/ocr/docs/investigations/open-investigations/tix.html?page=8&offset=140

Plaintiffs' OCR complaint.[8] The DOE, however, is not a party to this lawsuit. As set forth more specifically below, the OCR complaint involves the same factual and legal claims as this lawsuit, and seeks the same relief. At this point, therefore, the Danbury Board of Education, the Bloomfield Board of Education, the Cromwell Board of Education, the Glastonbury Board of Education, and the Canton Board of Education (collectively "the Board Defendants"), and CAS are involved in legal proceedings in two different venues on the same exact subject matter, but the DOE is involved only in one of those proceedings.  The Defendants are therefore facing the possibility of inconsistent rulings concerning the CIAC's transgender participation policy.   For these reasons, the Defendants submit that the DOE, and Secretary of the Department of Education, Betsy DeVos, in her official capacity, are necessary parties to this action. Accordingly, the Defendants now move pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure to join DOE, its Office for Civil Rights, and Secretary DeVos, in her official capacity (collectively "DOE"), as parties to this action.[9]

---

[8] As noted in the text above, individuals who believe their Title IX rights have been violated can file a complaint with OCR.  According to OCR's case processing manual, the DOE is the agency that then investigates that complaint and the DOJ only becomes involved if OCR completes its investigation and then OCR refers the case to the DOJ for court enforcement. See https://www2.ed.gov/about/offices/list/ocr/complaints-how.html
When the DOE or Secretary DeVos is sued in Court, the DOJ will also represent the DOE.  *See, e.g.*, *Parents for Privacy v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1091 (D. Or. 2018). The DOE, therefore, the proper party to be asserting and defending the interest of the United States in this litigation.

[9] To the extent the Court determines that the Department of Education and Secretary DeVos are necessary parties, but that they cannot be joined as parties, the Defendants request that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19(b). *See, e.g.*, *McCarthy v. Higgins*, 2000 WL 1134479, at *3 (S.D.N.Y. Aug. 10, 2000) ("The inability to join an indispensable party mandates that the Court grant defendants' motion to dismiss.").

**I.     BACKGROUND**

The plaintiffs in this action are three (3) female high school athletes who attend Glastonbury High School, Canton High School, and Danbury High School. See Complaint ¶ 10-13. In their complaint and accompanying motion for preliminary injunction, Plaintiffs seek to prevent two (2) of their female competitors from participating in interscholastic outdoor and indoor track events on the basis of their sex assigned at birth. More specifically, Plaintiffs allege that Andraya Yearwood, from Cromwell High School, and T.M., from Bloomfield High School, are transgender girls who participate in girls track events pursuant to the CIAC's transgender participation policy. Id. ¶ 77-78. The policy allows student athletes, male or female, to participate in interscholastic athletics based on the gender identification of that student in current school records and daily life activities in the school and community at the time that sports eligibility is determined. Id. ¶ 71.

**A.     State of the Law**

In 2011, the Connecticut General Assembly passed a comprehensive transgender rights bill that specifically prohibits discrimination based on gender identity and expression in education, employment, public accommodation, and housing.  *See* Public Act 11-55.  In the educational context, this Public Act modified Section 10-15c of the Connecticut General Statutes, and protects the fundamental rights of transgender students and ensures that such students have equal access to educational programming and activities, free of discrimination.

In an opinion letter dated January 7, 2015, OCR interpreted how Title IX of the Education Amendments of 1972 ("Title IX") regulations should apply to transgender individuals (the "2015 Letter").  A true and accurate copy of the January 7, 2015 letter is attached as Exhibit

5

A. In particular, the 2015 Letter explained that "The Department's Title IX regulations permit schools to provide sex-segregated . . . . athletic teams . . . [and when a school elects to separate or treat students differently on the basis of sex in those situations . . . a school generally must treat transgender students consistent with their gender identity." *See* Ex. A, pg. 2.

On May 13, 2016, the DOJ and the DOE issued a joint "Dear Colleague Letter on Transgender Students" summarizing public schools' obligations regarding transgender students under Title IX and explaining how those departments evaluate a school's compliance with those obligations (the "2016 Letter").  A true and accurate copy of the 2016 Letter is attached as Exhibit B.  The 2016 Letter included notice that Title IX protects students from discrimination in school on the basis of gender identity, including in regard to names and pronouns, restrooms, and athletics.  *See* Ex. B.  The guidance made clear that Title IX allows students to participate in sex-segregated activities and access sex-segregated facilities consistent with their gender identity.  *Id.*

On February 22, 2017, however, the DOE and DOJ issued another Dear Colleague Letter that withdrew the May 2016 guidance (the "2017 Letter").  A true and accurate copy of the 2017 Letter is attached as Exhibit C. The 2017 letter withdrew the guidance provided previously in the 2015 Letter and the 2016 Letter, but did not replace it with any contrary guidance.  As one court aptly stated: "[T]he 2017 [Letter] did not propound any 'new' or different interpretation of Title IX or the Regulation, nor did the 2017 [Letter] affirmatively contradict the 2015 and 2016 Guidance documents.  It instead appears to have generated an interpretive vacuum pending further consideration by those federal agencies of the legal issues involved in such matters." *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 298 (W.D. Pa. 2017).  Although it created an "interpretive vacuum" in regard to federal law, the 2017 Letter was unequivocal in stating that "the Departments believe that, in this context, there must be due regard for the

primary role of the ***States and local school districts*** in establishing educational policy." *See* Ex. C (emphasis added). As noted previously, this has been repeated by OCR as recently as March 2020.

Accordingly, on February 23, 2017, then-Governor Dannel P. Malloy and Connecticut Commissioner of Education Dianna R. Wentzell jointly issued a memorandum to Connecticut superintendents of schools reaffirming Connecticut's unwavering commitment to provide every student in Connecticut with access to a high quality education in a safe, supportive, inclusive and welcoming environment. The same day, Governor Malloy signed an executive order ensuring that the rights of transgender students receiving an education continue uninterrupted. A true and accurate copy of the executive order signed by Governor Malloy is attached as Exhibit D. Additional guidance was published by the Connecticut State Department of Education in September 2017, which made clear that both federal and state laws protect transgender and gender non-conforming students from discrimination. *See* Exhibit E. As previously noted, Connecticut Public Act 11-55 specifically addressed antidiscrimination on the basis of gender identity and expression. Hence, Connecticut law requires that transgender students be permitted to participate in sex-segregated activities consistent with their gender identity.

### B.  Plaintiffs' OCR Complaint

On or about June 17, 2019, Plaintiffs in this action submitted a complaint with OCR alleging discrimination under Title IX (the "OCR Complaint"). A true and accurate copy of the OCR Complaint is attached as Exhibit F. Many, if not most, of the allegations in the OCR Complaint mirror the allegations in the Complaint filed in this action. *Compare* Exhibit F with the Complaint, ECF no. 1. In the OCR Complaint, Plaintiffs requested OCR to investigate the

alleged violations of Title IX described in the OCR Complaint. They also sought an order from OCR requiring CIAC to, among other things:

>   (1)  revise its rules to exclude individuals who are in all physiological and hormonal respects males from participating in girls' or women's athletic competitions;
>
>   (2)  issue revised records of all girls' athletic competitions from 2017 to the present in which any biological male participated who would have been disqualified by application of (1) above, removing such individuals from any list of winners or qualifiers for participation in any further competition;
>
>   (3)  issue a press release naming and giving proper credit – including championship credit as appropriate – to every girl who would have been identified as a champion or as qualifying for participation in a higher-level competition but for the participation in any meet of any biological male who would have been disqualified by application of (1) above; and
>
>   (4)  issue a declaration that Title IX neither permits nor requires CIAC's Policy that allows biological males to compete in high school women's athletic events.[10]

*See* OCR Complaint at p. 25. In the Complaint, Plaintiffs seek relief that essentially mirrors the relief they seek in the OCR Complaint, namely:

>   (1)  A declaration that Defendants have violated Title IX by failing to provide competitive opportunities that effectively accommodate the abilities of girls;
>
>   (2)  A declaration that Defendants have violated Title IX by failing to provide equal treatment, benefits, and opportunities for girls in in athletic competition;
>
>   (3)  An injunction prohibiting all Defendants, in interscholastic athletic competitions sponsored, organized, or participated in by the Defendants or any of them, from permitting males—individuals with an XY genotype—from participating in events that are designated for girls, women, or females;
>
>   (4)  An injunction requiring all Defendants to correct any and all records, public or non-public, to remove male athletes from any record or recognition purporting to record times, victories, or qualifications for elite competitions designated for girls or women, and conversely to correctly give credit and/or titles to female

---

[10] This language is taken directly from Plaintiffs' OCR complaint. As noted in prior submissions to this Court, Defendants find Plaintiffs repeated references to Ms. Yearwood and T.M. as "male" to be inappropriate and offensive.

8

athletes who would have received such credit and/or titles but for the participation of males in such competitions;

(5)  An injunction requiring all Defendants to correct any and all records, public or non-public, to remove times achieved by male athletes from any records purporting to record times achieved by girls or women;

(6)  An award of nominal and compensatory damages and other monetary relief as permitted by law; and

(7)  An award of Plaintiffs' reasonable attorneys' fees and expenses, as authorized by 42 U.S.C. § 1988.

*Compare* OCR Complaint at p. 25 with the Complaint at pp. 49-50.

After Plaintiffs filed the OCR Complaint in June 2019, OCR opened an investigation of Plaintiffs' allegations.  On February 12, 2020, Plaintiffs commenced this action, seeking the same relief as requested previously in the OCR complaint. In that situation, OCR's Case Processing Manual states that "OCR **will dismiss**…the complaint in its entirety when…[t]he same or a similar allegation based on the same operative facts has been filed…by the complainant… against the same recipient with…federal court."[11] Similarly, OCR's website advises complainants that, "if you proceed with your claim in a court, **OCR will not continue to pursue your OCR complaint**." (emphasis added).[12] Despite the plain language of its own case processing manual and the DOE's website, OCR has informed counsel for the Defendants that it will be continuing its proceeding despite the fact that the Plaintiffs have filed this lawsuit.[13]

---

[11] The CPM is available at: https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf

[12] See https://www2.ed.gov/about/offices/list/ocr/qa-complaints.html

[13] The undersigned counsel have personal knowledge of the factual statements made above through telephone conference calls with representatives of OCR and are reporting the same as an offer of proof and as officers of the Court. Counsel can provide documents or correspondence that have not yet been made public by OCR in support of such statements if requested by the Court.

9

## II. ARGUMENT

### A. Pursuant To Fed.R.Civ.P 19(a), The Court Must Join "Required Parties" To The Action.

Rule 19 of the Federal Rules of Civil Procedure addresses when a court must order the joinder of persons or entities who are not yet a party to an action. Fed. R. Civ. P. 19(a) provides, in pertinent part, as follows:

(1)   *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction ***must*** **be joined** as a party if:

   (A)   in that person's absence, the court cannot accord complete relief among existing parties; or

   (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

      (i)   as a practical matter impair or impede the person's ability to protect the interest; or

      (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2)   *Joinder by Court Order.* **If a person has not been joined as required, the court must order that the person be made a party**. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed.R.Civ.P. 19(a) (emphasis added). Under Rule 19, parties should be joined when their absence will either materially reduce the likelihood that the court can provide justice for those already parties or be detrimental to the non-parties themselves. *See, e.g., Hammond v. Clayton*, 83 F.3d 191, 195 (7th Cir. 1996) ("Rule 19 is designed to protect the interests of absent persons, as well as those already before the court, from duplicative litigation, inconsistent judicial determinations, or other practical impairment of their legal interests.").

When assessing a motion to join a party under Rule 19, "the court must [first] determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a '[required] party' under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  Second, if a party qualifies as a ["required"] party, the Court must determine if it is feasible to join that party. *Id.*  A court considering such joinder should take into account all relevant facts, and its analysis should "emphasize pragmatic considerations rather than rigid formalism."  *Gentry v. Smith*, 487 F.2d 571, 579 (5th Cir. 1973); *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 133 (2d Cir. 2013).  Ultimately, "[t]here is no precise formula for determining whether a particular nonparty should be joined . . . . The determination is heavily influenced by the facts and circumstances of each case."  *Equal Employment Opportunity Comm'n v. Peabody W. Coal Co.* ("EEOC"), 610 F.3d 1070, 1081 (9th Cir. 2010) (internal quotations omitted).

The pragmatic considerations that the Court should consider include: (1) whether judgment rendered in a party's absence might prejudice that party or other parties to the action, (2) the extent to which prejudice may be alleviated, (3) whether judgment in the party's absence would be adequate, and (4) whether a plaintiff would have adequate remedy if the court dismissed the suit.  *See Marvel Characters*, 726 F.3d at 133.  The Court should also be mindful of the policy considerations of Rule 19, which favor "avoidance of unnecessary or multiple litigation," provision of "complete relief to the parties, and "protection of the rights and interests of any absent parties."  *Yonofsky v. Wernick*, 362 F.Supp. 1005, 1022–23 (S.D.N.Y. 1973); *see also* Rule 19 Advisory Committee's Notes to 1966 amendments ("Whenever feasible, the persons materially interested in the subject of an action … should be joined as parties so that they may be heard and a complete disposition made.")

11

### B.     The Department of Education Is A "Required Party" That The Court Must Join To The Action Pursuant to Rule 19(a)(1)(B).

#### 1.     The Department of Education is subject to service of process and its joinder would not deprive the Court of subject matter jurisdiction.

The Department of Education, acting through its Office of Civil Rights, is a federal agency responsible for ensuring equal access to education through the enforcement of civil rights.  *See* https://www2.ed.gov/about/offices/list/ocr/index.html.  As a federal agency, it is subject to service of process pursuant to Rule 4(i)(2) of the Federal Rules of Civil Procedure.  *See* Fed.R.Civ.P. 4(i)(2).  Secretary DeVos also is subject to service under Fed.R.Civ.P 4(i).  Moreover, according to the Complaint, this is an action pursuant to Title IX, 20 U.S.C. § 1681, *et seq.*, and its interpreting regulations, which allegedly raises federal questions and seeks redress for deprivation of rights protected by federal law.  *See* Compl. ¶ 6.  The alleged basis for subject matter jurisdiction is federal question jurisdiction under 28 U.S.C. § 1331, and jurisdiction under 28 U.S.C. § 1343(a) for claims seeking vindication of civil rights protected by federal law.  *Id.* at ¶ 7.  Accordingly, joining the DOE and Secretary DeVos as parties to the action would not deprive the Court of subject matter jurisdiction.

#### 2.     Proceeding without the Department of Education would impair its interests and leave the existing parties at risk of inconsistent obligations.

Because the DOE and Secretary DeVos are subject to service of process and their joinder would not deprive the Court of subject matter jurisdiction, the Court must join them as parties under Rule 19(a)(1)(B) if it finds that "[DOE] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [absence of DOE] may: (i) as a practical matter impair or impede [DOE's] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

obligations because of the interest." *See* Fed.R.Civ.P. 19(a)(1)(B). As set forth below, both of those elements are met in this case, and therefore joinder is appropriate.

> a) The Department of Education has an interest in this action that would be impaired if it were not joined.

As established previously in this Memorandum, it is undisputed that: (1) the DOE, through its Office for Civil Rights, is the federal agency charged with interpreting and enforcing Title IX and therefore has an interest in the interpretation of Title IX, (2) Plaintiffs filed a complaint with OCR alleging violations of Title IX in regard to CIAC's transgender policy, and (3) that OCR proceeding is ongoing. The DOE clear has an interest in the subject matter of this litigation.

It also is undisputed that the DOE's interest in the subject matter of this litigation would be impaired if it is not joined as a party. The claims asserted by the Plaintiff in this action will require the Court to interpret Title IX as it applies the participation of students who are transgender on sex-segregated athletic teams, which apparently is an issue of first impression. When making this evaluation, the Court will be required to evaluate the DOE's inconsistent actions concerning Title IX in the 2015 Letter, the 2016 Letter, in the 2017 Letter, and the DOE documents still available on the DOE website. *See, e.g.*, Exhibits A, B, & C. The Court also will need to evaluate the interests of the United States and how they intersect with the interests and laws of Connecticut. Given the "interpretive vacuum" left by the Departments' action in February 2017; *Evancho*, supra, 237 F. Supp. 3d at 298; the Court's analysis in this case will impact or modify the DOE's position on Title IX and its application to sex-segregated activities. Courts have concluded that "[a] public agency has an interest in a lawsuit that could result in the invalidation or modification of one of its . . . rules [or] regulations . . . ." *EEOC*, 610 F.3d at 1082 (finding that the Secretary of the Department of Interior had interest in claim that sought to

13

enjoin a lease term that the Secretary had approved and overseen).  For this reason, the DOE regularly is made a party to actions addressing the interpretation of Title IX and policies affecting transgender students.  *See Parents for Privacy v. Dallas Sch. Dist. No. 2,* 326 F. Supp. 3d 1075, 1091 (D. Or. 2018), *aff'd sub nom. Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) (challenging the rights of transgendered students under Title IX to use restrooms, locker rooms, and showers that match their gender identity rather than their biological sex assigned at birth and naming the DOE as a defendant in order to enjoin the DOE from "enforcing Title IX in a manner that requires [a school district] to give any students the right of entry to, and use of, the private facilities (including locker rooms, showers and restrooms) designated for students of the opposite sex.").  As such, the first element of the Rule 19(a) analysis is satisfied.

           b)      <u>Absent joinder of OCR, the parties could be subject to inconsistent obligations.</u>

Once it is established that a party has an interest in the lawsuit, a court must next determine whether disposing of the lawsuit in the absence of the DOE would "(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed.R.Civ.P. 19(a)(1)(B).

In *California Dump Truck Owners Ass'n v. Nichols*, the United States District Court for the Eastern District of California granted a motion to join the United States Environmental Protection Agency ("<u>EPA</u>") as a required party to the lawsuit.  *See* 924 F. Supp. 2d 1126 (E.D. Cal. 2012), *aff'd*, 778 F.3d 1119 (9th Cir. 2015), *withdrawn from bound volume, and aff'd*, 784 F.3d 500 (9th Cir. 2015).  The plaintiffs filed suit to enjoin enforcement of California's "Regulation to Reduce Emissions of Diesel Particulate Matter, Oxides of Nitrogen and Other Criteria Pollutants, from In–Use Heavy–Duty Diesel–Fueled Vehicles," Cal.Code Regs. tit. 13, § 2025 ("<u>Regulation</u>"), because federal law allegedly preempted the state regulation.  *Id.* at 1131.

The parties filed cross-motions for summary judgment and after the court took the motions under submission, the EPA issued a decision approving California's State Implementation Plan, which incorporated the Regulation. *Id.* The court then ordered supplemental briefing on the impact of the EPA's decision on the merits of the action and whether the EPA is a necessary and indispensable party that must be joined. *Id.*

In reaching the decision that the EPA was a required party that must be joined under Fed. R. Civ. P. 19(a), the court noted that a public agency has an interest in a lawsuit that could result in the invalidation or modification of one of its rules regulations (citing the *EEOC* decision), and further noted that, "the EPA has a strong interest 'in defending and enforcing air pollution control laws it approved and which are federal law.'" *Nichols*, 924 F. Supp. 2d at 1148. Because of the EPA's strong interest in interpreting and enforcing federal regulations, the court concluded that a decision invalidating the Regulation on preemption grounds would "necessarily upset the EPA's final decision approving the Regulation as part of California's SIP and would create practical problems with SIP's enforceability." *Id.* Additionally, the court reasoned that because the EPA had concluded there were no obstacles to the Regulations' enforceability under either state or federal law, a contrary decision by the court would create doubts as to the appropriateness of the EPA's determination. *Id.* More specifically, the Court noted that "the relief that Plaintiff seeks will still depend on independent decisions by the EPA, which is not a party to this litigation, and which retains 'broad and legitimate discretion' to demand CDTOA' members to comply with the Regulation's requirements." *Id*. 1147. Thus, the Court determined that the EPA was a required party that had to be joined to the action under Fed. R. Civ. P. 19(a).

The reasoning in *Nichols* is just as applicable to this case. Just like with the EPA in *Nichols*, the Court should find that the DOE has a strong interest in interpreting and enforcing

Title IX as it applies to sex-segregated activities and the CIAC's transgender participation policy. Just like in *Nichols*, the parties' rights are subject to ongoing interpretation by the DOE, through the pending proceedings before its Office for Civil Rights, and there is a very real risk that the parties could be subject to inconsistent obligations if the Court does not join the DOE and Secretary DeVos as parties to this lawsuit. For example, if OCR finds in the Plaintiffs' favor in the OCR proceeding, but the Court finds in favor of the Defendants in this action, or *vice versa*, the parties would be subject to inconsistent obligations. Because of that, the Court should find that the DOE and Secretary DeVos are a required parties under Fed. R. Civ. P. 19(a)(1)(B).

        C.      <u>**The Court May Also Join the DOE Under Fed.R.Civ.P. 20.**</u>

Even if the Court were to determine that the DOE and Secretary DeVos are not a "required party," such that their joinder is mandated by Rule 19(a), the Court has the discretion to join the DOE and Secretary DeVos as parties under Rule 20(a). Rule 20(a) states that numerous plaintiffs may join together in one action if: (1) they assert a right to relief jointly or severally; or (2) if their claims arise out of the same transaction or occurrence, or same series of transactions and occurrences, and there is a common question of law or fact. Fed. R. Civ. P. 20(a). Similarly, a plaintiff may join several defendants together if they assert a right to relief jointly or severally, or if the claims against defendants arose out of the same transaction or occurrence and there are common questions of law or fact. *Id*.

Again, given DOE and Secretary DeVos' strong interest in interpreting and enforcing Title IX, and given the DOE's refusal to dismiss the OCR complaint following the filing of this lawsuit, the very real risk that the parties could be subject to inconsistent obligations if the Court did not join DOE and Secretary DeVos as a parties. Moreover, there are common, identical questions of law and fact from OCR's proceeding and this lawsuit. Therefore, the Court should

exercise its discretion under Fed.R.Civ.P. 20 and join DOE and Secretary DeVos as parties to the action.

### III.    CONCLUSION

For the reasons set forth above, the Court should grant the motion and join the DOE and Secretary DeVos as parties to this lawsuit, together with such further and additional relief this Court deems necessary.

BY: /s/ Peter J. Murphy
PETER J. MURPHY (ct26825)
LINDA L YODER (ct01599)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: 860-251-5950
Facsimile: 860-251-5316
Email: pjmurphy@goodwin.com
For Connection Association of School and the Danbury Board of Education


BY: /s/ Johanna G. Zelman
Johanna G. Zelman (ct26966)
Elizabeth M. Smith
FordHarrison, LLP
CityPlace II
185 Asylum Street, Suite 610
Hartford, CT 06103
Telephone: 860-740-1355
Facsimile: 860-578-2075
Email: jzelman@fordharrison.com
For the Cromwell Board of Education and the Bloomfield Board of Education

BY: /s/ David S. Monastersky
David S. Monastersky (ct13319)
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 061114
Telephone: 860-249-1361
Facsimile: 860-249-7665
Email: dmonastersky@hl-law.com
For the Canton Board of Education and the Glastonbury Board of Education

CERTIFICATION OF SERVICE

This is to certify that on April 20, 2020, a copy of the foregoing Motion and Memorandum of Law were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. In addition, a copy of this Motion, Memorandum of Law, and the Complaint in this matter will be:

A. Delivered to:

John H. Durham
United States Attorney for the District of Connecticut
United States Attorney's Office
157 Church Street
New Haven, CT 06510

B. Sent by certified mail to the civil-process clerk at the:

United States Attorney's Office
157 Church Street
New Haven, CT 06510

C.  Sent by registered or certified mail to:

William P. Barr
Attorney General of the United States
Office of the Attorney General
441 4th St NW #1100
Washington, D.C. 20001

D.  Sent by registered or certified mail to:

Betsy DeVos
Secretary of Education
United States Department of Education
400 Maryland Avenue, SW
Washington, DC 20202

                                                            /s/ Peter J. Murphy
                                                            Peter J. Murphy

8597726v1