# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - x
                                :
SELINA SOULE, A MINOR, BY       :  No. 3:20CV201(RNC)
 BIANCA STANESCU, HER MOTHER,   :
CHELSEA MITCHELL, A MINOR, BY   :
 CHRISTINA MITCHELL, HER MOTHER,:
ALANNA SMITH, A MINOR, BY       :
 CHERYL RADACHOWSKY, HER MOTHER,:
                                :
               Plaintiffs,      :
                                :
         vs                     :
                                :
CONNECTICUT ASSOCIATION         :
 OF SCHOOLS, INC., D/B/A        :
 CONNECTICUT INTERSCHOLASTIC    :
ATHLETIC CONFERENCE, ET AL.     :
                                :  HARTFORD, CONNECTICUT
               Defendants.      :  APRIL 16, 2020
                                :
- - - - - - - - - - - - - - - - x
```

TELEPHONE CONFERENCE ON MOTIONS


    BEFORE:

         HON. ROBERT N. CHATIGNY, U.S.D.J.




                         DARLENE A. WARNER, RDR
                         OFFICIAL COURT REPORTER

APPEARANCES:

      FOR THE PLAINTIFFS:

            ALLIANCE DEFENDING FREEDOM
                  15100 N. 90th Street
                  Scottsdale, Arizona 85260
            BY:   JEFF SHAFER, ESQ.
                  ROGER GREENWOOD BROOKS, ESQ.
                  CHRISTIANA M. HOLCOMB, ESQ.

            FIORENTINO, HOWARD, PATRONE, P.C.
                  773 Main Street
                  Manchester, Connecticut 06040
            BY:   JAMES H. HOWARD, ESQ.

      FOR THE DEFENDANTS:

            SHIPMAN & GOODWIN
                  One Constitution Plaza
                  Hartford, Connecticut 06103-2819
            BY:   LINDA L. YODER, ESQ.
                  PETER JOSEPH MURPHY, ESQ.

            FORD HARRISON, LLP
                  CityPlace II
                  185 Asylum Street
                  Suite 610
            BY:   JOHANNA G. ZELMAN, ESQ.

            HOWD & LUDORF
                  65 Wethersfield Avenue
                  Hartford, Connecticut 06114-1190
            BY:   DAVID S. MONASTERSKY, ESQ.

```
        FOR THE PROPOSED INTERVENORS:

                AMERICAN CIVIL LIBERTIES UNION - NY
                    125 Broad Street
                    Floor 18
                    New York, New York 10004
                BY:  JOSHUA  A. BLOCK, ESQ.
                    CHASE STRANGIO, ESQ.

                AMERICAN CIVIL LIBERTIES UNION - CT
                    765 Asylum Avenue, 1st Floor
                    Hartford, Connecticut 06105
                BY:  DAN BARRETT, ESQ.

                COMMISSION ON HUMAN RIGHTS & OPPORTUNITIES
                    450 Columbus Boulevard Avenue, Suite 2
                    Hartford, Connecticut 06103
                BY:  MICHAEL ROBERTS, ESQ.
```

1 ████████████    ███████████████████████

2 ██████████████████████████████████████

3 ████████████████████████████████████

4 ████████████    ██████████████████████

5 ████████████████████████████████████

6 ██████████████████████████████

7          THE COURT:  All right, thank you.

8          Let me raise a point that undoubtedly will cause

9 some consternation for you, Mr. Brooks, and your

10 colleagues, but I exercise my prerogative as the presiding

11 judge in this instance and I hope you will forgive me.

12          I don't think we should be referring to the

13 proposed intervenors as "male athletes."  I understand

14 that you prefer to use those words, but they're very

15 provocative, and I think needlessly so.  I don't think

16 that you surrender any legitimate interest or position if

17 you refer to them as transgender females.  That is what

18 the case is about.  This isn't a case involving males who

19 have decided that they want to run in girls' events.  This

20 is a case about girls who say that transgender girls

21 should not be allowed to run in girls' events.

22          So going forward, we will not refer to the

23 proposed intervenors as "males"; understood?

24          MR. BROOKS:  Your Honor, I hear what you're

25 saying.  If I may respond?

1          THE COURT:  No, no, I just want to be sure you

2    understand what I'm saying.

3          MR. BROOKS:  May I respond?

4          THE COURT:  If you first tell me you understand

5    what I'm saying.

6          MR. BROOKS:  I do understand what you're saying.

7          THE COURT:  All right, then go ahead.  If you

8    want to respond, go right ahead.

9          MR. BROOKS:  Your Honor is right that this is

10   exactly what the case is about.

11         The entire focus of the case has to do with the

12   fact that male bodies have a physiological advantage over

13   female bodies that gives them an unfair advantage to

14   competition.

15         The entire focus of the case is the fact that

16   the CIAC policy allows individuals who are

17   physiologically, genetically male to compete in girls'

18   athletics.

19         But if I use the term "females" to describe

20   those individuals -- and we've said in our opening brief,

21   we're happy to use their preferred names, because

22   names are not the point to the case.  Gender identity is

23   not the point of this case.  The point of this case is

24   physiology of bodies driven by chromosomes and the

25   documented athletic advantage that comes from a male body,

1   male hormones, and male puberty in particular.

2           So, Your Honor, I do have a concern that I am

3   not adequately representing my client and I'm not

4   accurately representing their position in this case as it

5   has to be argued before Your Honor and all the way up if I

6   refer to these individuals as "female," because that's

7   simply, when we're talking about physiology, that's not

8   accurate, at least in the belief of my clients.

9           So I believe --

10          THE COURT:  I'm fairly --

11          MR. BROOKS:  I --

12          THE COURT:  Go ahead, I'll let you finish.

13          MR. BROOKS:  So I believe, consistent with

14  vigorous representation of my clients, I am not -- as I

15  sit here right now, Your Honor, this is a serious thing to

16  say -- I am not sure that I can comply with that direction

17  consistent with vigorous representation of the position

18  that my clients are putting forward here.

19          If you see Dr. Brown's expert report that we put

20  in in support of the preliminary injunction, you will see

21  that it's all about male and female bodies using the terms

22  as they're understood in science, and we can't get away

23  from that.

24          THE COURT:  Mr. Brooks, are you done?

25          MR. BROOKS:  I am.

```
 1              THE COURT:  Okay, thank you.

 2              I'm not asking you to refer to these individuals

 3      as "females."  I know that you don't want to do so.  What

 4      I'm saying is you must refer to them as "transgender

 5      females" rather than as "males."  Again, that's the more

 6      accurate terminology, and I think that it fully protects

 7      your client's legitimate interests.  Referring to these

 8      individuals as "transgender females" is consistent with

 9      science, common practice and perhaps human decency.

10              To refer to them as "males," period, is not

11      accurate, certainly not as accurate, and I think it's

12      needlessly provocative; and, for me, civility is a very

13      important value, especially in litigation.

14              So if you feel strongly that you and your

15      clients have a right to refer to these individuals as

16      "males" and that you therefore do not want to comply with

17      my order, then that's unfortunate.  But I'll give you some

18      time to think about it and you can let me know if it's a

19      problem.  If it is, gosh, maybe we'll need to do

20      something.  I don't want to bully you, but at the same

21      time, I don't want you to be bullying anybody else.

22              Maybe you might need to take an application to

23      the Court of Appeals.  I don't know.  But I certainly

24      don't want to put civility at risk in this case.  Quite

25      the opposite.  My goals for this case include, very
```

1    importantly, the goal of maintaining civil discourse,

2    respectful, humane, intelligent, civil discourse in the

3    course of the case.  Nothing more, nothing less.

4             Beyond that, let me turn now to Mr. Block and

5    ask:  Is there anything more that you want to say in

6    support of your application to intervene?

7             MR. BLOCK:  Your Honor, this isn't on the merits

8    of the application, but if we could have some guidance

9    about in terms of upcoming deadlines, whether we should

10   tender a request for a prefiling conference or any other

11   stuff while we, you know, wait for either a future filing

12   or an order, that would be helpful for us in just figuring

13   out how to proceed.

14            THE COURT:  Whoever is pressing buttons on their

15   phone, please don't do that.

16            Let me now come back to Mr. Brooks.

17            Mr. Brooks, this is your opportunity to make

18   whatever presentation you want to make this morning in

19   opposition to the motion to intervene filed on behalf of

20   the transgender females.

21            Is there anything you would like to add to your

22   papers?

23            MR. BROOKS:  Yes, Your Honor, briefly; but may I

24   ask a follow-up question on your earlier instruction?

25            THE COURT:  Sure.

1          MR. BROOKS:  Do you have any objection to our

2   referring to those intervenors simply as transgender

3   athletes?

4          THE COURT:  That's fine.  That's fine with me.

5          MR. BROOKS:  Am I correct that you also have no

6   objection to our discussing, as need be to make argument,

7   the fact that they have male bodies and, in at least one

8   case, don't deny that they went through male puberty?

9          THE COURT:  That is your prerogative, certainly.

10  As you say, that's what the case is about.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25