## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SELINA SOULE, a minor, by Bianca Stanescu, her mother; CHELSEA MITCHELL, a minor, by Christina Mitchell, her mother; ALANNA SMITH, by Cheryl Radachowsky, her mother, | |
| Plaintiffs, | No. 3:20-cv-00201 (RNC) |
| v. | |
| CONNECTICUT ASSOCIATION OF SCHOOLS, INC. d/b/a CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE; BLOOMFIELD PUBLIC SCHOOLS BOARD OF EDUCATION; CROMWELL PUBLIC SCHOOLS BOARD OF EDUCATION; GLASTONBURY PUBLIC SCHOOLS BOARD OF EDUCATION; CANTON PUBLIC SCHOOLS BOARD OF EDUCATION; DANBURY PUBLIC SCHOOLS BOARD OF EDUCATION | |
| Defendants. | |

## OPPOSITION TO DEFENDANTS' MOTION TO JOIN THE DEPARTMENT OF EDUCATION AS A PARTY TO THIS ACTION

The United States Department of Education, its Office for Civil Rights ("OCR"), and Secretary of Education Betsy DeVos, in her official capacity (collectively, "ED"), respectfully submit this opposition to Defendants' motion to join ED as a party to this action.

## INTRODUCTION

Defendants, five Connecticut public school boards of education and a nonprofit education corporation, seek to join ED as a party to this private litigation that challenges Defendants'

compliance with Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a). Defendants contend that joinder of ED is necessary both to protect ED's interests and to prevent the possibility that Defendants will face inconsistent obligations.  Defendants are mistaken on both counts.

Defendants' suggestion that they know better than the United States how to adequately protect the federal government's interests should be rejected.  In this lawsuit, ED's interests in the proper interpretation of Title IX and in ensuring that federal funds are not used to discriminate on the basis of sex have been protected through the United States' submission of a Statement of Interest and through the administrative processing of Plaintiffs' OCR complaint.  Had the United States believed that being a party to this lawsuit was necessary to adequately protect its interests, it could have sought intervention rather than submit a Statement of Interest.  Indeed, Defendants have it precisely backwards:  joinder of ED to this lawsuit would substantially harm ED's interest by forcing ED to engage in a process outside the established administrative process for resolving Plaintiffs' administrative complaint, when ED has not even concluded how it will handle the alleged Title IX violations.

Defendants' concerns about their alleged risk of facing inconsistent obligations fare no better.  Defendants contend that they would be subjected to conflicting adjudications if this Court were to rule in their favor yet the administrative process were to conclude with a determination that Defendants violated Title IX (or vice versa).  But these speculative concerns about the end-result of the administrative process are not—and may never become—ripe.  ED has not completed its administrative process, and, as explained more fully below, there are still numerous steps until there is even the possibility that Defendants might face inconsistent obligations.  At this juncture, any risk that Defendants would face inconsistent obligations is entirely speculative, and consideration of joinder is at best premature.  Defendants fail to establish any non-speculative risk of facing

inconsistent obligations if ED were not joined to this litigation at this time.  In any event, any risk of inconsistent obligations is not *caused* by ED's absence from this litigation, but by Plaintiffs' decision to file a lawsuit while their administrative complaint was still being resolved.  And Defendants identify no authority for the remarkable proposition that Rule 19 requires joinder of a federal agency *whenever* an agency conducts an investigation of an entity that is also subject to a private lawsuit for the same underlying conduct.

Even if Defendants could establish the necessity of joining ED as a party, Defendants fail to explain how joinder of ED would be feasible.  Indeed, Defendants do not even identify whether they seek to join ED as a plaintiff or a defendant, thereby leaving ED and the Court to speculate as to a myriad of issues, including the nature of the possible cause of action, whether there has been a waiver of ED's sovereign immunity, and whether Defendants even have standing to sue. Defendants bear the burden of establishing the appropriateness of joinder, and their motion, devoid of even a basic discussion of *how* ED should be a party to this litigation, is fatally flawed.  In any event, it is apparent that Defendants cannot identify any viable cause of action that they could bring against ED (or vice versa), any waiver of sovereign immunity, or standing under Article III.  Because joinder of ED is not feasible, Defendants' motion for mandatory joinder should be denied.

Finally, Defendants contend, in the alternative, that ED should be subject to permissive joinder under Rule 20.  In doing so, however, they simply recycle their arguments concerning joinder under Rule 19.  These arguments fail under Rule 20 for the same reason they fail under Rule 19.  In addition, joinder of ED does not meet the conditions for joinder under Rule 20(a) and would inject new issues into this case, resulting in potential delay and increased costs.  Defendants' motion should be denied.

## BACKGROUND

In response to Plaintiffs' complaint to OCR, ED is currently pursuing its administrative process regarding Defendants' alleged violations of Title IX.  Despite this ongoing process, Defendants inappropriately seek to join ED as a party to this litigation.  This attempt to end-run the administrative process by prematurely raising this matter in federal court and attempting to force ED to litigate here is improper.[1]

As the Supreme Court has explained, "Title IX's express means of enforcement—by administrative agencies— . . . entitles agencies who disburse education funding to enforce their rules implementing the nondiscrimination mandate through proceedings to suspend or terminate funding or through 'other means authorized by law.'"  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288 (1998) (quoting 20 U.S.C. § 1682).  Title IX is primarily enforced in two ways: (1) through private actions by injured parties directly against recipients; and (2) by federal agencies, such as ED, that provide funding to educational programs.  *See* Ex. A (Wills Decl. ¶ 8).  Private actions typically seek monetary damages and injunctive relief.  *Id.* ¶ 9.  Agencies bringing enforcement actions, by contrast, are required by statute to first seek an agreement by the recipient to comply with Title IX, including corrective action, before seeking termination of federal funding.  *Id.* ¶ 9.

ED enforces civil rights laws, including Title IX.  OCR's core mission is to ensure equal access to education and to promote educational excellence throughout the nation through vigorous enforcement of civil rights, including Title IX.  *Id.* ¶ 5.  OCR's primary activities include: (i) resolving complaints of discrimination filed by the public pursuant to 34 C.F.R. §100.7(b); (ii) conducting agency-initiated investigations, typically called compliance reviews or directed investigations, which permit OCR to target resources on matters that warrant OCR's attention, pursuant to 34 C.F.R.

---

[1] ED's Title IX regulation adopts and incorporates ED's procedural regulations for Title VI of the Civil Rights Act of 1964, *see* 34 C.F.R. § 106.71, which are therefore cited in the text.

§ 100.7(a); (iii) monitoring recipients' adherence to resolution agreements reached with OCR; (iv) issuing regulations and policy guidance on the civil rights laws that OCR enforces; (v) answering stakeholder inquiries and responding to requests for information from and providing technical assistance to recipients and stakeholders; and (vi) administering and disseminating the Civil Rights Data Collection. *Id.* ¶ 7.

When a complaint alleging noncompliance with Title IX is filed, the agency will "make a prompt investigation" which, "should include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with [Title IX] occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with [Title IX]. 34 C.F.R. § 100.7(c). If the investigation indicates a failure to comply with Title IX, the agency will so inform the recipient and the matter will be resolved by informal means whenever possible. *Id.* § 100.7(d); *see* 20 U.S.C. § 1682. When Title IX compliance cannot be achieved by informal means, compliance "may be effected by the suspension or termination of a refusal to grant or to continue Federal financial assistance or by any other means authorized by law." 34 C.F.R. § 100.8(a); *see* 20 U.S.C. § 1682. Those "other means" may include, among other actions, a referral to the Department of Justice with a "recommendation that appropriate proceedings be brought to enforce any rights of the United States under any law of the United States (including other titles of the Act), or any assurance or other contractual undertaking," and "any applicable proceeding under State or local law." 34 C.F.R. § 100.8(a). Importantly, the agency may not take any action to effect compliance by any other means authorized by law until: (1) the responsible agency official has determined that compliance cannot be secured by voluntary means; (2) the recipient has been notified of its failure to comply and the action to be taken to effect compliance; and (3) the expiration of at least 10 days from the mailing of such notice to the recipient. *Id.* § 100.8(d). These steps have not been completed.

Where the agency seeks to achieve compliance through the termination, suspension, or refusal to continue providing federal financial assistance to a recipient instead of by seeking compliance through "other means authorized by law," such relief is not effective until: (1) the responsible agency official has advised the recipient of its failure to comply and determined that compliance cannot be achieved by voluntary means; (2) there has been an express finding on the record, after an opportunity for a hearing, of a failure by the recipient to comply with Title IX; and (3) 30 days have expired since the Secretary filed a full written report of the circumstances and the grounds for such action with the committees of the House and Senate having legislative jurisdiction over the program involved. *Id.* § 100.8(c); *see* 20 U.S.C. § 1682. This process thus includes a hearing before a hearing examiner, a decision by a reviewing authority, and potentially, additional review by the Secretary. 34 C.F.R. §§ 100.9; 100.10. A final decision is subject to judicial review in the court of appeals for the circuit in which that recipient is located. 20 U.S.C. §§ 1683, 1234g(a), (b); 42 U.S.C. § 2000d-2; 34 C.F.R. § 100.11.

Here, Plaintiffs filed a complaint with ED's OCR concerning certain of the Defendants' alleged noncompliance with Title IX on June 17, 2019. ECF No. 91-7. OCR conducted an investigation, found that Defendants failed to comply with Title IX, and notified Defendants of this conclusion in February 2020. *See* Ex. A at ¶ 13. At that time, OCR sought compliance through informal means and provided Defendants with proposed resolution agreements. *Id.* As of the date of this filing, however, ED has neither made a recommendation for the Department of Justice to consider nor proceeded instead with an administrative enforcement proceeding before an administrative law judge. *See* Ex. A at ¶ 16. In either case, the administrative process is far from complete. OCR's administrative process should continue unimpeded as contemplated by Title IX and its regulations, and ED should not be required to participate in private litigation where all necessary parties are already represented.

## ARGUMENT

Defendants seek to join ED as a necessary party pursuant to Federal Rule of Civil Procedure 19(a), or, alternatively, under Federal Rule of Civil Procedure 20.  As the party moving for joinder, Defendants bear the burden of showing that joinder is appropriate.  *E.g.*, *Am. Gen. Life & Accident Ins. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (citing 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1609 (3d ed. 2001)) (compulsory joinder); *Bartlett v. Stonebridge Life Ins. Co.*, 3:07 CV 1467, 2008 WL 11381526, at *2 (D. Conn. Aug. 25, 2018) (quoting 5B Moore's Federal Practice § 1359 (3d ed. 2008)) (compulsory joinder); *Certain Underwriters at Lloyd's, London v. Prop. Risk Servs. Mgmt. II*, No. 3:19-CV-1696-S, 2019 WL 5318566, at *3 (N.D. Tex. Oct. 21, 2019) (permissive joinder).

Defendants have failed to meet this burden.  As relevant here, Rule 19(a) provides for the mandatory joinder of a non-party if: (1) the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the persons absence may, as a practical matter, impair or impede the person's ability to protect the interest, *see* Fed. R. Civ. P. 19(a)(1)(B)(i); or (2) the absence of joinder would leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

Defendants claim that joinder of ED is "necessary" both because ED's interests would be impaired in the absence of joinder and because Defendants are "facing the possibility of inconsistent rulings concerning the CIAC's transgender participation policy."  ECF No. 91-1 at 4, 12. Defendants are wrong on both counts.[2]

---

[2] Rule 19 also provides for mandatory joinder if the court cannot accord complete relief among existing parties in that person's absence.  *See* Fed. R. Civ. P. 19(a)(1)(A).  Defendants, however, do not contend the Court cannot accord complete relief among the existing parties in the absence of ED's participation as a party in this lawsuit.  Nor could they. "A party is necessary under Rule 19(a)(1) only if in that party's absence 'complete relief cannot be accorded *among those already parties.*'"  *Yamaha Motor Corp., U.S.A. v. Ferrarotti*, 242 F.R.D. 178, 182 (D. Conn. 2007) (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006)) (emphasis in original).  Rule 19(a)(1)(A) "is concerned only

I.     **DEFENDANTS CANNOT ESTABLISH THAT ED IS A NECESSARY PARTY UNDER RULE 19**

   **A.   ED Can Adequately Protect Its Interests Absent Joinder**

To the extent ED's interests in the proper interpretation of Title IX and ensuring that federal funds are not used to discriminate on the basis of sex may be implicated in this case, those interests were protected through the United States' submission of its Statement of Interest while ED continues its administrative process.  ECF No. 75.  As the Second Circuit has recognized, "Rule 19 protects the rights of an absentee party[.]"  *MasterCard Intern., Inc., v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 382 (2d Cir. 2006).  Accordingly,

> [i]t is not enough under Rule 19(a)(2)(i) for a third party to have an interest, even a very strong interest, in the litigation.  Nor is it enough for a third party to be adversely affected by the outcome of the litigation.  Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired **because of** that party's absence from the litigation.

*Id.* at 387 (citing Fed. R. Civ. P. 19(a)(2)) (emphasis in original).  In other words, even if a non-party has an interest that likely would be impaired by the outcome of the litigation, which is not the case here, it does not qualify as a necessary party unless the harm suffered by the non-party was *caused* by its absence from the litigation.  *Id.*

Here, any harm to ED from this litigation will not be caused by its absence from the litigation.  As discussed in the United States' Statement of Interest, the United States has a significant interest in the proper interpretation of Title IX and in ensuring that federal funds are not used to discriminate on the basis of sex.  ECF No. 75 at 1-2.  And it has determined to protect those

---

with those who are already parties."  *MasterCard Int'l Inc.*, 471 F.3d at 385.  Even the fact that further litigation on the same subject matter with a non-party is inevitable is insufficient for establishing the necessity of joining a non-party under Rule 19(a)(1)(A).  *Id.* (holding that non-party Visa was not a "necessary party" because plaintiff could obtain complete relief as to the existing defendant without Visa's presence, even though further litigation between Visa and a third party was inevitable).  Here, it is undisputed that Plaintiffs could obtain all of the relief they seek from Defendants in the absence of ED as a party.  Accordingly, ED is not subject to joinder under Rule 19(a)(1)(A).

interests by submitting its Statement of Interest while ED conducts its ongoing administrative

process.  Any potential harm to those interests could only result from the Court either disagreeing

with ED's interpretation of Title IX—which would not be caused by ED's absence from the

litigation—or by allowing Defendants to circumvent OCR's administrative process by permitting

joinder.  *MasterCard Intern., Inc.*, 471 F.3d at 387.

Indeed, joinder would be particularly inappropriate here given that the United States already

has submitted its Statement of Interest and has not sought to intervene in this private lawsuit.

Courts recognize that the United States has the ability, and right, to determine how to protect its

interests in situations like this.  When the United States files a statement of interest and does not

seek joinder or intervention, courts defer to its assessment that joinder is unnecessary and reject a

call for compulsory joinder.  *See, e.g.*, *Northern Michigan Hosps., Inc. v. Health Net Fed. Servs, LLC*, No.

07-039, 2008 WL 2223964, *5 (D. Del. May 30, 2008) (rejecting joinder of the United States where it

had filed a Statement of Interest and explaining that the United States "has explicitly disclaimed a

desire to be a party; surely, if its interests were at stake, it would have said so").

Defendants attempt to substitute their judgment for ED's, contending that ED's interest in

this litigation would be impaired absent joinder because "the Court's analysis in this case will impact

or modify [ED's] position on Title IX and its application to sex-segregated activities."  ECF No. 91-

1 at 13.  But this argument rests on nothing but speculation; Defendants do not explain how or why

this Court's analysis could impact or modify ED's position on Title IX.  Defendants' position is

perplexing given that any decision by this Court properly would be limited to resolving Plaintiffs'

claims against these particular Defendants, and would have no binding effect on either the agency's

interpretation of Title IX or its administrative enforcement proceedings in relation to these or other

Defendants.

Contrary to Defendants' assertion, *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), does not support joinder of ED in this case. In *Peabody Western*, the EEOC sued the lessors of coal mines from the Navajo Nation under Title VII where the lessors had a hiring preference for Navajo workers pursuant to the terms of a lease drafted and approved by the Department of the Interior. In fact, the Secretary of the Interior required that the hiring preference at issue be included in the leases. The Ninth Circuit held that the Secretary had an interest in the subject matter of the action and would be unable to defend his interest in the legality of the lease provision that he required if he were not joined. *Id.* at 1081-82. In reaching that conclusion, the Ninth Circuit emphasized that if the EEOC prevailed in the action, the lessors might be obligated to pay damages for having engaged in conduct that the Secretary had required, and if the Secretary was not made a party, the lessor would not be able to seek indemnification. *Id.* In contrast to *Peabody Western*, ED has not approved—much less required—Defendants' policies regarding transgender athletes as a condition of Title IX funding. ED's general interests in the interpretation and enforcement of Title IX are materially different from the specific, substantial legal interest of the Secretary of the Interior in *Peabody Western.* Here, the United States has been able to fully protect its interests through the submission of a Statement of Interest that provides its views on the appropriate interpretation of Title IX while ED pursues its administrative process.

Defendants further contend that "the DOE regularly is made a party to actions addressing the interpretation of Title IX and policies affecting transgender students," citing exclusively to *one case: Parents for Privacy v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1091 (D. Or. 2018). ECF No. 91-1 at 14. Yet that lone decision contradicts their argument, as the Court in that case concluded that the plaintiffs lacked standing to challenge ED's promulgation of a Dear Colleague Letter because they could not demonstrate any injury caused by that Letter. *Id.* at 1091. At best, *Parents for Privacy* shows that parties have improperly tried to name ED as a party to suit on one occasion.

Joinder of ED to this lawsuit could, however, substantially impair its interest in the orderly resolution of Plaintiffs' OCR complaint.  As discussed above, this comprehensive administrative process has not yet concluded.  Before there can be a final agency decision, the matter can either be referred to the Department of Justice with a recommendation for enforcement or other action, or ED can submit the matter to an administrative law judge for resolution, neither of which has happened in this case and both of which involve independent review and consideration.[3]  34 C.F.R. §§ 100.9; 100.10.  Even then, if ED submitted the matter to an administrative law judge, there would be no final agency action until the claim were finally adjudicated (and as discussed above, judicial review of a decision by an administrative law judge occurs in the court of appeals rather than the district court).  Defendants' attempt to join ED in this lawsuit would be an improper attempt to make an end-run around the administrative proceedings.

\* \* \* \* \*

The United States has not sought to intervene in this case, and instead has expressed its views through a Statement of Interest.  ED is in the best position to know how to adequately protect its interests in this litigation.  Defendants' attempts to second-guess that judgment should be rejected, and the Court should deny the motion for joinder under Rule 19(a)(2)(i).

## B.    Defendants' Concerns About Inconsistent Obligations Are Misplaced

Defendants further contend that there is a risk of inconsistent obligations because "if OCR finds in the Plaintiffs' favor in the OCR proceeding, but the Court finds in favor of the Defendants in this action, or vice versa, the parties would be subject to inconsistent obligations."  ECF No. 91-1

---

[3] Relying upon OCR's Case Processing Manual ("CPM"), Defendants contend that ED should have dismissed the administrative complaint when Plaintiffs filed this lawsuit.  ECF No. 91-1 at 9.  However, the introduction to Section 108 of the CPM expressly provides that once a final determination has been approved regarding the allegations under investigation, OCR will not dismiss the allegations, but will proceed in accordance with CPM Section 303.  *See* https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf.  ED already had approved issuance of a final determination of noncompliance when Plaintiffs filed this lawsuit.  *See* Ex. A at ¶ 14.  Accordingly, Defendants' contention that ED was required to dismiss Plaintiffs' administrative complaint is misplaced.

at 16.  Defendants' concern of being subjected to inconsistent obligations is both speculative and insufficient to warrant joinder.

To start, Defendants' concerns about inconsistent obligations are entirely speculative.  As discussed above, once ED finally determines that Defendants have violated Title IX and concludes that informal resolution is not feasible, it may determine whether to make a recommendation to the Department of Justice to bring a civil lawsuit or to submit the matter to an administrative law judge for resolution.  34 C.F.R. §§ 100.8(a); 100.9; 100.10.  That decision has not been made yet.  *See* Ex. A at ¶ 16.  Nor has the Department of Justice had the opportunity to review any potential recommendation from ED or made the independent determination on how to proceed in the event ED decides to make such a referral.  Accordingly, Defendants cannot show a risk, substantial or otherwise, of inconsistent obligations, and their motion is at best premature.

In any event, the Second Circuit has held that "the substantial risk of inconsistent obligations must be *caused* by the nonparty's absence[.]"  *MasterCard Int'l*, 471 F.3d at 388 (citing Fed. R. Civ. P. 19(a)(2)) (emphasis in original) (holding that "FIFA's risk of multiple obligations to different parties is not a result of Visa's absence in this lawsuit; it is the result of FIFA allegedly breaching its contract with MasterCard and awarding Visa sponsorship rights it was contractually prohibited from granting.").  In this case, any risk of inconsistent obligations is not *caused* by the absence of ED from this litigation; rather, it is caused by the fact that Plaintiffs decided to file a lawsuit while their administrative complaint was still being resolved by the agency.  Under Defendants' logic, joinder of a federal agency would be necessary under Rule 19 *whenever* an agency conducts an investigation of an entity that is also subject to a private lawsuit for the same underlying conduct.  Given the vast number of administrative investigations opened by federal agencies, this would lead to absurd results, and Defendants have not, and cannot, cite to any support for such a novel proposition.  Indeed, the fact that a private litigant and the federal government may both seek

to ensure that a party complies with federal law does not, standing alone, justify joinder of the

federal government in private litigation. *See Abbott v. BP Exploration & Prod. Inc.*, 781 F. Supp. 2d

453, 468-69 (S.D. Tex. 2011) (holding that Department of the Interior was not a necessary party in a

citizen-suit seeking compliance with federal law, and that "[r]egardless of who compels compliance,

[plaintiff] will only be subject to a single obligation:  compliance.").  The Second Circuit has rejected

the contention that joinder of the federal government is necessary where private citizens seek to

enforce federal laws, even where the agency is attempting to negotiate a consent order with the

defendant concerning the same subject matter.  *See Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d

Cir. 1977).

In advancing their argument concerning the risk of inconsistent obligations, Defendants rely

exclusively upon *California Dump Truck Owners Ass'n v. Nichols*, 924 F. Supp. 2d 1126 (E.D. Cal. 2012),

*aff'd*, 778 F.3d 119 (9th Cir. 2015), *withdrawn from bound volume, and aff'd*, 784 F.3d 500 (9th Cir. 2015).

But that decision did not even address the risk of inconsistent obligations, and instead focused on

whether the Court could provide complete relief to the parties absent the federal government and

whether the federal government could adequately protect its interests absent joinder.  *Id.* at 1145-48.

As explained above, neither of those two factors warrant joinder of ED in this case.

At bottom, Defendants' concerns about the risk of being subjected to inconsistent

obligations in the absence of ED in this litigation are misplaced, and their motion for joinder should

be denied.

## II.     JOINDER OF ED WOULD NOT BE FEASIBLE

Even if the Court concludes that ED is a "necessary" party to this litigation, joinder of ED

would not be feasible.  *See* Fed. R. Civ. P. 19(b) (providing that court must determine the feasibility

of joinder if it finds the non-party's joinder necessary under Rule 19(a)); *Viacom Intern. Inc. v. Kearney*,

212 F.3d 721, 725 (2d Cir. 2000) (holding that upon making a finding that a party is necessary under

Rule 19(a), the court must next determine whether "joinder of the absent party is not feasible for jurisdictional or other reasons").  Defendants fail even to specify whether they seek to join ED as a necessary defendant or plaintiff.  Defendants also fail to identify the cause of action that ED could bring against them, or any cause of action that Defendants could bring against ED.  Relatedly, Defendants have failed to identify any waiver of sovereign immunity that would permit them to bring claims against ED.  And finally, Defendants cannot establish standing to sue ED for any action based on the subject matter of this private lawsuit.

### A. Defendants Have Not Identified A Cause Of Action That ED Could Bring Or Be Subject To In This Litigation

Defendants' motion is silent as to whether they seek to join ED as a necessary plaintiff or defendant.  Accordingly, ED—and the Court—are left to guess as to the nature of the joinder Defendants seek.  This alone should be fatal to their Motion.  Rule 19 applies only to required "parties," *see* Fed. R. Civ. P. 19(a)(1), a term Black's Law Dictionary defines as "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment." *Party*, *Black's Law Dictionary* (11th ed. 2019).  Accordingly, Rule 19 requires Defendants to identify whether they seek to join ED as a plaintiff or a defendant, and their failure to do so should dispose of their motion.

In any event, no cause of action may be brought by or against ED in this litigation and, accordingly, joinder of ED is improper.  *See Gonzalez-Aviles v. Perez*, No. JFM-15-3463, 2016 WL 3440581, *2 (D. Md. Jun. 17, 2016) (holding that Rule 19 "does not create a cause of action against a party and allows joinder of persons only against whom a plaintiff has a viable claim."); *Pennsylvania Higher Ed. Assist. Agency v. Perez*, No. 3:18-cv-1114, 2020 WL 2079634, at *13 (D. Conn. Apr. 30, 2020) (reversing earlier holding that although plaintiff "has not alleged a cause of action against the Federal Defendants, it may nonetheless join them as required parties under Rule 19," and

concluding that because ED had not waived its sovereign immunity, it could not be joined to private

lawsuit).

As an initial matter, Defendants fail to identify the cause of action that ED could bring

against them in federal court under Title IX. As discussed above, ED may refer a matter to the

Department of Justice with a recommendation that appropriate proceedings be brought, or it may

refer the matter for resolution before an administrative law judge. 34 C.F.R. §§ 100.8(a); 100.9;

100.10. But Defendants do not, and indeed cannot, contend that ED *itself* possesses a cause of

action against Defendants in federal court for non-compliance with Title IX.

Likewise, Defendants' joinder motion is silent as to any cause of action they could bring

against ED. If Defendants are seeking to pursue a claim against ED under the Declaratory

Judgment Act to establish that their conduct does not violate Title IX, such a claim would fail as a

matter of law. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not by itself provide a basis

for judicial review, but instead merely expands the remedies available in an otherwise proper civil

action. As the Supreme Court has stated, the Declaratory Judgment Act "presupposes the existence

of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). The Second Circuit has

reiterated that the Declaratory Judgment Act does not "provide an independent cause of action. Its

operation is procedural only – to provide a form of relief previously unavailable." *In re Joint E. & S.*

*Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *see Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45

(2d Cir. 2012) (same); *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 186-87 (2d Cir. 1977)

("The Declaratory Judgment Act . . . does not independently create federal jurisdiction."). Courts in

this circuit uniformly hold that a legal claim for declaratory judgment does not constitute a valid

"independent cause of action," and that such purported claims must be dismissed. *See Inclusion First,*

*LLC v. Macy*, No. 3:14-CV-1786, 2015 WL 8476329, at *8 (D. Conn. Sept. 23, 2015) (quoting *In re*

*Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731); *see also Vaden v. Connecticut*, 557 F. Supp. 2d 279, 283

(D. Conn. 2008) (dismissing a claim for "declaratory relief under the Declaratory Judgment Act" because the claim is "not predicated on any underlying cause of action"); *KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) (dismissing "cause of action for declaratory relief" because "Plaintiff has no independent substantive claim of a right to this relief").

If Defendants instead seek to pursue a claim against ED under the Administrative Procedure Act ("APA") concerning ED's determination regarding their compliance with Title IX, that claim also would fail as a matter of law.  Judicial review under the APA generally is limited to final agency actions.  *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d. Cir. 2008) (citing 5 U.S.C. § 704).  To constitute "final agency action" under the APA, "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spears*, 520 U.S. 154, 177-78 (1997)).  As discussed above, Plaintiffs' OCR complaint is currently in the administrative process, and no final agency decision has been reached. *See* Ex. A at ¶ 16.  Such final consequences can come only through either a final decision in an enforcement proceeding or a successful request for relief in a lawsuit brought by the Department of Justice.  The Supreme Court has held that such intermediate or "interlocutory" steps in the enforcement process are not the consummation of the agencies' decision-making.  *FTC v. Standard Oil of California*, 449 U.S. 232, 239-43 (1980) (holding that FTC's issuance of a complaint was not final agency action because it represented "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings," and that there was no final agency action "until judicial review is complete or the opportunity to seek review has lapsed."); *United States v. Farley*, 11 F.3d 1385, 1391 n.4 (7th Cir. 1993) (expressing skepticism that referral by FTC to the

Department of Justice constitutes final agency action and instead is merely "a threshold determination that further inquiry is warranted") (quoting *FTC*, 449 U.S. at 241).  As such, Defendants cannot bring an APA claim against ED.

Defendants' failure to specify whether ED should be joined as a necessary defendant or plaintiff, and their failure to identify any cause of action by or against ED, is fatal to their joinder motion, and independently justify its denial.

### B.  The Federal Government Has Not Waived Its Sovereign Immunity

For the same reasons Defendants cannot state an APA claim, they also have failed to identify a waiver of the federal government's sovereign immunity.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 866-67 (2008) (explaining that "authorities involving the intersection of joinder and the governmental immunity of the United States . . . instruct that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is potential for injury to the interests of the absent sovereign").  That failure should dispose of this joinder motion.  *See, e.g., Connecticut v. Babbitt*, 899 F. Supp. 80 (D. Conn. 1995) (analyzing whether Indian tribe was a necessary party under Rule 19 where it could not be joined to lawsuit based on sovereign immunity); *Miami Herald Media Co. v. Florida Dep't of Transp.*, 345 F. Supp. 3d 1349, 1370-71 (N.D. Fla. 2018) (holding that joinder of the United States was not feasible where it had not waived its sovereign immunity); *Sourceone Global Partners, LLC v. KGK Synergize, Inc.*, No. 08-C-7403, 2009 WL 1346250, *4 (N.D. Ill. May 13, 2009) (holding that it was not feasible to join the government under Rule 19 because it had not waived its sovereign immunity).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Id.*  While immunity may be waived by statute, "[a] waiver of the

Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  Accordingly, "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *FAA v. Cooper*, 566 U.S. 284, 290 (2012); *see id.* at 291 ("For the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign.").

Section 702 of the APA waives the government's sovereign immunity for "[a]n action in a court of the United States seeking relief other than money damages *and* stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702 (emphasis added).  As stated above, Defendants cannot state any APA claims against ED, and the APA therefore provides no waiver of sovereign immunity. *Pennsylvania Higher Ed. Assist. Agency*, 2020 WL 2079634, at *13 (holding that APA's waiver of sovereign immunity is inapplicable where party fails to state a claim under the APA).

### C.  Defendants Lack Standing To Raise Claims Against ED

Finally, even if Defendants could identify both a cause of action and a waiver of sovereign immunity, they have failed to identify any injury caused by ED that could be redressed by the Court in this lawsuit.  The jurisdiction of federal courts is limited to actual cases or controversies between proper litigants with standing to sue.  U.S. Const. Art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  Instead, a party seeking relief must separately demonstrate standing with respect to each claim and against each defendant. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63, 65-66 (2d Cir. 2012).  A party seeking relief must therefore show a concrete and particularized injury, that its injury is "fairly . . . trace[able] to the challenged action" of each defendant, and that the relief sought is likely to provide redress. *Lujan*, 504 U.S. at

560 (ellipsis and alteration in original). These requirements set forth the "irreducible constitutional minimum" of standing, and its absence defeats subject matter jurisdiction. *Id.* at 560-61. Here, Defendants must establish that they have an injury that is fairly traceable to a challenged action by ED. It cannot do so.

If Defendants' alleged harm is the fear that ED would seek to strip them of their funding from ED in the future, such an alleged injury is not—and may never become—ripe. Any "administrative decision" by ED concerning Defendants' compliance with Title IX has not been "formalized" and its effects have not been "felt in a concrete way" by defendants; adjudication is thus premature. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). Likewise, if Defendants fear that the Department of Justice may pursue a lawsuit to enforce compliance with Title IX, such speculation is not a harm that is ripe. Accordingly, Defendants cannot meet their burden to establish standing to sue ED, and for that reason the joinder of ED is not feasible. The Court should accordingly dismiss Defendants' joinder motion under Rule 19.

## III. PERMISSIVE JOINDER UNDER RULE 20 IS UNWARRANTED

Defendants recycle their arguments concerning mandatory joinder in alternatively arguing that permissive joinder is warranted under Federal Rule of Civil Procedure 20. ECF No. 91-1 at 16-17. And for the reasons stated above, those arguments lack merit.

Similar to their arguments under Rule 19, Defendants' arguments concerning Rule 20 are vague as to whether they wish to join ED as a plaintiff or defendant. *See* ECF No. 91-1 at 16 (citing Rule 20(a) provisions governing the permissive joinder of non-parties as plaintiffs and defendants). In either case, their request under Rule 20 is improper.

If Defendants seek to join ED as a plaintiff, that attempt is inappropriate. As an initial matter, Rule 20(a) contemplates *parties voluntarily* joining as plaintiffs, not *non-parties involuntarily* joined

as plaintiffs by court order.  *See* Fed. R. Civ. P. 20(a)(1) ("Persons *may join* in one action as plaintiffs

if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising

out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any

question of law or fact common to all plaintiffs will arise in the action.") (emphasis added).  Rule

19(a) is thus the only appropriate vehicle for the joining of an involuntary plaintiff, not Rule 20.  *See*

*Central Synagogue v. Turner Constr. Co.*, 64 F. Supp. 2d 347, 350 n. 2 (S.D.N.Y. 1999) ("Central cannot

be joined as an involuntary plaintiff under Rule 20, which provides only for 'permissive' joinder of

plaintiffs."); *see also Allegis Inv. Advisors v. Certain Underwriters at Lloyd's London*, No. 17-cv-01048, 2018

WL 4189542, at *7 (D. Utah Aug. 14, 2018) (Report & Recommendation) ("[Rule 20] says nothing

about a defendant being able to join a party to an action as a plaintiff.  The language of the Rule

speaks in terms of a third party asserting its right to join a case as a plaintiff, not a defendant trying

to force a third party to become a plaintiff in the suit."); *adopted in full by* 2018 WL 4188467 (D. Utah

Aug. 31, 2018).

But even if Defendants could overcome that hurdle, joinder still would be inappropriate.

Congress expressly gave the funding agency the authority to decide whether, when, and how to

enforce Title IX against recipients, *see* 20 U.S.C. § 1682, and Defendants should not be permitted to

attempt a circumvention of the administrative process required by the statute and ED's regulations

by seeking to join ED to this lawsuit as a plaintiff.  *See Moore v. Cooper*, 127 F.R.D. 422 (D.D.C. 1989)

("Rule 20(a) is a rule by which plaintiffs decide who to join as parties and is not a means for

defendants to structure the lawsuit.").

If Defendants attempt to join ED as a defendant, their argument likewise fails.  Permissive

joinder of defendants is appropriate only if "(A) any right to relief is asserted against them jointly,

severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or

series of transactions or occurrences; and (B) any question of law or fact common to all defendants

will arise in the action." Fed. R. Civ. P. 20(a)(2). Here, Defendants cannot satisfy the "same transaction requirement," which generally requires "some allegation that the joined defendants 'conspired or acted jointly.'" *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008); *see also Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (finding the same transaction requirement met where a complaint alleged that defendants actions "individually and cumulatively resulted in the denial of adequate medical care"). Plaintiffs have not alleged that ED required Defendants to engage in the challenged conduct, and the United States has explained in its Statement of Interest that Title IX does not require or authorize Defendants' challenged conduct.

But even if Defendants had established that ED were amenable to joinder under Rule 20—they have not, for all of the reasons discussed above and with respect to Rule 19—this Court should exercise its discretion to deny such joinder. *See Gonzalez v. Leonard*, 497 F. Supp. 1058, 1076 (D. Conn. 1980) (noting that joinder under Rule 20 "is not automatic" and that "persons 'may be joined' if the conditions provided therein are satisfied; there is no requirement that they must be joined in that event."). Defendants concede that joining ED would inject new issues into this litigation. For example, Defendants claim that "the Court will be required to evaluate the DOE's inconsistent actions concerning Title IX in the 2015 Letter, the 2016 Letter, in the 2017 Letter, and the DOE documents still available on the DOE website." ECF No. 91-1 at 13. But these are not issues raised in Plaintiffs' original or proposed amended complaints, and Defendants' attempt to inject these new issues into this lawsuit will simply prolong proceedings and add needless time and expense to an already complicated case. Accordingly, the Court should deny Defendants' motion to join ED under Rule 20.

## **CONCLUSION**

Defendants have failed to establish that ED is a necessary party to this private litigation, or that joinder of ED is feasible.  Nor have Defendants established that permissive joinder is permissible or warranted.  Accordingly, Defendants' motion to join ED should be denied.


Respectfully submitted,

JOHN H. DURHAM
United States Attorney
District of Connecticut

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

*/s/Joshua E. Gardner*
JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

JOHN B. HUGHES
Civil Chief
United States Attorney's Office
District of Connecticut
157 Church Street, 25th Floor
New Haven, Connecticut 06510

CARLOTTA P. WELLS
Assistant Director
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
202-305-7583
Joshua.e.gardner@usdoj.gov

DATED:  May 11, 2020