## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SELINA SOULE, a minor, by Bianca Stanescu, her mother; CHELSEA MITCHELL, a minor, by Christina Mitchell, her mother; ALANNA SMITH, a minor, by Cheryl Radachowsky, her mother; ASHLEY NICOLETTI, a minor, by Jennifer Nicoletti, her mother,<br><br>*Plaintiffs*,<br><br>v.<br><br>CONNECTICUT ASSOCIATION OF SCHOOLS d/b/a CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE; BLOOMFIELD PUBLIC SCHOOLS BOARD OF EDUCATION; CROMWELL PUBLIC SCHOOLS BOARD OF EDUCATION; GLASTONBURY PUBLIC SCHOOLS BOARD OF EDUCATION; CANTON PUBLIC SCHOOLS BOARD OF EDUCATION; DANBURY PUBLIC SCHOOLS BOARD OF EDUCATION,<br><br>*Defendants*. | Case No.: 3:20-CV-00201-RNC<br><br>**SECOND AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**JURY TRIAL REQUESTED**<br><br>Dated: August 11, 2020 |

## INTRODUCTION

1.      The Plaintiffs are four high school girls who compete in interscholastic girls' track and field in Connecticut. Like large numbers of female athletes around the nation, each Plaintiff has trained much of her life—striving to shave mere fractions of seconds off her race times—in order to experience the personal satisfaction of victory, gain opportunities to participate in state and regional meets, gain access to opportunities to be recruited and offered athletic scholarships by colleges, and more.

2.      Unfortunately for Plaintiffs and other girls in Connecticut, those dreams and goals—those opportunities for participation, recruitment, and scholarships—are now being

directly and negatively impacted by a new policy that is permitting students[1] who are
biologically male to compete in girls' athletic competitions if they claim a female gender
identity.

3.      This discriminatory policy is now regularly resulting in boys displacing girls in
competitive track events in Connecticut—excluding specific and identifiable girls including
Plaintiffs from honors, opportunities to compete at higher levels, and public recognition critical
to college recruiting and scholarship opportunities that should go to those outstanding female
athletes.

4.      As a result, in scholastic track competition in Connecticut, more boys than girls
are experiencing victory and gaining the advantages that follow, even though postseason
competition is nominally designed to ensure that equal numbers of boys and girls advance to
higher levels of competition. In the state of Connecticut students who are born female now have
materially *fewer* opportunities to stand on the victory podium, fewer opportunities to participate
in post-season elite competition, fewer opportunities for public recognition as champions, and a
much smaller chance of setting recognized records, than students who are born male.

5.      This reality is discrimination against girls that directly violates the requirements
of Title IX: "Treating girls differently regarding a matter so fundamental to the experience of
sports—the chance to be champions—is inconsistent with Title IX's mandate of equal

---

[1] Because Title IX focuses on equal opportunities between the sexes, because this Complaint is precisely concerned
with effects of *biological* differences between males and females, because the terms "boys" and "men" are
commonly understood to refer to males, and to avoid otherwise inevitable confusion, we refer generally in this
complaint to athletes who are biologically male as "boys" or "men," and to athletes who are biologically female as
"girls" or "women."

opportunity for both sexes." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 295 (2d Cir. 2004).

## I.      JURISDICTION AND VENUE

6.      This action pursuant to Title IX, 20 U.S.C. § 1681, *et seq*. and its interpreting regulations, raises federal questions and seeks redress for deprivation of rights protected by federal law.

7.      This Court has original jurisdiction over the claims asserted in this Complaint under 28 U.S.C. § 1331, which provides jurisdiction for claims raising questions of federal law, and 28 U.S.C. § 1343(a), which provides jurisdiction for claims seeking vindication of civil rights protected by federal law.

8.      This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201.  This Court has authority to award the other relief requested under 28 U.S.C. § 2202.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and all Plaintiffs and Defendants reside or have their principal place of business in Connecticut.

## II.      PARTIES

### A.      <u>Plaintiffs</u>

10.      Plaintiff Selina Soule is a twelfth-grade female student and varsity track and field athlete at Glastonbury High School. Because Selina Soule is a minor, she brings this action by her mother, Bianca Stanescu.

11.      Plaintiff Chelsea Mitchell is a twelfth-grade female student and varsity track and field athlete at Canton High School. Because Chelsea Mitchell is a minor, she brings this action by her mother, Christina Mitchell.

12.     Plaintiff Alanna Smith is a tenth-grade female student and varsity track and field athlete at Danbury High School. Because Alanna Smith is a minor, she brings this action by her mother, Cheryl Radachowsky.

13.     Plaintiff Ashley Nicoletti is a tenth-grade female student and varsity track and field athlete at Immaculate High School in Danbury, Connecticut. Because Ashley Nicoletti is a minor, she brings this action by her mother, Jennifer Nicoletti.

14.     Selina Soule, Bianca Stanescu, Chelsea Mitchell, Christina Mitchell, Alanna Smith, Cheryl Radachowsky, Ashley Nicoletti, and Jennifer Nicoletti all reside within the District of Connecticut.

**B.     Defendants**

15.     Defendant Bloomfield Public Schools Board of Education is located in Bloomfield, Connecticut, and has entered and continues to enter T.M. —a student born male and possessed of a male body— in Connecticut Interscholastic Athletic Conference (CIAC) girls' athletic competitions.

16.     Defendant Cromwell Public Schools Board of Education is located in Cromwell, Connecticut, and has entered and continues to enter Andraya Yearwood—a student born male and possessed of a male body—in CIAC girls' athletic competitions.

17.     Defendant Glastonbury Public Schools Board of Education is located in Glastonbury, Connecticut, and provides opportunities for interscholastic competition for its students only through events sanctioned by and subject to the discriminatory policies of CIAC.

18.     Defendant Canton Public Schools Board of Education is located in Canton, Connecticut, and provides opportunities for interscholastic competition for its students only through events sanctioned by and subject to the discriminatory policies of CIAC.

19.     Defendant Danbury Public Schools Board of Education is located in Danbury, Connecticut, and provides opportunities for interscholastic competition for its students only through events sanctioned by and subject to the discriminatory policies of CIAC.

20.     On information and belief, each of Bloomfield Public Schools, Cromwell Public Schools, Glastonbury Public Schools, Canton Public Schools, and Danbury Public Schools (collectively, "the Defendant Schools"), receives federal financial assistance.

21.     All programs at the Defendant Schools are therefore subject to the requirements of Title IX.

22.     Defendant Connecticut Association of Schools, Inc., which operates and is referred to herein under the name of the Connecticut Interscholastic Athletic Conference (CIAC) is a Connecticut not-for-profit corporation with its headquarters in Cheshire, Connecticut. CIAC is the "sole governing body for inter-scholastic athletic activities in Connecticut," and "directs and controls" all high school athletics for boys and girls in Connecticut.

23.     CIAC is funded by dues from member schools that are subject to the obligations of Title IX. According to CIAC, "[v]irtually all public and parochial high schools in Connecticut are dues-paying members."

24.     All Defendant Schools are dues-paying members of the CIAC.

25.     On information and belief, all public schools in Connecticut receive federal funds covered by Title IX, and thus are subject to the requirements of Title IX.

26.     CIAC is subject to the obligations of Title IX because it indirectly receives federal funding from its public member-schools, *see* 34 C.F.R. § 106.2(i).

27.     CIAC is also controlled by member schools that are subject to the obligations of Title IX. The CIAC Board of Control is elected by the member schools, and a majority of the

CIAC Board of Control are principals or other senior administrators of member schools. CIAC policies are established by the principals of the member schools, through the CIAC Legislative Body which is made up of the principals of all member schools.

28.     On information and belief, the majority of CIAC member schools receive federal funds and are subject to the obligations of Title IX.

29.     CIAC is separately subject to the obligations of Title IX because, on information and belief, it receives and accepts federal grant monies. For example, in 2018 CIAC received a grant of more than $350,000 from Special Olympics Connecticut, Inc., which on information and belief was funded in whole or in substantial part by a grant from the United States Department of Education to Special Olympics, Inc., the national parent organization of Special Olympics Connecticut, Inc. for the purpose of funding state-level organizations such as CIAC. On information and belief CIAC continues to receive and accept federal grant monies up to the present.

30.     CIAC controls and governs competition in 27 sports across three seasons each year, including Winter Indoor Track and Spring Outdoor Track. CIAC designates some sports only for boys (e.g. football and baseball), different sports only for girls (e.g. softball), and other sports for both boys and girls (e.g. swimming and track).

31.     For the latter sports, though, CIAC and its member schools have historically separated teams and competitions at the high school level by sex, or at least prohibited boys from competing in the girls' events.

32.     Each Defendant School actively works with and assists CIAC to schedule and organize interscholastic athletic competitions, including track and field meets, that are conducted subject to CIAC rules including the CIAC policy at issue in this litigation. Each defendant board

of education causes the schools and athletic programs under its authority to abide by the rules, regulations, and qualifications of CIAC concerning eligibility, competition rules, and tournament policies and procedures.

## III.    FACTUAL BACKGROUND

### A.    <u>The Goals and Requirements of Title IX, and Its Impact on Women's Athletics.</u>

33.    In 1972, Congress enacted Title IX, 20 U.S.C. § 1681, which forbids education programs or activities receiving federal financial assistance from discriminating against persons based on their sex. It provides:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

34.    Title IX was designed to eliminate significant "discrimination against women in education." *Neal v. Bd. of Trs. of Cal. State Univs.*, 198 F.3d 763, 766 (9th Cir. 1999).

35.    According to one of its primary sponsors, Senator Birch Bayh, Title IX promised women "an equal chance to attend the schools of their choice, to develop the skills they want, and to apply those skills with the knowledge that they will have a fair chance to secure the jobs of their choice with equal pay for work." 118 Cong. Rec. 5808 (1972).

36.    Before the enactment of Title IX in 1972, schools often emphasized boys' athletic programs "to the exclusion of girls' athletic programs," *Williams v. School District of Bethlehem*, 998 F.2d 168, 175 (3rd Cir. 1993), and vastly fewer girls participated in competitive interscholastic athletics than did boys.

37.    Many have argued that the competitive drive and spirit taught by athletics is one important educational lesson that carries over and contributes to lifetime success in the

workplace. Certainly, implementing regulations make clear that Title IX applies in full force to

athletic programs sponsored by recipients of federal financial assistance:

"No person shall, on the basis of sex, be excluded from participation in, be denied the
benefits of, be treated differently from another person or otherwise be discriminated
against in any interscholastic, intercollegiate, club or intramural athletics offered by a
recipient, and no recipient shall provide any such athletics separately on such basis." 34
C.F.R. § 106.41(a).

     38.     In the statute, Congress expressly delegated authority to the United States

Department of Health, Education and Welfare (HEW) to promulgate regulations interpreting

Title IX. 20 U.S.C. §1682. In 1975, HEW promulgated regulations that are codified at 34 C.F.R.

Part 106 (collectively, the "Regulations"). Further, in 1979, the Department of Education Office

for Civil Rights (OCR) issued a policy interpretation of Title IX and the Regulations to provide

recipients with more specific guidance about the statute's application to intercollegiate athletics.

This policy interpretation is found at 44 Federal Register 71,413 (1979) (the "Policy

Interpretation"). Courts have recognized that the Policy Interpretation is also applicable to high

school athletic programs. The Policy Interpretation was further clarified by OCR through

issuance of OCR's 1996 *Clarification of Intercollegiate Athletics Policy Guidance: The Three-*

*Part Test* (the "OCR Clarification").

     39.     Title IX and its implementing regulations and guidance require that, if an entity

subject to Title IX provides athletic programs or opportunities separated by sex, then it must do

so in a manner that "provide[s] equal athletic opportunity for members of both sexes." 34 C.F.R.

§ 106.41(c).

     40.     As one aspect of equal athletic opportunity, implementing regulations and

guidance state that provided athletic opportunities must "effectively accommodate the interests

and abilities" of girls, as well as of boys. 34 C.F.R. § 106.41(c). Here, the "governing principle"

is that "the athletic interests and abilities of male and female students must be equally **effectively accommodated**." *Policy Interpretation*, 44 Fed. Reg. at 71,414. More specifically, the institution must accommodate the physical abilities of girls and women "to the extent necessary to provide equal opportunity in . . . levels of competition," and competitive opportunities "which equally reflect their abilities." *Policy Interpretation*, 44 Fed. Reg. at 71,417-418.

41.     As another aspect of equal athletic opportunity, implementing regulations and guidance state that male and female athletes "should receive **equivalent treatment**, benefits and opportunities." *Policy Interpretation*, 44 Fed. Reg. at 71,415. The "equal treatment" to which girls and women are entitled includes equal "opportunities to engage in . . . post-season competition," *id*. at 71,416, equal opportunities for public recognition, 34 C.F.R. § 106.41(c), and the right to be free of any policies which are "discriminatory in . . . effect" or that have the effect of denying "equality of athletic opportunity."  44 Fed. Reg. at 71,417.

42.     Title IX has been strikingly successful towards its intended goals. "For example, between 1972 and 2011, girls' participation in high school athletics increased from approximately 250,000 to 3.25 million students." U.S. Dept. of Educ., OCR, *Protecting Civil Rights, Advancing Equity* 33 (2015), https://bit.ly/2VF516Q. In college, women's numbers have grown almost as steeply, from 30,000 to more than 288,000 in 2017-18.[2] Following the United States' famed 1999 Women's World Cup win, the Ninth Circuit wrote that:

"The victory sparked a national celebration and a realization by many that women's sports could be just as exciting, competitive, and lucrative as men's sports. And the victorious athletes understood as well as anyone the connection between a 27–year–old statute [Title IX] and tangible progress in women's athletics." *Neal*, 198 F.3d at 773.

---

[2] Doriane Lambelet Coleman et al., *Re-Affirming the Value of the Sports Exception to Title IX's General Non-Discrimination Rule*, Duke Journal of Gender Law Policy (forthcoming February 2020), available at SSRN: https://ssrn.com/abstract=3523305, citing https://ope.ed.gov/athletics/#/.

**B.**  **Equal Opportunities in Athletics and the Physiological Differences Between the Sexes.**

43.      What Title IX does not require—or even permit—is that recipients blind themselves to students' sex when developing their athletic programs. Sponsors of the statute made that much clear during the debates in Congress,[3] and implementing regulations expressly permit schools to sponsor sex-specific teams "where selection for such teams is based on competitive skill or the activity involved is a contact sport." 34 C.F.R. 106.41(b).

44.      In fact, ignoring the physical differences between the sexes would in many sports make it impossible to "accommodate the . . . abilities" of girls and women, and to provide athletic opportunities of equal quality to girls and women. In 1975, Dr. Bernice Sandler—who is frequently recognized as "the Godmother of Title IX"— told the House Subcommittee on Postsecondary Education, while testifying in support of regulations implementing Title IX, that to operate an entirely coed athletic program, ignoring differences in male and female physiology, would for many sports "effectively eliminate opportunities for women to participate in organized competitive athletics.  For these reasons, such an arrangement would not appear to be in line with the principle of equal opportunity." Statement of Dr. Bernice Sandler, Director, Project on the Status & Education of Women, Ass'n of American Colleges, June 25, 1975, Hearings on Sex Discrimination Regulations at 343.

45.      Dr. Sandler was correct. Permitting males to compete in girls' or women's athletic events doesn't merely add a new level of challenge for determined girls and women. Victory over comparably talented and trained male athletes is impossible for girls and women in the vast

_____

[3] S. Ware, Title IX: A Brief History with Documents, at 13 (2007).

majority of athletic competitions, because of inherent and biologically dictated differences between the sexes.

46.     While boys and girls have comparable athletic capabilities before boys hit puberty, male puberty quickly increases the levels of circulating testosterone in healthy teen and adult males to levels ten to twenty times higher than the levels that occur in healthy adult females, and this natural flood of testosterone drives a wide range of physiological changes that give males a powerful physiological athletic advantage over females.

47.     The athletic performance-enhancing effects of testosterone are well known, and the anabolic steroids too often used by athletes to gain an unfair and prohibited advantage are often synthetic modifications of testosterone. Basically, from puberty on, boys and men have a large, natural, and equally unfair "doping" advantage over girls and women.

48.     Physiological athletic advantages enjoyed over girls and women by similarly fit males after puberty include:

    a.    Larger lungs and denser alveoli in the lungs, enabling faster oxygen uptake;

    b.    Larger hearts and per-stroke pumping volume, and more hemoglobin per unit of blood, all enabling higher short-term and sustained levels of oxygen transport to the muscles;

    c.    An increased number of muscle fibers and increased muscle mass (for example, men have 75%-100% greater cross-sectional area of upper arm muscle than do comparably fit women, while women have 60-70% less trunk and lower body strength than comparably fit men);

    d.    Higher myoglobin concentration within muscle fibers, enabling faster transfer and "cellular respiration" of oxygen within the muscle to unleash power;

    e.    Larger bones, enabling the attachment of greater volumes of muscle fiber;

    f.    Longer bones, enabling greater mechanical leverage thus enabling males to unleash more power, e.g., in vertical jumps;

     g.    Increased mineral density in bones resulting in stronger bones, providing superior protection against both stress fractures and fractures from collisions;

     h.    And, of course, U.S. adult males are on average 5 inches taller than U.S. adult women.

49.    Meanwhile, female puberty brings distinctive changes to girls and women that identifiably impede athletic performance, including increased body fat levels which—while healthy and essential to female fertility—creates increased weight without providing strength, as well as wider hips and different hip joint orientation that result in decreased hip rotation and running efficiency.

50.    These are inescapable biological facts of the human species, not stereotypes, "social constructs," or relics of past discrimination.

51.    As a result of these many inherent physiological differences between men and women after puberty, male athletes consistently achieve records 10-20% superior to comparably fit and trained women across almost all athletic events, with even wider consistent disparities in long-term endurance events and contests of sheer strength such as weight-lifting.

52.    The basic physiological differences between males and females after puberty have long been recognized and respected by the different standards set for boys and girls in a number of athletic events. For example:

     a.    The net height used for women's volleyball is more than 7 inches lower than that used for men's volleyball.

     b.    The standard weight used in high school shot put is 4 kilograms for girls, and 5.44 kilograms (36% heavier) for boys.

     c.    The hurdle height used for the high school girls' 100-meter hurdle event is 33 inches, whereas the standard height used for boys' high school 110-meter hurdle is 39 inches.

     d.    The standard women's basketball has a circumference of 28 1/2 to 29 inches and a weight of 20 oz, while a standard basketball used in a men's

12

game has a circumference between 29 1/2 to 30 inches and a weight of 22 oz.

53.     In track and field events that do not use equipment, the physiological differences between males and females after puberty are stark in the record books. No one doubts that top male and female high school athletes are equally committed to excelling in their sport, and train equally hard. Yet boys and men consistently run faster and jump higher and farther than girls and women.

54.     For example, in 2017, thousands of men and boys achieved times in the 400m faster than the best lifetime performances of three women Olympic champions in that event. Each year, thousands of men—and dozens or hundreds of high school boys under the age of 18—achieve times (or heights or distances) in track events better than the world's single best elite woman competitor that year.

55.     As Duke Law professor and All-American track athlete Doriane Lambelet Coleman, tennis champion Martina Navratilova, and Olympic track gold medalist Sanya Richards-Ross recently wrote:

The evidence is unequivocal that starting in puberty, in every sport except sailing, shooting and riding, there will always be significant numbers of boys and men who would beat the best girls and women in head-to-head competition. Claims to the contrary are simply a denial of science.

Team USA sprinter Allyson Felix has the most World Championship medals in history, male or female, and is tied with Usain Bolt for the most World Championship golds. Her lifetime best in the 400 meters is 49.26 seconds. In 2018 alone, 275 high school boys ran faster on 783 occasions. The sex differential is even more pronounced in sports and events involving jumping. Team USA's Vashti Cunningham has the American record for high school girls in the high jump at 6 feet, 4½ inches. Last year just in California, 50 high school boys jumped higher. The sex differential isn't the result of boys and men having a male gender identity, more resources, better training or superior discipline. It's

because they have androgenized bodies.[4]

56.     As Professor Lambelet Coleman further explained in testimony before the House Judiciary Committee on April 2, 2019, in track events even the world's best women's Olympic athletes "would lose to literally thousands of boys and men, including to thousands who would be considered second tier in the men's category. And because it only takes three male-bodied athletes to preclude the best females from the medal stand, and eight to exclude them from the track, it doesn't matter if only a handful turn out to be gender nonconforming."[5]

57.     This stark competitive advantage is equally clear at the high school level. To illustrate, the charts below show the best boys' and girls' times in the nation across five different high school track events during the 2019 indoor and outdoor season:

**Table 1: Best High School Outdoor 100m Times in 2019**[6]

| Boy | Time | Girl | Time |
|-----|------|------|------|
| Matthew Boling | 9.98s | Briana Williams | 10.94s |
| Micah Williams | 10.21s | Semira Killebrew | 11.24s |
| Langston Jackson | 10.23s | Thelma Davies | 11.25s |
| Joseph Fahnbulleh | 10.23s | Tamari Davis | 11.27s |
| Ryan Martin | 10.26s | Arria Minor | 11.31s |
| Kenan Christon | 10.26s | Tianna Randle | 11.32s |
| Lance Broome | 10.27s | Taylor Gilling | 11.32s |
| Tyler Owens | 10.29s | Kenondra Davis | 11.36s |
| Ryota Hayashi | 10.29s | De'anna Nowling | 11.40s |

---

[4] Doriane Lambelet Coleman, Martina Navratilova, et al., *Pass the Equality Act, But Don't Abandon Title IX, Washington Post* (Apr. 29, 2019), https://wapo.st/2VKlNN1.
[5] Testimony and illustrating graphic at https://docs.house.gov/meetings/JU/JU00/20190402/109200/HHRG-116-JU00-Wstate-LambeletColemanP-20190402.pdf, last visited February 11, 2020.
[6] Results listed in this table are publicly available online at AthleticNET, https://www.athletic.net/TrackAndField/Division/Top.aspx?DivID=97967 (boys), and at AthleticNET, https://www.athletic.net/TrackAndField/Division/Top.aspx?DivID=97967&amp;gender=f (girls). These results were last visited February 11, 2020.

| Marquez Beason | 10.30s | Jacious Sears | 11.41s |

**Table 2: Best High School Outdoor 200m Times in 2019[7]**

| Boy | Time | Girl | Time |
|---|---|---|---|
| Matthew Boling | 20.30s | Briana Williams | 22.88s |
| Kenney Lightner | 20.48s | Thelma Davies | 22.95s |
| Cameron Miller | 20.52s | Tamari Davis | 22.96s |
| Kenan Christon | 20.55s | Kayla Davis | 23.08s |
| Kennedy Harrison | 20.60s | Taylor Gilling | 23.10s |
| Joseph Fahnbulleh | 20.67s | Arria Minor | 23.10s |
| Lance Broome | 20.69s | Aaliyah Pyatt | 23.11s |
| Devon Achane | 20.69s | Rosaline Effiong | 23.16s |
| Daniel Garland | 20.73s | Jayla Jamison | 23.19s |
| Langston Jackson | 20.73s | Dynasty McClennon | 23.28s |

**Table 3: Best High School Outdoor 400m Times in 2019[8]**

| Boy | Time | Girl | Time |
|---|---|---|---|
| Justin Robinson | 44.84s | Kayla Davis | 51.17s |
| Myles Misener Daley | 45.62s | Jan'Taijah Ford | 51.57s |
| Emmanuel Bynum | 46.24s | Athing Mu | 51.98s |
| Jayon Woodard | 46.26s | Britton Wilson | 52.06s |
| Alex Collier | 46.33s | Ziyah Holman | 52.12s |
| Jonah Vigil | 46.43s | Kimberly Harris | 52.16s |
| Zachary Larrier | 46.49s | Aaliyah Butler | 52.25s |
| Omajuwa Etiwe | 46.51s | Caitlyn Bobb | 52.79s |
| Sean Burrell | 46.52s | Talitah Diggs | 52.82s |
| Edward Richardson | 46.55s | Aaliyah Butler | 52.87s |

[7] Id. These results were last visited February 11, 2020.
[8] Id. These results were last visited February 11, 2020.

**Table 4: Best High School Indoor 60m Times in 2019**[9]

| Boy | Time | Girl | Time |
|---|---|---|---|
| Micah Williams | 6.60s | Tamari Davis | 7.27s |
| Lance Lang | 6.62s | Briana Williams | 7.28s |
| Marcellus Moore | 6.65s | Thelma Davies | 7.30s |
| Mario Heslop | 6.70s | Moforehan Abinusawa | 7.32s |
| Langston Jackson | 6.74s | Jacious Sears | 7.33s |
| Javonte Harding | 6.77s | Semira Killebrew | 7.34s |
| LaCarr Trent | 6.79s | Alexa Rossum | 7.40s |
| Justin Robinson | 6.79s | Aliya Wilson | 7.42s |
| Bryan Santos | 6.79s | Kaila Jackson | 7.44s |
| Tre Tucker | 6.80s | Aja Davis | 7.44s |

**Table 5:  Best High School Indoor 800m Times in 2019**[10]

| Boy | Time | Girl | Time |
|---|---|---|---|
| Alfred Chawonza | 110.57s | Athing Mu | 123.98s |
| Malcolm Going | 110.85s | Roisin Willis | 125.70s |
| Miller Anderson | 111.54s | Michaela Rose | 126.93s |
| Luis Peralta | 112.21s | Victoria Vanriele | 127.24s |
| Jake Renfree | 112.33s | Maggie Hock | 127.68s |
| Liam Rivard | 112.42s | Lily Flynn | 128.15s |
| Conor Murphy | 113.25s | Victoria Starcher | 128.32s |
| Miguel Parrilla | 113.41s | Aleeya Hutchins | 128.52s |

[9] Results listed in this table are publicly available online at AthleticNET, https://www.athletic.net/TrackAndField/Division/Event.aspx?DivID=102510&Event=42 (boys), and at AthleticNET, https://www.athletic.net/TrackAndField/Division/Event.aspx?DivID=102510&Event=42 (girls), last visited February 11, 2020.

[10] Results listed in this table are publicly available online at AthleticNET, https://www.athletic.net/TrackAndField/Division/Event.aspx?DivID=102510&Event=4 (boys), and at AthleticNET, https://www.athletic.net/TrackAndField/Division/Event.aspx?DivID=102510&Event=22 (girls), last visited February 11, 2020.

| Darius Kipyego | 113.43s | Sarah Trainor | 128.60s |
| Theo Woods | 113.53s | Makayla Paige | 128.97s |

58.     In 2016, Vashti Cunningham set the high school American record in the girls'

high jump at 6 feet, 4½ inches, and went on to represent the United States at the Olympics in that

same year. Yet to quote Professor Lambelet Coleman again, if the 2016 girls' high school track

competition had been open to males, "Cunningham would not have made it to her state meet, she

would not be on the national team, and we would not know her name other than as a footnote on

her father's Wikipedia page."  And for the vast number of girls who benefit from the experience

of competitive athletics even if they are not future champions, "if sport were not sex segregated,

most school-aged females would be eliminated from competition during the earliest rounds."

(Coleman 2020 at 20-21.)

59.     Plaintiffs do not know whether or if so at what time the students with male bodies

who are competing in girls' CIAC track events began taking cross-sex hormones. Nor does this

matter. Administering testosterone-suppressing drugs to males by no means eliminates their

performance advantage. Some physiological advantages—such as bone size and hip

configuration—cannot be reversed once they have occurred. And suppressing testosterone in

men after puberty also does not completely reverse their advantages in muscle mass and strength,

bone mineral density, lung size, or heart size.

60.     This reality is evident in the performance of male athletes who have competed as

women after taking cross-sex hormones. For example, CeCe Telfer, a male who ran as Craig

Telfer throughout high school and the first two years of college, certified compliance with the

NCAA requirement of one year on testosterone-suppressing drugs and began competing in

female track events in CeCe's senior collegiate year, for the 2019 indoor and outdoor track and

field seasons. CeCe's "personal best" did not go down substantially in *any* event following at least a year on testosterone suppressing drugs, and in a number of events instead *improved*:

**Table 6: Comparison of "Craig" and "CeCe" Telfer Performance Times Before and After Hormone Suppression**

| Event | "Craig" Telfer | "Cece" Telfer |
|---|---|---|
| Indoor 200 Meter Dash | 24.64s (2017) | 24.45s (2019) |
| Indoor 60 Meter Hurdles | 8.91s   (2018) | 8.33s   (2019) |
| Outdoor 100 Meter Dash | 12.38s (2017) | 12.24s (2019) |
| Outdoor 400 Meter Hurdles | 1:02.00s (2017) | 57.53s (2019) |

61.     Not surprisingly, while *Craig* Telfer ranked 212th and 433rd in the 400-meter hurdles among men's Division II athletes in 2016 and 2017 respectively, *CeCe* Telfer took the Division II national championship in *women's* 400 meter hurdles in 2019.

62.     Minna Sveard, the fastest female runner, finished almost a full two seconds behind Telfer, and was recognized only as coming in second.

63.     In short, if males compete in girls' events after puberty, equally gifted and dedicated female athletes simply can't win.

C.     **Increasing Numbers of Girls Are Losing Athletic Victories and Opportunities to Transgender Competitors Today.**

64.     In the past, it has been argued that the unfair impact of males competing in girls' and women's categories would be trivial, because few males will wish to do so.  But over just the last few years, the problem of boys and men taking opportunities from girls and women has grown very rapidly.

65.     As increasing numbers of males are in fact competing in girls' and women's events each year, girls are in fact losing, and males are seizing one "girls'" or "women's" championship and record after another.

66.     Meanwhile, multiple sources report that the percentage of children identifying as transgender has multiplied rapidly within just the last few years.

67.     As a larger wave of males claiming transgender identity as girls and women hits high school and college, the number of girls losing out on varsity spots, playing time, medals, advancement to regional meets, championship titles and records, and recognition on the victory podium, will also multiply. Indeed, given that it only takes three males to sweep the titles at local, regional, and national competitions entirely, and given the hard physiological facts reviewed above, if increasing number of males compete in girls' and women's athletics, those born female—girls—will simply vanish from the victory podium and national rankings.

68.     This wave of lost opportunities and lost equality for girls is all the more inevitable when males are not merely permitted to take girls' slots and girls' titles, but are praised by schools and media as "courageous" and hailed as "female athlete of the year" when they do so.

69.     Perhaps worse, if the law permits males to compete as girls in high school, then there is no principled basis on which colleges can refrain from recruiting these "top performing girls" (in reality genetically and physiologically male) for their "women's teams" and offering them the "women's" athletic scholarships.

70.     In sum, because schools are permitting students possessing male physiology to compete against girls and women, girls and women are losing competitive opportunities, the experience of fair competition, and the opportunities for victory and the satisfaction, public recognition, and scholarship opportunities that can come from victory. More, girls and young women are losing their dreams. To American girls the message is, "Give up.  You can't win."

IV.     THE DISCRIMINATORY CIAC POLICY AND ITS IMPACT ON GIRLS

A.     **CIAC Adopts a New Policy Allowing Boys to Compete in Girls' Events.**

71.     CIAC rightly deems athletics an "integral" part of the state's "total educational program."

72.     CIAC declares that it seeks to offer athletic experiences that satisfy the highest "expectations for fairness, equity, and sportsmanship for all student-athletes and coaches"  in order to maximize high school students' "academic, social, emotional, and physical development."

73.     However, at some time before 2017, CIAC adopted a policy ("the CIAC Policy" or "the Policy") pursuant to which CIAC and member schools began allowing boys who identify as girls to compete in girls' athletic events.

74.     The CIAC Policy determines—and requires member schools to determine—eligibility to compete in sex-specific athletic competitions solely based on "the gender identification of that student in current school records and daily life activities in the school . . . ."

75.     As detailed later in this Complaint, CIAC and its member schools have permitted male students to switch, from one season to the next, from competing in boys' events to competing (and winning) in girls' events.

76.     At the time that the CIAC adopted the CIAC Policy, all Defendants were aware that after puberty, a male who competes in girls' events gains an "unfair advantage in competitive athletics" (CIAC By-Laws Article IX, Section B) due to physiological changes that occur during male puberty.

**B.    CIAC's Policy Has Resulted in Unequal Opportunities for Girls in Track and Field Competitions in Connecticut.**

77.    As a result of CIAC's policy, two students who were born genetically and physiologically male and have male bodies, T.M. and Andraya Yearwood, were permitted to compete in girls' athletic competitions beginning in the 2017 track season.

78.    Between them, T.M. and Andraya have taken 15 women's state championship titles (titles held in 2016 by nine different Connecticut female athletes) and have taken more than 85 opportunities to participate in higher level competitions from female track athletes in the 2017, 2018, and 2019 seasons alone. In this section, we detail this adverse impact on girls and young women.

79.    To understand how opportunities to participate in higher levels of athletic competition are determined for student athletes, it is necessary to understand how CIAC has organized interscholastic track and field competition in Connecticut. First, based on performance throughout the season, including in both regular and invitational meets, students may qualify to participate in state "Class" championships, with schools grouped by size (S, M, L, and LL). Thus, for example, a student might win the "Class M Women's Outdoor Track 100m" State championship. Next, the top-performing students within each State Class championship qualify to participate in the State Open championships, in which the top athletes in the state compete against each other regardless of the size of the school that they attend. And finally, the top performers in the State Open championships qualify to participate in the New England Championship.

80.    All names, times, and other information provided in this section are taken from public sources, including Connecticut high school track records available on AthleticNET, at the

21

web addresses indicated. The records of male athletes competing in women's events are indicated with gray shading.

81.     In 2017, Andraya's freshman season, Andraya won CIAC's Class M state championship in both the women's outdoor 100m and 200m events:

**Table 7:  2017 CIAC Class M Women's Outdoor Track 100m Results (May 30, 2017)[11]**

| Place | Grade | Sex | Name | Time | High School |
|-------|-------|-----|------|------|-------------|
| 1* | 9 | M | Andraya Yearwood | 12.66s | Cromwell |
| 2* | 11 | F | Kate Hall | 12.83s | Stonington |
| 3* | 11 | F | Erika Michie | 12.93s | Woodland |
| 4* | 10 | F | Raianna Grant | 13.17s | Waterbury Career Academy |
| 5* | 9 | F | Se-raya Steward | 13.18s | Kaynor Tech |
| 6 | 12 | F | Jon-yea McCooty | 13.30s | Northwest Catholic |
| 7 | 12 | F | Libby Spitzchuh | 13.35s | Valley Regional |

* Qualified for the State Open.

**Table 8:  2017 CIAC Class M Women's Outdoor Track 200m Results (May 30, 2017)[12]**

| Place | Grade | Sex | Name | Time | High School |
|-------|-------|-----|------|------|-------------|
| 1* | 9 | M | Andraya Yearwood | 26.08s | Cromwell |
| 2* | 11 | F | Erika Michie | 26.38s | Woodland |
| 3* | 11 | F | Kate Hall | 26.65s | Stonington |
| 4* | 11 | F | Zora LaBonte | 26.80s | Waterford |
| 5* | 11 | F | Victoria Bower | 27.05s | Rocky Hill |
| 6 | 10 | F | Raianna Grant | 27.26s | Waterbury Career Academy |
| 7 | 10 | F | Sheena Wolliston | 27.30s | Northwest Catholic |

* Qualified for the State Open.

---

[11] AthleticNET, https://www.athletic.net/TrackAndField/MeetResults.aspx?Meet=306447&show=all, last visited February 11, 2020.
[12] *Id.*

82.     But for CIAC's policy that allows biological males to compete in girls-only events, Kate Hall and Erika Michie would each have won first place in the Class M championship in one of these events in 2017.

83.     In 2016, two different girls did win these Class M state championship titles.

84.     Because only the top five finishers in each event qualified to participate in the Outdoor State Open championship, the decision of CIAC and Defendant Cromwell Board of Education to permit Andraya Yearwood to compete in these girls' events deprived Jon-yea McCooty and Raianna Grant of the opportunities that they had rightfully earned to compete in the State Open championship.

85.     When one female athlete was asked about her loss, she said, "I can't really say what I want to say, but there's not much I can do about it."

86.     It is starkly contrary to the terms, spirit, and goals of Title IX to tolerate a policy which first deprives a girl of an opportunity to participate in elite competition which she has rightfully earned, and then additionally intimidates her into silence about the injustice she has suffered. Nevertheless, Plaintiffs, too, have felt both the injustice and the sense of intimidation and silencing that this girl expressed.

87.     Under CIAC's Policy, Andraya advanced to the 2017 State Open Women's Outdoor Track competition, where—still a freshman—Andraya again deprived a girl of a statewide title and opportunity to advance to still higher levels of competition that she had rightfully earned. But for CIAC's policy, Plaintiff Chelsea Mitchell—then a fourteen-year-old freshman—would have had the nearly unprecedented opportunity to qualify as a freshman for the New England Regional Championships:

**Table 9: 2017 CIAC State Open Women's Outdoor Track 100m Results (June 5, 2017)**[13]

| Place | Grade | Sex | Name | Time | High School |
|-------|-------|-----|------|------|-------------|
| 1* | 12 | F | Caroline O'Neil | 12.14s | Daniel Hand |
| 2* | 12 | F | Kathryn Kelly | 12.36s | Lauralton Hall |
| 3* | 9 | M | Andraya Yearwood | 12.41s | Cromwell |
| 4* | 11 | F | Tia Marie Brown | 12.44s | Windsor |
| 5* | 12 | F | Kiara Smith | 12.59s | Jonathan Law |
| 6* | 11 | F | Kate Hall | 12.62s | Stonington |
| 7 | 9 | F | Chelsea Mitchell | 12.69s | Canton |
| 8 | 12 | F | Tiandra Robinson | FS | Weaver |

* Qualified for the New England Championship.

88.     In the Winter 2017, Spring 2017, and Winter 2018 seasons, T.M. competed in boys' indoor or outdoor track events and did not advance to any state class or open championships in individual events. Just weeks after the conclusion of the Winter 2018 indoor season, T.M. abruptly appeared competing in the girls' events in the Spring 2018 outdoor track season.

89.     T.M.'s switch to competing in the girls' events immediately and systematically deprived female athletes of opportunities to advance and participate in state-level competition. According to AthleticNET records, T.M. never lost a women's indoor 55m or 300m final in the 2018 or 2019 track seasons. Nor has T.M. lost a women's outdoor 100m final in which T.M. competed.

90.     T.M. has also displaced a girl in numerous elimination track events in which T.M. competed. At the 2018 outdoor State Open, for example, T.M. won the women's 100m event by

---

[13] AthleticNet, https://www.athletic.net/TrackAndField/meet/306453/results/f/1/100m, last visited February 11, 2020.

a wide margin, while Andraya finished second. But for CIAC's policy, Bridget Lalonde would have won first place statewide in that event, Chelsea Mitchell would have won second place statewide, and Tia Marie Brown and Ayesha Nelson would have qualified to compete in the New England Championship:

**Table 10:  2018 CIAC State Open Championship Women's Outdoor Track 100m Results (June 4, 2018)[14]**

| Place | Grade | Sex | Name | Time | High School |
|---|---|---|---|---|---|
| 1* | 10 | M | T.M. | 11.72s | Bulkeley |
| 2* | 10 | M | Andraya Yearwood | 12.29s | Cromwell |
| 3* | 11 | F | Bridget Lalonde | 12.36s | RHAM |
| 4* | 10 | F | Chelsea Mitchell | 12.39s | Canton |
| 5* | 11 | F | Maya Mocarski | 12.47s | Fairfield Ludlowe |
| 6* | 10 | F | Selina Soule | 12.67s | Glastonbury |
| 7 | 12 | F | Tia Marie Brown | 12.71s | Windsor |
| 8 | 11 | F | Ayesha Nelson | 12.80s | Hillhouse |

* Qualified for the New England Championship.

91.     The 2019 State Indoor Open saw similar results and a similar impact. T.M. and Andraya finished first and second respectively in both the preliminary and final Women's 55m races, each time defeating the fastest girl by a wide margin:

**Table 11:  2019 CIAC State Open Championship Women's Indoor Track 55m Preliminary Results (February 16, 2019)[15]**

| Place | Grade | Sex | Name | Time | High School |
|---|---|---|---|---|---|
| 1* | 11 | M | T.M. | 7.00s | Bloomfield |
| 2* | 11 | M | Andraya Yearwood | 7.07s | Cromwell |

---

[14] AthleticNet, https://www.athletic.net/TrackAndField/meet/334210/results/f/1/100m, last visited February 11, 2020.
[15] AthleticNet, https://www.athletic.net/TrackAndField/meet/352707/results/f/1/55m, last visited February 11, 2020.

| 3* | 12 | F | Cori Richardson | 7.24s | Windsor |
| 4* | 11 | F | Chelsea Mitchell | 7.27s | Canton |
| 5* | 12 | F | Kate Shaffer | 7.27s | Conard |
| 6* | 12 | F | Ayesha Nelson | 7.29s | Hillhouse |
| 7* | 12 | F | Maya Mocarski | 7.34s | Fairfield Ludlowe |
| 8 | 11 | F | Selina Soule | 7.37s | Glastonbury |
| 9 | 10 | F | Kisha Francois | 7.41s | East Haven |

* Qualified for the women's 55m final.

**Table 12:  2019 CIAC State Open Championship Women's Indoor Track 55m Final Results (February 16, 2019)**[16]

| Place | Grade | Sex | Name | Time | High School |
| --- | --- | --- | --- | --- | --- |
| 1* | 11 | M | T.M. | 6.95s | Bloomfield |
| 2* | 11 | M | Andraya Yearwood | 7.01s | Cromwell |
| 3* | 11 | F | Chelsea Mitchell | 7.23s | Canton |
| 4* | 12 | F | Kate Shaffer | 7.24s | Conard |
| 5* | 12 | F | Ayesha Nelson | 7.26s | Hillhouse |
| 6* | 12 | F | Maya Mocarski | 7.33s | Fairfield Ludlowe |
| 7 | 12 | F | Cori Richardson | 7.39s | Windsor |

* Qualified for the New England Championship.

92.     But for CIAC's policy, Plaintiff Selina Soule as well as Kisha Francois would have advanced to the next level of competition in the indoor state championship 55m preliminary race and competed for a spot at the New England Championship. (Table 11)

93.     But for CIAC's policy, Plaintiff Chelsea Mitchell would have placed first in the 55m at the indoor state championship, been named State Open Champion, received a gold medal instead of a bronze medal, and received public recognition of her achievements. (Table 12)

---

[16] *Id.*

94.     But for CIAC's policy, Kate Shaffer would have won second place in the 55m at the indoor state championship; and seventh-place senior Cori Richardson would have qualified for the New England Championship. (Table 12)

95.     But for CIAC's policy, Chelsea Mitchell would have made her school's history as the first female athlete from Canton High School indoor ever to be named State Open Champion, and the first ever Canton High School track athlete to be named a State Open Champion.

96.     State Open Champions are recognized as All State Athletes, an award listed on college applications, scholarship applications, and college recruiting profiles. State Open Champions are also invited to the All-State Banquet and have their achievements celebrated with a banner in their high school gym.

97.     But instead of receiving the accolades and publicity she earned, Chelsea Mitchell was repeatedly referred to in the press as the "third-place competitor."[17]

98.     Following T.M.'s sweep of the CIAC's Indoor Class S, State Open, and New England titles in the 55m dash and 300m, this student—genetically male and enjoying the athletic advantages bestowed by male physiology—was named "All-Courant girls indoor track and field athlete of the year" by the Hartford Courant newspaper.[18]

99.     In the Spring 2019 track season, T.M. and Andraya Yearwood continued to displace girls including Plaintiffs from victory positions and opportunities to advance to elite levels of competition.

---

[17] *See, e.g.*, https://www.washingtontimes.com/news/2019/feb/24/terry-miller-andraya-yearwood-transgender-sprinter/, last visited February 11, 2020.
[18] https://www.courant.com/sports/high-schools/hc-sp-terry-miller-all-courant-20190410-36bj/, last visited February 11, 2020.

100.     For example, in the Class S Women's Outdoor Track 100m qualifying race, T.M. and Yearwood took second and third place, excluding two girls from the opportunity to advance to the next level of competition. But for CIAC's policy, Plaintiff Ashley Nicoletti as well as Annabelle Shanks would have advanced to the next level of competition in the outdoor Class S state championship 100m preliminary race and competed for a spot at the State Open Championship:

**Table 13:  2019 CIAC Class S Women's Outdoor Track 100m Preliminary Results (May 30, 2019)[19]**

| Place | Grade | Sex | Name | Time | High School |
|---|---|---|---|---|---|
| 1* | 11 | F | Chelsea Mitchell | 12.14s | Canton |
| 2* | 11 | M | T.M. | 12.18s | Bloomfield |
| 3* | 11 | M | Andraya Yearwood | 12.50s | Cromwell |
| 4* | 10 | F | Alisia Munoz | 12.73s | Kolbe-Cathedral |
| 5* | 11 | F | Brianna Westberry | 13.05s | Capital Prep |
| 6* | 12 | F | Olivia D'Haiti | 13.08s | Kolbe-Cathedral |
| 7* | 9 | F | D'Jior Delissir | 13.16s | Bloomfield |
| 8* | 12 | F | Sheena Wolliston | 13.22s | Northwest Catholic |
| 9 | 9 | F | Ashley Nicoletti | 13.27s | Immaculate |
| 10 | 10 | F | Annabelle Shanks | 13.30s | Litchfield |

* Qualified for the women's 100m final.

101.     In that outdoor Class S state championship, T.M. and Andraya Yearwood placed first and third respectively in the Women's 100m race. But for CIAC's policy, Plaintiff Chelsea Mitchell would have placed first in the 100m at the Class S outdoor state championship, been

---

[19] AthleticNet, https://www.athletic.net/TrackAndField/meet/365961/results/f/1/100mm, last visited April 9, 2020.

named State Champion, received a gold medal instead of a silver medal, and received public

recognition of her achievements:

**Table 14:  2019 CIAC Class S Women's Outdoor Track 100m Final Results (May 30, 2019)**[20]

| Place | Grade | Sex | Name | Time | High School |
|-------|-------|-----|------|------|-------------|
| 1* | 11 | M | T.M. | 11.93s | Bloomfield |
| 2* | 11 | F | Chelsea Mitchell | 12.02s | Canton |
| 3* | 11 | M | Andraya Yearwood | 12.28s | Cromwell |
| 4* | 11 | F | Brianna Westberry | 12.82s | Capital Prep |
| 5* | 10 | F | Alisia Munoz | 12.86s | Kolbe-Cathedral |
| 6 | 12 | F | Sheena Wolliston | 13.13s | Northwest Catholic |
| 7 | 12 | F | Olivia D'Haiti | 13.14s | Kolbe-Cathedral |
| 8 | 9 | F | D'Jior Delissir | 13.31s | Bloomfield |

\* Qualified for the State Open.

102.     Similarly, T.M. easily won the Women's 200m race at the 2019 State Outdoor

Open. But for CIAC's policy, Cori Richardson would have won the state championship in this

event, Plaintiff Alanna Smith—as a freshman—would have finished runner-up, and Olivia

D'Haiti would have advanced to the New England Championship:

**Table 15:  2019 CIAC State Open Championship Women's Outdoor Track 200m Final Results (June 3, 2019)**[21]

| Place | Grade | Sex | Name | Time | High School |
|-------|-------|-----|------|------|-------------|
| 1* | 11 | M | T.M. | 24.33s | Bloomfield |
| 2* | 12 | F | Cori Richardson | 24.75s | Windsor |
| 3* | 9 | F | Alanna Smith | 25.01s | Danbury |
| 4* | 11 | F | Chelsea Mitchell | 25.24s | Canton |

---

[20] *Id.*
[21] AthleticNet,  https://www.athletic.net/TrackAndField/MeetResults.aspx?Meet=364088&show=all, last visited February 11, 2020.

| 5* | 12 | F | Nichele Smith | 25.38s | East Hartford |
| 6* | 12 | F | Bridget Lalonde | 25.55s | RHAM |
| 7 | 12 | F | Olivia D'Haiti | 25.63s | Kolbe-Cathedral |

* Qualified for the New England Championship.

103.    Considering the nine important state-level competitive events summarized in the tables above (including seven finals and two preliminary races) together with the parallel boys' competitions in these same events at these same meets, the result of the CIAC Policy was that girls received only one first place recognition out of 14 state championship events (Caroline O'Neil in the 200m State Open Women's race on June 5, 2017), while students born with male bodies captured 13 championships.

104.    Students born male, and gifted with male bodies, captured 22 out of 28 first and second place awards in those seven state-level championship events.

105.    And from these competitions, students born male were awarded 68 opportunities to participate in a higher-level state competition, while girls were awarded only 40 such opportunities—little more than half as many as went to boys.

106.    In short, in these events girls received radically fewer opportunities to participate in elite post-season competition than did those born male.

107.    Nor are these isolated examples. The operation of the CIAC Policy has now deprived many female athletes in Connecticut of opportunities to achieve public recognition, a sense of reward for hard work, opportunities to participate in higher level competition, and the visibility necessary to attract the attention of college recruiters and resulting scholarships. The impact summary below identifies over 50 separate times in competitions since 2017 that specific, identifiable girls have been denied the recognition of being named state-level first-place champions, and/or have been denied the opportunity to advance to and participate in higher-level

30

competition, in CIAC-sponsored events as a result of the unfair participation of T.M. and Andraya Yearwood in girls' track competitions pursuant to the CIAC Policy.

108.    In sum, the real-world result of the CIAC Policy is that in Connecticut interscholastic track competitions, while highly competitive girls are experiencing the no doubt character-building "agony of defeat," they are systematically being deprived of a fair and equal opportunity to experience the "thrill of victory." A transgender athlete advocate recently wrote in an op-ed that this should be accepted because part of competitive sports is "learning to lose." A policy such as the CIAC Policy that ensures that girls get *extra* lessons in losing, however, cannot be reconciled with Title IX.

**Table 16: CIAC's Policy Impact Summary**

| 2019 Outdoor Track Season | | | | | |
|---|---|---|---|---|---|
| Athlete | School | Meet | Event | Denied State Championship | Denied Participation |
| Chelsea Mitchell | Canton | Class S | 100m | X | |
| Ashley Nicoletti | Immaculate | Class S | 100m | | X |
| Annabelle Shanks | Litchfield | Class S | 100m | | X |
| Olivia D'Haiti | Kolbe-Cathedral | Class S | 100m | | X |
| Sheena Wolliston | Northwest Catholic | Class S | 100m | | X |
| Chelsea Mitchell | Canton | Class S | 200m | X | |
| Brianna Westberry | Capital Prep | Class S | 200m | | X |
| Shelby Dejana | Wilton | Open | 100m | | X |
| Alisia Munoz | Kolbe-Cathedral | Open | 100m | | X |
| Carly Swierbut | Newtown | Open | 100m | | X |
| Cori Richardson | Windsor | Open | 200m | X | |
| Olivia D'Haiti | Kolbe-Cathedral | Open | 200m | | X |

| | | | | | |
|---|---|---|---|---|---|
| **2019 Indoor Track Season** | | | | | |
| Chelsea Mitchell | Canton | Class S | 55m | X | |
| Sheena Wolliston | Northwest Catholic | Class S | 55m | | X |
| Audrey Strmiska | Griswold | Class S | 55m | | X |
| Jillian Mars | Bloomfield | Class S | 300m | X | |
| Chelsea Mitchell | Canton | Open | 55m | X | |
| Cori Richardson | Windsor | Open | 55m | | X |
| Selina Soule | Glastonbury | Open | 55m | | X |
| Jillian Mars | Bloomfield | Open | 300m | X | |
| Shante Brown | Bloomfield | Open | 300m | | X |
| | | | | | |
| **2018 Outdoor Track Season** | | | | | |
| Nikki Xiarhos | Berlin | Class M | 100m | X | |
| Kate Hall | Stonington | Class M | 100m | | X |
| Magnalen Camara | Amisted | Class M | 100m | | X |
| Noelle Konior | Berlin | Class M | 100m | | X |
| Nikki Xiarhos | Berlin | Class M | 200m | X | |
| Kate Hall | Stonington | Class M | 200m | | X |
| Nyia White | Hillhouse | Class M | 200m | | X |
| Addie Hester | Northwestern | Class M | 400m | | X |
| Jada Boyd | Hillhouse | Class M | 400m | X | |
| Bridget Lalonde | RHAM | Open | 100m | X | |
| Tia Marie Brown | Windsor | Open | 100m | | X |
| Ayesha Nelson | Hillhouse | Open | 100m | | X |
| KC Grady | Darien | Open | 100m | | X |
| Nikki Xiarhos | Berlin | Open | 100m | | X |
| Bridget Lalonde | RHAM | Open | 200m | X | |
| Jillian Mars | Bloomfield | Open | 200m | | X |

| Dominique Valentine | Immaculate | Open | 400m | | X |
|---|---|---|---|---|---|
| | | | | | |
| **2018 Indoor Track Season** | | | | | |
| Patricia Jurkowski | Seymour | Class S | 55m | X | |
| Ahyvon Evans | Grasso Tech | Class S | 55m | | X |
| Chelsea Mitchell | Canton | Class S | 300m | | X |
| Haley Bothwell | Sacred Heart | Class M | 55m | | X |
| Patricia Jurkowski | Seymour | Open | 55m | | X |
| Bridget Lalonde | RHAM | Open | 55m | | X |
| Camille McHenry | Windsor | Open | 300m | | X |
| | | | | | |
| **2017 Outdoor Track Season** | | | | | |
| Kate Hall | Stonington | Class M | 100m | X | |
| Jon'yea McCooty | Northwest Catholic | Class M | 100m | | X |
| Carly Gable | Northwestern | Class M | 100m | | X |
| Erika Michie | Woodland | Class M | 200m | X | |
| Raianna Grant | WCA | Class M | 200m | | X |
| Erica Marriott | North Haven | Open | 100m | | X |

109.    These charts are examples, and do not include over 40 more missed championships, recognitions, and participation opportunities for girls in Connecticut who did not advance to or receive runner-up recognition in statewide competitions including major invitational meets, as well as girls who did not win or receive runner-up recognition in conference championships.

110.    The harm inflicted on girls by the CIAC policy, however, goes far beyond specific lost victories and lost opportunities to participate in elite meets, and far beyond the

specific girls who have been deprived of that recognition and those opportunities.  Instead, the harm extends at least to all girls who participate in track and field events under the CIAC Policy, and indeed to girls—including young girls—who may now or someday *aspire* to become track and field athletes.

111.    The cumulative effect of the CIAC Policy is that *all* girls in Connecticut do not receive equal athletic opportunities. Whether or not a girl is the one who loses out to a biological male in a particular race, the quality of competitive opportunities provided to *all* girls does not equally reflect the quality of competitive opportunities provided to boys, because—in contrast to boys—girls are forced to face a level of competition that does not equally reflect and accommodate girls' different physiological characteristics and abilities.

112.    Compared to boys, girls competing subject to the CIAC policy lose not only victories and post-season slots, they lose even an equal *hope* of victory, success and recognition. They do not have an equal chance to be champions; they cannot equally dream that if they train hard, they have at least the potential to stand on the victory podium.

113.    Instead, when an athlete who is genetically and physiologically male is competing in the girls' division, Plaintiffs and other girls are forced to step to the starting line thinking, "I can't win." "I'm just a girl."

114.    The Plaintiffs' personal and attainable goals of victory are being taken from them season after season, and meet after meet.

115.    Plaintiff Alanna Smith knows before she gets to the track that she has little hope of winning the top spot against a biological male—she and her fellow female competitors are simply competing for second or third place.

116.     The Plaintiffs are demoralized, knowing that their efforts to shave mere fractions of a second off of their race times in the hopes of experiencing the thrill of victory could all be for naught, and lost to mid-level male athletes.

117.     For Plaintiff Chelsea Mitchell and many other female athletes, they also feel stress, anxiety, intimidation, and emotional and psychological distress from being forced to compete against males with inherent physiological advantages in the girls' category. While important races always involve some element of stress, Chelsea has felt physically sick before races in which she knew she would have to race against a biological male, while Plaintiff Selina Soule suffered depression after being excluded from participation in State finals because top places in the girls' rankings were occupied by biological males.

118.     And they are told to shut up about it.  As another female Connecticut track athlete who was too afraid to let her name be used told a reporter:

> "There's really nothing else you can do except get super frustrated and roll your eyes, because it's really hard to even come out and talk in public, just because . . . just immediately you'll be shut down."[22]

119.     Chelsea Mitchell was instructed by officials of Canton High School to respond "no comment" if asked about running against male athletes.

## C.     The CIAC Policy Creates Additional and Unequal Risks of Injury for Girls.

120.     The CIAC Policy also applies in full, and with no additional limitations or safeguards, to sports that include bodily contact between players, or contact between players and balls or other equipment, such as soccer, basketball, and lacrosse.

---

[22] *Quoted in* Kelsey Bolar, *8th Place: A High School Girl's Life After Transgender Students Join Her Sport,* The Daily Signal (May 6, 2019), https://www.dailysignal.com/2019/05/06/8th-place-high-school-girls-speak-out-on-getting-beat-by-biological-boys/, last visited February 11, 2020.

121.    In these sports, the basic facts of physiology after puberty reviewed above, along with the on-average greater height, weight, and body mass index of males as compared to females, mean that on average, collision with males, or with balls hit or thrown at higher velocity by generally stronger males, create a higher risk of injury for girls and women than they would experience playing against only females.

122.    Studies show that girls and women already suffer a higher rate of concussions than do boys and men when playing the same sports, and that girls suffer longer-lasting negative effects from concussions than do boys. On information and belief, all Defendants are aware of this well-established medical science. On information and belief, already, significant numbers of girls are excluded from participating in athletics in Connecticut each season because they suffer or have suffered a concussion. By exposing girls to yet greater risk of concussion and other injury by permitting males to compete in girls' sports that involve body-to-body or ball-against-body collision, the CIAC Policy fails to appropriately accommodate the physiological capabilities and abilities of girls, and fails to provide equal athletic opportunities for girls.

123.    On information and belief, CIAC has in fact permitted males to compete in CIAC-sponsored competition in girls' sports in addition to track and field. According to a CIAC executive, the Policy "has been applied to teams on several occasions."

D.      **Defendants Are on Notice of Their Violations of Title IX and Have Refused to Take Corrective Action.**

124.    The CIAC and its member schools, including Defendant Schools, have been informed of the ways in which the Policy violates Title IX, and have been informed in detail about the actual impact that the Policy has had and is having on the quantity and quality of competitive opportunities for girls since well before June 18, 2019, on which date Plaintiffs filed

a complaint concerning the Policy with the U.S. Department of Education Office for Civil Rights

(OCR), and publicly posted that complaint online (the "OCR Complaint").

125.    The OCR Complaint disclosed all facts concerning the impact of the Policy on

female athletes in Connecticut that are gathered in this Complaint through the conclusion of the

Spring 2019 Outdoor Season.

126.    Since receiving the OCR Complaint, Defendants have taken no steps to change

the Policy, to correct official records and publicity materials to give accurate credit to girls who

would have been recognized as victors but for Defendants' violations of Title IX, or to cease and

correct their violations of Title IX in any way whatsoever.

127.    In fact, long before filing the OCR Complaint, parents of Plaintiffs had repeatedly

warned senior officials of CIAC and of Defendant Schools that the Policy was denying girls

equal competitive opportunities and public recognition in track and field. For example, on

February 21, 2018, Christina Mitchell, mother of Plaintiff Chelsea Mitchell, sent a letter to the

Executive Director of CIAC explaining in detail how the Policy deprives girls of fair and equal

opportunities for competition.

128.    After that time, Mrs. Mitchell and Bianca Stanescu, mother of Plaintiff Selina

Soule, met and requested to meet repeatedly with responsible officials of CIAC and Defendant

Schools to discuss their concerns about unfairness to girls, and to request that the Policy be

changed.

129.    In response to these warnings and complaints from parents concerning the effect

of the Policy on girls, Defendants took no steps whatsoever to change the Policy, to correct

official records and publicity materials to give accurate credit to girls who would have been

recognized as victors but for Defendants' violations of Title IX, or to cease and correct their violations of Title IX in any way whatsoever.

130.    Instead, when in March 2019—a year after her first letter—Mrs. Mitchell sent a third detailed letter on the same topic to the Mr. Glenn Lungarini, then Executive Director of CIAC, Mr. Lungarini informed her that CIAC would no longer accept any communications from her, effectively retaliating against her for her prior complaints of discrimination against girls by imposing a gag order and denying her right to complain of sex-based discrimination against her daughter and other girls in Connecticut schools.

131.    On information and belief, by no later than on or about October 4, 2019, the OCR informed all Defendants that OCR found the allegations of the OCR Complaint sufficiently serious that OCR had initiated a formal investigation of those allegations against all Defendants.

132.    Since receiving notice that the OCR had initiated a formal investigation of Defendants' alleged violations of Title IX, Defendants have taken no steps whatsoever to change the Policy, to correct official records and publicity materials to give accurate credit to girls who would have been recognized as victors but for Defendants' violations of Title IX, or to cease and correct their violations of Title IX in any way whatsoever.

## V.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

133.    All four Plaintiffs intend to compete in the Spring 2020 track and field season. While that season has been seriously disrupted by school closures resulting from the COVID-19 virus, the CIAC has recently announced that "CIAC will explore every possibility for providing student-athletes with a spring [2020] sports experience," and "will make every effort to provide student-athletes experiences that bring closure to their high school sports careers," "includ[ing] consideration of activities beyond graduation and into July."

134.    If genetically and physiologically male athletes are permitted to compete in girls' track and field competitions governed by the CIAC Policy in the Spring 2020 season, then Plaintiffs will likely lose victory, recognition, and advancement opportunities in the spring season.

135.    Plaintiff Chelsea Mitchell intends to compete in the CIAC Outdoor Class S Championships currently scheduled for June 3, 2020, in the 100m and 200m events. CIAC has established 2020 Class S qualifying standards at 13.74s for the 100m, and 28.94s for the 200m. Based on Chelsea's performance in the 2019 Outdoor track season, in which she achieved a time of 11.67s in the 100m and 24.79s in the 200m, Chelsea expects to qualify for the CIAC 2020 Outdoor Class S Championship.

136.    Chelsea has a chance of being the fastest girl in the CIAC Class S Championship in the 100m and 200m for the 2020 Spring season.

137.    Plaintiff Ashley Nicoletti also intends to compete in the CIAC Outdoor Class S Track Championship in the 100m and 200m. Based on Ashley's performance in the 2019 Outdoor track season, in which she achieved a time of 13.01s in the 100m and 26.78s in the 200m, Ashley expects to qualify for any Outdoor 2020 Class S Championship.

138.    But T.M. is also expected to meet the 2020 Outdoor Class S Championship qualifying standards for the girls' 100m and 200m races. In the 2019 Outdoor season, T.M. achieved an 11.64s in the 100m, and 24.18s in the 200m. In fact, T.M. took first place in the girls' 100m and 200m in the 2019 CIAC Outdoor Class S Championship.

139.    T.M. has repeatedly achieved times faster than the elite girls' times in Connecticut in the 100m and 200m. T.M. has never lost a girls' CIAC outdoor 100m or 200m final.

140.    If T.M. is permitted to compete in the girls' 100m and 200m events, it is likely that T.M. will deprive Chelsea and Ashley of a victory position that each girl has earned in the CIAC Class S Championship.

141.    Andraya Yearwood is also expected to meet the 2020 Outdoor Class S Championship qualifying standards. During the 2019 Outdoor season, Andraya achieved 12.20s in the 100m and 25.94s in the 200m.

142.    If Andraya is permitted to compete in the girls' 100m and 200m event, it is likely that Andraya will deprive Chelsea and Ashley of a victory position that each girl has earned in the Class S Championship.

143.    Plaintiffs Selina Soule and Alanna Smith intend to compete in the 2020 Outdoor CIAC Class LL Championship, and based on their 2019 Outdoor track performance, both girls expect to meet the event qualifying standards: 13.54s in the 100m, and 28.24s in the 200m. Selina achieved a 12.46s in the 100m and 26.30 in the 200m during the 2019 Outdoor season. Alanna achieved 12.04s in the 100m and 24.98s in the 200m during the 2019 Outdoor season.

144.    The top five finishers in each class championship will advance to the CIAC State Open Championships currently scheduled for June 8, 2020.

145.    Chelsea has a chance of being the fastest girl in the State Open in the 100m and 200m for the 2020 Outdoor season and securing a spot to advance to New England Regional Championships.

146.    Selina, Alanna, and Ashley have a chance of competing for a top spot in the State Open in the 100m and 200m for the 2020 Outdoor track season and competing for a top spot to advance to New England Regional Championships.

147.    But if T.M. and Andraya Yearwood are permitted to compete in the girl's 100m or 200m event, it is likely that one or both of these athletes with male physiology will deprive each of the Plaintiffs of a victory position she has earned at the State Open Championship.

148.    As Chelsea and Selina are seniors, the Spring 2020 track season is their final opportunity to compete in high school track and field events, to improve their scores, to win championships, to receive public recognition of their achievements, and to experience the thrill of victory.

149.    Plaintiff Alanna Smith is a sophomore and expects to compete in CIAC track and field competitions next year and throughout her high school years. Specifically, Alanna plans to compete in track and field events in both the winter and spring seasons of 2021. As noted in paragraph 102 above, Alanna has already been pushed down from an earned second place victory in a 2019 State Championship when T.M. took first place.

150.    Plaintiff Ashley Nicoletti is a sophomore and expects to compete in CIAC track and field competitions next year and throughout her high school years. Specifically, Ashley plans to compete in track and field events in both the winter and spring seasons of 2021. As noted in paragraph 100 above, Ashley has already been excluded from participation in elite competition when participation by two genetically and physiologically male athletes denied Ashley the opportunity to advance to compete for a spot at the State Open Championships.

151.    Plaintiffs do not know which or how many biological males will wish to compete in CIAC girls' track and field events in the Spring 2020 season, or the coming 2020-2021 academic year. In fact, the CIAC Policy denies them the ability to know that until the season starts, as illustrated by the fact that T.M. competed in the boys' events in the Winter 2018 indoor

season and just weeks later started competing in the girl's events in the Spring 2018 outdoor

season, with no prior notice to other athletes or their parents.

152.    Each track season lasts only a few weeks. If Alanna and Ashley wait until the start

of the next season to seek injunctive relief, the season will be over before there can be any

realistic hope of legal redress.

153.    Because of the multiple different negative impacts on girls detailed in this

Complaint, Plaintiffs are entitled to injunctive relief prohibiting all Defendants from permitting

boys to participate in girls' track and field competitions.

154.    Failure to grant the requested relief will cause irreparable harm to Plaintiffs by

continuing to deny them the experience of fair competition that reflects the athletic capabilities

of female athletes, as well as the experience of victory and the recognition that can come from

victory. Each meet, once over, cannot be redone. Each opportunity lost for participation in an

elite meet cannot be recovered. There is no adequate remedy at law for this harm.

155.    The continuing, irreparable harm caused by Defendants' failure to provide equal

competitive opportunities for girls in track and field far outweighs any cognizable harm that

granting the injunction might cause Defendants, because the requested injunctive relief is already

mandated by federal law.

156.    CIAC publicly posts results of past State Championship meets on their website

going back at least three years, and on information and belief maintains those records in publicly

accessible archives in perpetuity. In addition, schools including at least Defendant School Canton

publicly post lists of championships won by their students, going back many years. As a result of

competition by male athletes in girls' events in violation of Title IX, female athletes including

Plaintiffs have been denied accurate public recognition of their athletic achievements and victories in these postings.

157.    Plaintiffs are entitled to injunctive relief requiring all Defendants to correct all league or school records, public or private, to accurately reflect the achievements of these girls only in competition against other girls.

158.    Failure to grant this requested relief will cause irreparable harm to Plaintiffs by continuing to deprive them of public recognition for their hard-earned athletic accomplishments. There is no adequate remedy at law for this harm.

159.    The continuing, irreparable harm caused by Defendants' posting of inaccurate records resulting from the unlawful CIAC Policy outweighs any cognizable harm that granting the harm might cause Defendants, because the requested injunctive relief is already mandated by federal law.

<u>COUNT I: TITLE IX</u>

<u>Sex Discrimination by Failing to Provide Effective Accommodation for the
Interests and Abilities of Girls</u>

160.    Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs of this Complaint.

161.    All Defendants are subject to the obligations of Title IX.

162.    Defendants have chosen to provide athletic opportunities in track and field separated by sex.

163.    As a result, Defendants have an obligation to provide competitive opportunities for females that accommodate the physical abilities of girls in a manner that ensures that female athletes face competitive opportunities "which equally reflect their abilities" and which provide

"equal opportunity in . . . levels of competition" as compared to the competitive opportunities enjoyed by boys.

164.    As a result of profound physiological differences between the sexes after puberty, the athletic abilities of girls relevant to track and field competitions are not equal to those of comparably fit and trained boys.

165.    As a result of this inescapable difference, by permitting students who were born male and possess the athletic advantages bestowed by male bodies to compete in girls' track and field events, all Defendants have violated their duty to provide competitive opportunities for female athletes that accommodate their abilities and provide equal opportunities in levels of competition, as illustrated by the fact that in events where students born male have actually been permitted in elite post-season competitions, students born male have been awarded far more first place victories and recognitions than girls, and far more opportunities to advance to state finals.

166.    All Plaintiffs are harmed by Defendants' failure to provide competitive opportunities that fairly and effectively accommodate the athletic abilities of girls. All Plaintiffs have been harmed by Defendant CIAC's imposition and administration of its policy. All Plaintiffs have been harmed by Defendant Bloomfield's conduct in applying and facilitating the CIAC policy. Plaintiffs Selina Soule, Chelsea Mitchell, and Ashley Nicoletti have been harmed by Defendant Cromwell's conduct in applying and facilitating the CIAC policy. Plaintiff Selina Soule has been harmed by Defendant Glastonbury's conduct in applying and facilitating the CIAC policy. Plaintiff Chelsea Mitchell has been harmed by Defendant Canton's conduct in applying and facilitating the CIAC policy. Plaintiff Alanna Smith has been harmed by Defendant Danbury's conduct in applying and facilitating the CIAC policy.

167.     Such harm includes loss of the experience of fair competition; loss of victories and the public recognition associated with victories; loss of opportunities to advance to higher-level competitions; loss of visibility to college recruiters; emotional distress, pain, anxiety, and other damages to be proven at trial.

168.     Accordingly, Plaintiffs are entitled to the relief requested herein.

<u>COUNT II: Title IX</u>

<u>Sex Discrimination by Failing to Provide Equal Treatment, Benefits and Opportunities for Girls</u>

169.     Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs of this Complaint.

170.     All Defendants are subject to the obligations of Title IX.

171.     Defendants have chosen to provide athletic opportunities in track and field separated by sex.

172.     As a result, all Defendants have an obligation to ensure that female athletes receive equivalent treatment, benefits and opportunities in athletic competition as compared to boys.

173.     Equivalent treatment and opportunities require equal opportunities to engage in post-season competition, and more broadly the right to be free of any policies which are "discriminatory in language or effect" or have the effect of denying "equality of athletic opportunity."

174.     As detailed herein, the CIAC Policy deprives female athletes, including Plaintiffs Chelsea Mitchell, Selina Soule, Alanna Smith, and Ashley Nicoletti, of equal opportunities to engage in post-season competition, is discriminatory in effect, and denies girls equality in athletic opportunities, including equal opportunities to achieve and be recognized for victory.

45

175.    By providing track and field competitive opportunities for girls subject to the CIAC policy that permits males to participate in girls' events and be recognized as winners of girls' events, all Defendants have violated their obligation under Title IX to provide equal treatment, benefits and opportunities in athletic competition to girls.

176.    All Plaintiffs are harmed by Defendants' failure to provide competitive opportunities that fairly and effectively accommodate the athletic abilities of female athletes. All Plaintiffs have been harmed by Defendant CIAC's imposition and administration of its policy. All Plaintiffs have been harmed by Defendant Bloomfield's conduct in applying and facilitating the CIAC policy. Plaintiffs Selina Soule, Chelsea Mitchell, and Ashley Nicoletti have been harmed by Defendant Cromwell's conduct in applying and facilitating the CIAC policy. Plaintiff Selina Soule has been harmed by Defendant Glastonbury's conduct in applying and facilitating the CIAC policy. Plaintiff Chelsea Mitchell has been harmed by Defendant Canton's conduct in applying and facilitating the CIAC policy. Plaintiff Alanna Smith has been harmed by Defendant Danbury's conduct in applying and facilitating the CIAC policy.

177.     Such harm includes loss of the experience of fair competition; loss of victories and the public recognition associated with victories; loss of opportunities to advance to higher-level competitions; loss of visibility to college recruiters; emotional distress, pain, anxiety, and other damages to be proven at trial.

178.    Accordingly, Plaintiffs are entitled to the relief requested herein.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment against Defendants and grant Plaintiffs the following relief:

(A)     A declaration that Defendants have violated Title IX by failing to provide competitive opportunities that effectively accommodate the abilities of girls;

(B)     A declaration that Defendants have violated Title IX by failing to provide equal treatment, benefits, and opportunities for girls in athletic competition;

(C)     An injunction prohibiting all Defendants, in interscholastic athletic competitions sponsored, organized, or participated in by the Defendants or any of them, from permitting males from participating in events that are designated for girls, women, or females;

(D)     An injunction requiring all Defendants to correct any and all records, public or non-public, to remove male athletes from any record or recognition purporting to record times, victories, or qualifications for elite competitions designated for girls or women, and conversely to correctly give credit and/or titles to female athletes who would have received such credit and/or titles but for the participation of athletes born male and with male bodies in such competitions;

(E)     An injunction requiring all Defendants to correct any and all records, public or non-public, to remove times achieved by athletes born male and with male bodies from any records purporting to record times achieved by girls or women;

(F)     An award of nominal and compensatory damages and other monetary relief as permitted by law;

(G)     An award of Plaintiffs' reasonable attorneys' fees and expenses, as authorized by 42 U.S.C. § 1988;

(H)     Such other and further relief as the Court deems appropriate.

With respect to provisions (A) through (F) of the foregoing Prayer for Relief:

(1)     Plaintiff Selina Soule seeks declaratory relief, injunctive relief to correct records, and nominal and compensatory damages against Defendants CIAC and the Bloomfield, Cromwell, and Glastonbury Boards of Education.

(2)     Plaintiff Chelsea Mitchell seeks declaratory relief, injunctive relief to correct records, and nominal and compensatory damages against Defendants CIAC and the Bloomfield, Cromwell, and Canton Boards of Education.

(3)     Plaintiff Alanna Smith seeks declaratory relief, injunctive relief to correct records, and nominal and compensatory damages against Defendants CIAC and the Bloomfield and Danbury Boards of Education.

(4)     Plaintiff Ashley Nicoletti seeks declaratory relief, injunctive relief to correct

records, and nominal and compensatory damages against Defendants CIAC and the

Bloomfield and Cromwell Boards of Education.

(5)     Plaintiffs Smith and Nicoletti further seek the injunctive relief in section (C) of

the Prayer for Relief against all Defendants, to enjoin operation of Defendants' policy

and practice of permitting biological male athletes to compete against females in CIAC

indoor and outdoor track events.


Respectfully submitted this 11th day of August, 2020.

By: s/ *Roger G. Brooks*

Roger G. Brooks
CT Fed. Bar No. PHV10498
Jeffrey A. Shafer
CT Fed. Bar No. PHV10495
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
Email: rbrooks@ADFlegal.org
Email: jshafer@ADFlegal.org

Kristen K. Waggoner
CT Fed. Bar No. PHV10500
Christiana M. Holcomb
CT Fed. Bar No. PHV10493
Parker Douglas
CT Fed. Bar No. PHV10761
Alliance Defending Freedom
440 First St. NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: kwaggoner@ADFlegal.org
Email: cholcomb@ADFlegal.org
Email: pdouglas@ADFlegal.org

Howard M. Wood III
CT Bar No. 68780, CT Fed. Bar No. 08758
James H. Howard
CT Bar No 309198, CT Fed. Bar No 07418
Fiorentino, Howard & Petrone, P.C.
773 Main Street
Manchester, CT 06040
Telephone: (860) 643-1136
Fax: (860) 643-5773
Email: howard.wood@pfwlaw.com
Email: james.howard@pfwlaw.com

Attorneys for Plaintiffs

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Second Amended Verified Complaint, and the factual allegations thereof, and that to the best of my knowledge the facts alleged therein are true and correct. Due to the COVID-19 pandemic, I am unable to have this verification notarized; however, I will do so as soon as conditions safely permit.

Executed this 10th day of August, 2020

Christina Mitchell, Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2020, a copy of the foregoing Second Amended Complaint was filed electronically with the Clerk of Court. Service on all parties will be accomplished by operation of the court's electronic filing system.


s/ *Roger G. Brooks*

Attorney for Plaintiffs