## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SELINA SOULE,** *et al.*, | : | **Docket No. 3:20-cv-00201-RNC** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CONNECTICUT ASSOCIATION OF** | : | |
| **SCHOOLS, INC.,** *et al.*, | : | |
| **Defendants** | : | SEPTEMBER 29, 2020 |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO JOIN THE U.S. DEPARTMENT OF EDUCATION AS A PARTY

Defendants Connecticut Association of Schools, Inc. d/b/a Connecticut Interscholastic Athletic Conference ("CIAC"), Bloomfield Board of Education, Cromwell Board of Education, Glastonbury Board of Education, Canton Board of Education, and Danbury Board of Education (hereinafter collectively, "Defendants"), respectfully submit this supplemental memorandum of law in support of their motion to join the United States Department of Education, its Office for Civil Rights ("OCR"), and Secretary Betsy DeVos (collectively, "ED"), in her official capacity, as parties to this lawsuit. *See* ECF. 91, 117.

## I.    INTRODUCTION

As this Court is aware from prior filings in this case, OCR has continued its investigation of Plaintiff's complaint about the CIAC's transgender participation policy despite the fact that Plaintiffs filed this lawsuit--which violates the clear language of OCR's Case Processing Manual. *See* ECF. 91-1, pp. 14-16. In order to resolve this intolerable situation, Defendants previously moved to join ED as parties to this matter. That motion remains pending before the Court. This supplemental memorandum of law in support of the Motion to Join is necessitated by recent developments in ED's enforcement activities in the OCR proceeding. Specifically, on August 31, 2020, ED issued its "Revised Letter of Impending Enforcement Action" in the OCR matter to

Defendants. *See* **Exhibit A**, hereinafter "Revised Enforcement Letter." ED issued the Revised Enforcement Letter in order to "update" its May 15, 2020 Letter of Impending Enforcement Action. *See* ECF. 117-1.

Although ED purportedly issued the Revised Enforcement Letter to address the Supreme Court's holding in *Bostock v. Clayton Cnty., Georgia*, --- U.S. ---, 140 S. Ct. 1731 (2020), OCR used the opportunity to allegedly make a statement of policy that OCR purports to be binding on Defendants and other school systems across the country. OCR opined that *Bostock* does not affect its interpretation of 34 C.F.R. § 106.41(b) that girls who are transgender are prohibited from competing in girls' athletics because, according to OCR, § 106.41(b) somehow authorizes such discrimination. In an unprecedented move never seen before, OCR concluded that the Revised Enforcement Letter "*constitutes a formal statement of OCR's interpretation of title IX and its implementing regulations and should be relied upon, cited and construed as such.*" (Emphasis added). **Exhibit A, p. 49.**[1]

Just over two weeks later on September 17, 2020, OCR again communicated to the Defendants by letter ("Referral Letter") notifying them that because they have not entered into an agreement with OCR that would ban girls who are transgender from competing on girls' athletic teams, "[t]his case *will* be referred to the DOJ…within 10 days of this letter" pursuant to 20 U.S.C. § 1682 and 34 C.F.R. §§ 100.8(a) and 106.71. *See* **Exhibits C, D, E, F, G and H**.

As discussed below, ED's stated policies in the Revised Enforcement Letter and ED's referral of the case to DOJ undermines ED's arguments and reinforces Defendants' position that a substantial risk of inconsistent obligations exist should ED not be named as a cross-defendant in

---

[1] In contrast, the May 15, 2020 Letter, which is attached to Defendants' original motion, states that it "is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such."

this action.  Therefore, the Court should grant the Motion to Join ED to this case without further delay.

## II.     SUPPLEMENTAL ARGUMENT

Defendants have moved to join ED in this matter. *See* ECF 91-1. Defendants argue that ED is a required party under Rule 19(a) because ED has an interest in the matter and, if not joined, Defendants have a substantial risk of incurring inconsistent obligations. In the alternative, permissive joinder is required under Rule 20 because the claims arise out of the same transaction and there is a common question of law and fact. ED opposed that motion on the grounds that its interests were adequately protected by the Statement of Interest filed by the DOJ, *see* ECF 106, p. 8, and that Defendants' concerns about inconsistent obligations were "misplaced" and "speculative" because ED had not: (a) issued a final determination that Defendants violated Title IX; (b) determined that informal resolution was not possible; or (c) decided that it should proceed with an administrative proceeding or make a recommendation to the DOJ to bring civil suit against Defendants. *See* ECF No. 106, pp. 11-12. Those arguments were not valid at the time, and they certainly are not valid following issuance of the Revised Enforcement Letter and the Referral Letter.

### A.     <u>The Revised Enforcement Letter and the Referral Letter Leave Substantial Risk of Defendants Being Subjected to Double, Multiple or Otherwise Inconsistent Obligations.</u>

In June 2020, the U.S. Supreme Court issued its groundbreaking decision in *Bostock* holding that "it is impossible to discriminate against a person for being…transgender without discriminating against that individual based on sex" in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. *Bostock*, 140 S. Ct. at 1741. Even OCR agrees that interpretation of Title IX must be guided by *Bostock's* holding. *See* **Exhibit B** ("[T]he *Bostock* opinion guides OCR's understanding that discriminating against a person based on

their…identification as transgender generally involves discrimination on the basis of their biological sex [sic]" in violation of Title IX);[2] *see also Whitman-Walker Clinic, Inc. v. United States HHS*, 2020 U.S. Dist. LEXIS 159951, *81 (D.D.C. September 2, 2020) (*Bostock* "plainly [has] implications for Title IX's prohibition on sex discrimination.... There is no apparent reason why the Court's conclusion – that it is "impossible" to discriminate based on transgender status without discriminating based on sex – would remain cabined to Title VII and not extend to other statutes prohibiting sex discrimination.").

Nevertheless, here OCR concluded that *Bostock* does "not alter the legal authority for sex-segregated teams under Title IX" because, according to OCR, 34 C.F.R. § 106.41(b) permits "a recipient [to] operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill…." *See* **Exhibit A, p. 34**. This is OCR's "formal statement" of its position on Title IX, *see* **id., p. 49**, and OCR demands that Defendants comply with it. *Id*. Yet, OCR's position has been flatly rejected by at least two (2) Courts of Appeals. *See Grimm v. Gloucester Cty. Sch. Bd.*, No. 19-1952, 2020 U.S. App. LEXIS 27234 (4th Cir. Aug. 26, 2020) ("…Grimm does not challenge sex-separated restrooms; he challenges the Board's discriminatory exclusion of himself from the sex-separated restroom matching his gender identity. …[T]he implementing regulation cannot override the statutory prohibition against *discrimination* on the basis of sex. All it suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory—not that, in applying bathroom policies to students like Grimm, the Board may rely on its own discriminatory notions of what "sex" means"); *Adams v. Sch. Bd.*, No. 18-13592, 2020 U.S. App. LEXIS 24968, 968 F.3d 1286 (11th Cir. Aug. 7, 2020) (holding that (34 C.F.R. § 106.33 does not permit a school to ban a boy who is transgender from the boys' restroom); *see*

---

[2] Note that this letter was issued the same day as OCR issued its Revised Enforcement Letter.

*also Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018); *Dodds v. United States Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016).

Furthermore, OCR has referred the matter to the DOJ to enforce its absent Defendants' compliance. *See* **Exhibits C, D, E, F, G and H**. In other words, OCR seeks to have DOJ initiate a separate lawsuit against the same Defendants, based on the same allegations and interpreting the same statutory language. This places Defendants in the exact position that Rule 19(a) seeks to avoid: it leaves Defendants open to the possibility of double, multiple, or otherwise inconsistent judgments. If DOJ files a lawsuit against Defendants, it would be on the exact same issue before the Court in this case.  Surely, therefore, any such lawsuit would be consolidated with this lawsuit. There is no need to wait for DOJ to file suit to enforce ED's interests; ED can and should be joined now because all of the conditions necessary for joinder are present.[3]

OCR's demand for Defendants to comply with its interpretation of Title IX is inconsistent from what is being mandated by the courts, creating multiple and inconsistent, and confusing, obligations. Of course, ED will argue that OCR's interpretation is entitled to deference in the DOJ's prosecution because it is the agency charged with enforcement of Title IX and it is interpreting its own regulations.[4] But this only adds support to Defendants' argument that joinder is necessary. Litigation before two courts will lead to multiple, double and other inconsistent obligations being imposed on the Defendants, especially if only one defers to OCR's interpretation of Title IX. The proper, and most appropriate, way to resolve this dispute is to join all parties into

---

[3] OCR issued its original notice of impending enforcement action in May 2020, yet never referred the case to DOJ or initiated an administrative enforcement action. OCR has now revised its notice of impending enforcement action, purporting to convert it to a policy statement, and referred the case to DOJ.  Defendants have a good-faith concern that DOJ will never bring a lawsuit, or will significantly delay filing such a lawsuit. Defendants should not be subjected to further delays by DOJ or ED, and they should be joined forthwith in this case.
[4] Defendants dispute that the Revised Enforcement Letter is entitled to any deference whatsoever in interpreting Title IX. However, that is an argument for a different day and, therefore, will not be addressed here.

one action to be decided by a single judge as required by Rule 19(a). Therefore, Defendants' motion for joinder must be granted.

**B.**     **That Defendants will be Subject to Multiple, Double or Otherwise Inconsistent Obligations is not Speculative.**

In opposing Defendants' motion, ED incredulously claimed that Defendants' concerns regarding being subject to multiple, double or inconsistent obligations were "speculative" because OCR had not issued a final determination that Defendants violated Tile IX, nor had it decided if it would initiate administrative enforcement proceedings or make a referral to the DOJ to bring civil suit. *See* ECF No. 106 at 11-12. However, as fully set out in Defendants' reply brief, only *four days* after ED filed its opposition to Defendants' motion to join, OCR issued its May 15, 2020 Enforcement Letter, finding that Defendants had violated Title IX and confirming that it would take additional action.  *See* ECF. 117, Ex. A at 45.

Now, ED's argument concerning the "speculative" nature of Defendants' concerns has been completely undermined by OCR's Revised Enforcement Letter and Referral Letter. The Revised Enforcement Letter states that it "constitutes a *formal statement* of OCR's interpretation of Title IX and its implementing regulations and *should be relied upon, cited, and construed as such*."  *See* **Exhibit A, p. 49**. There can be nothing more final than this statement, eliminating any hint of "speculation" as to what position OCR will take. In fact, by making this a "formal statement" and demanding compliance, OCR asserts that Defendants (and other school districts) are already in violation of Title IX, irrespective of the outcome of this lawsuit. This competes with persuasive authority from the Courts as expressed by *Bostock*, *Adams* and *Grimm*.

Moreover, the Referral Letter eliminates any question as to whether Defendants will be subjected to a second lawsuit by the DOJ. The Referral Letter states, in no uncertain terms and without leaving any discretion, that "[t]his case ***will*** be referred to the DOJ" to initiate a lawsuit.

*See* **Exhibits C, D, E, F, G and H**. That lawsuit initiated by the DOJ will litigate the precise issues now before this Court against the same Defendants based on the same set of facts.

ED's argument that OCR has not made a final determination as to whether a violation of Title IX occurred, and had not yet decided whether to pursue Defendants in any formal action is, therefore, moot.

### C. The Revised Enforcement Letter and Referral Letter Show that ED Cannot Adequately Protect its Interest Absent Being Made a Party to this Litigation.

In opposing Defendants' motion for joinder, ED argued that its interests were adequately protected by the Statement of Interest filed by the DOJ, that Defendants' motion to join was "premature," that it can protect its own interest in Title IX through the administrative enforcement process, and that Defendants' motion to join is nothing more than "an improper attempt to make an end-run around the administrative proceedings." ECF 106, pp. 8, 11. These arguments carry no weight given OCR's Revised Enforcement Letter and Referral Letter.

*First*, if ED truly believed that its interests were adequately protected by the DOJ's Statement of Interest, there would be no need for it to take any further action. Instead, however, OCR issued the Revised Enforcement Letter as a "*formal statement* of OCR's interpretation of Title IX and its implementing regulations" that "*should be relied upon, cited, and construed as such,*" *see* **Exhibit A, p. 49**, which is unprecedented. Nor would OCR need to refer the matter to the DOJ to initiate a secondary lawsuit on the same issues now before this Court. *See* **Exhibits C, D, E, F, G and H**.

*Second*, as fully set forth above and now incorporated as if fully set forth herein, given OCR's statements in the Revised Enforcement Letter and Referral Letter, there can be nothing "premature" about Defendants' motion for Joinder of ED. A final determination has been made, and OCR has decided it will take the action of referral to DOJ for further action.

*Third*, clearly there will be no further administrative proceedings in this matter for Defendants "to make an end-run around."[5] OCR has concluded its administrative proceedings by issuing the Revised Enforcement Letter and, subsequently, issuing a formal statement in the Referral Letter that OCR *will* refer the matter to the DOJ. The CPM is clear that after a finding that Title IX has been violated, OCR may initiate administrative enforcement proceedings <u>or</u> refer the case to the DOJ to initiate a lawsuit, but not both. *See* 34 CFR §100.8(a). OCR's decision to refer the matter to the DOJ means that no further administrative proceedings can take place.

At this juncture, OCR has left ED with no viable argument that its interests can be adequately protected by the Statement of Interest alone. In fact, OCR is requesting that the DOJ file a lawsuit to protect those very interests. It is a waste of judicial resources and Defendants' – who are all public school districts using tax payer dollars – time, effort and money to litigate two separate lawsuits where clearly all issues can be litigated together by joining ED as a cross-defendant to this action.

**D.    <u>The Revised Enforcement Letter Also Supports that Defendants have a Viable Claim under the Administrative Procedure Act</u>.**

In opposition to Defendants' motion for joinder, ED also argued that joinder was impossible because Defendants do not have a viable claim under the Administrative Procedure Act ("APA"), which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (*quoting* 5 U.S.C.

---

[5] Nothing in this argument is meant to or does waive Defendants' argument that OCR improperly continued to pursue the administrative complaint after this lawsuit was filed in violation of the CPM, which requires dismissal when a lawsuit making the same allegations is filed before a final determination is made. Indeed, that the Revised Enforcement Letter now concludes this is the "formal statement" of OCR only supports Defendants' argument that a final determination had not yet been made at the time this lawsuit was filed.

§ 702).  ED argued that there was no final agency action for the Court to review. As more fully set forth in Defendants reply brief and now incorporated as if fully set forth herein:

> An agency action is final if two conditions are met: (1) the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature, and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

(Internal quotation marks omitted). *Shakhnes v. Berlin*, 689 F.3d 244, 260 (2d Cir. 2012) (*quoting Bennett v. Spear*, 520 U.S. 154, 177–78). Even more so than its May 15, 2020 letter, Revised Enforcement Letter and Referral Letter solidify that these conditions are met.

First, the Revised Enforcement Letter sets forth OCR's unequivocal position that the Transgender Policy violates Title IX. There can be nothing more definitive than the statement that the Revised Enforcement Letter "should be relied upon, cited and construed" as the "*formal statement* of OCR's interpretation of Title IX and its implementing regulations." **Exhibit A, p. 49**. The letter demands that Defendants comply with OCR's "formal statement." *See Ciba-Geigy Corp. v. U.S.E.P.A.,* 801 F.2d 430 (D.C. Cir. 1986). Solidifying that the Revised Enforcement Letter is a final agency decision is the Referral Letter demanding compliance or face referral to the DOJ. *See* **Exhibits C, D, E, F, G and H**.

Second, OCR's unequivocal and definitive position undoubtedly gives rise to "direct and appreciable legal consequences" for the Defendants. *See United States Army Corps of Engineers v. Hawkes Co.,* --- U.S. ---, 136 S. Ct. 1807, 1814 (2016).  The Referral Letter leaves no doubt that OCR "*will*" refer the case to the DOJ to initiate a lawsuit against the very same Defendants to this case based on the very same allegations asserted herein. As expressed by the U.S. Supreme Court and stated in the Defendants' reply, "[p]arties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil penalties.'" *Id.*  A lawsuit by the DOJ carries not only the risk of the Defendants here being subject

9

to multiple, double or otherwise inconsistent obligations by more than one court of law, but could result in serious penalties for the Defendants if the Court were to defer to OCR's interpretation of Title IX.

Irrespective of whether OCR properly followed the rulemaking process, to which Defendants do not concede, the Revised Enforcement Letter is a statement of substantive policy which Defendants have the ability to challenge under the APA.  In fact, OCR's failure to follow proper rulemaking means that Defendants will likely prevail if it is challenged on that ground alone. Moreover, Defendants can show that the conclusion reached in the Revised Enforcement Letter is arbitrary and capricious. In 2017, ED itself used the lack of rulemaking as cause for withdrawing OCR's 2016 guidance.  For these reasons, Defendants have a viable APA claim against ED, and the requirements for required joinder pursuant to Rule 19(a) have all been met.

## IV.    CONCLUSION

Wherefore, for the reasons set forth in the Defendants' motion for joinder, supporting memorandum of law, reply brief, and herein in this supplemental brief, the Court should grant Defendants' motion and join the United States Department of Education, its Office for Civil Rights, and Secretary of Education Betsy DeVos, in her official capacity, as cross-defendants in this lawsuit, together with such further and additional relief as this Court deems necessary.

DEFENDANTS,
BLOOMFIELD BOARD OF EDUCATION
CROMWELL BOARD OF EDUCATION

By   /s/ Johanna G. Zelman
      Johanna G. Zelman (ct26966)
      FordHarrison, LLP
      CityPlace II
      185 Asylum Street, Suite 610
      Hartford, CT 06103
      Tel #:   (860) 740-1355
      Fax #:  (860) 578-2075
      Email:  jzelman@fordharrison.com

DEFENDANTS,
GLASTONBURY BOARD OF EDUCATION
CANTON BOARD OF EDUCATION

By   /s/ David S. Monastersky
     David S. Monastersky (ct13319)
     Howd & Ludorf, LLC
     65 Wethersfield Avenue
     Hartford, CT 06114-1190
     dmonastersky@hl-law.com

DEFENDANTS,
CONNECTICUT ASSOCIATION OF
SCHOOLS, INC. D/B/A CIAC AND
DANBURY BOARD OF EDUCATION

By  /s/ Peter J. Murphy
     Peter Joseph Murphy (ct26825)
     Linda L. Yoder (ct01599)
     Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT 06103
     pjmurphy@goodwin.com
     lyoder@goodwin.com

## CERTIFICATE OF SERVICE

This is to certify that on this 29th day of September, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Howard M. Wood, III, Esq.
Phelon, Fitzgerald & Wood
773 Main Street
Manchester, CT 06040
howard.wood@pfwlaw.com
*Attorney for Plaintiffs Selina Soule, Chelsea Mitchell and Alana Smith*

Peter Joseph Murphy, Esq.
Linda L. Yoder, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
lyoder@goodwin.com
pjmurphy@goodwin.com
*Attorneys for Connecticut Association of Schools, Inc. d/b/a CIAC and Danbury BOE*

Kristen Waggoner, Esq.
Christiana M. Holcomb, Esq.
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
kwaggoner@adflegal.org
cholcomb@adflegal.org
*Attorney for Plaintiffs Selina Soule, Chelsea Mitchell and Alana Smith*

David S. Monastersky, Esq.
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
dmonastersky@hl-law.com
*Attorney for Defendants Glastonbury BOE and Canton BOE*

Jeff Shafer, Esq.
Roger Greenwood Brooks, Esq.
15100 N. 90th Street
Scottsdale, AZ 85260
jshafer@adflegal.org
rbrooks@adflegal.org
*Attorney for Plaintiffs Selina Soule, Chelsea Mitchell and Alana Smith*

Michael E. Roberts, Esq.
CHRO
450 Columbus Boulevard, Suite 2
Hartford, CT 06103
Michael.e.roberts@ct.gov
*Attorney for Intervenor Defendant CHRO*

James Howard
Fiorentino Howard & Petrone, P.C.
773 Main Street
Manchester, CT 06040
jim.howard@pfwlaw.com
*Attorney for Plaintiffs Selina Soule, Chelsea Mitchell and Alana Smith*

Dan Barrett, Esq.
American Civil Liberties Union – CT
765 Asylum Avenue, 1st Floor
Hartford, CT 06105
dbarrett@acluct.org
*Attorney for Intervenors Andraya Yearwood and Thania Edwards*

Matthew J. Donnelly, Esq.
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
matthew.donnelly@usdoj.gov
*Attorney for the United States*

Chase Strangio, Esq.
Galen Sherwin, Esq.
James D. Esseks, Esq.
Joshua A. Block, Esq.
Lindsey Kaley, Esq.
ACLU
125 Broad Street, 18th Floor
New York, NY 10004
cstrangio@aclu.org
gsherwin@aclu.org
jesseks@aclu.org
jblock@aclu.org
lkaley@aclu.org
*Attorney for Intervenors Andraya Yearwood
and Thania Edwards*

  /s/ Johanna G. Zelman
Johanna G. Zelman