# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SELINA SOULE, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 3:20-cv-00201-RNC |
| CONNECTICUT ASSOCIATION OF SCHOOLS, INC., *et al*, | |
| *Defendants*, | May 17, 2024 |
| and | |
| ANDRAYA YEARWOOD and TERRY MILLER; COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES, | |
| *Intervenor-Defendants*. | |

## REPLY IN SUPPORT OF INTERVENOR-DEFENDANTS ANDRAYA YEARWOOD AND TERRY MILLER'S 12(b)(6) MOTION TO DISMISS

Plaintiffs' opposition to the Motion to Dismiss confirms that they cannot identify any provision of Title IX, the athletic regulations, or the controlling policy interpretations supporting their unprecedented arguments. No matter how many times Plaintiffs assert (without supporting citation) that allowing transgender girls to participate on girls' sports teams is "discrimination," that is simply not what Title IX says. Because Title IX does not define girls who are transgender as "males" or prohibit schools from allowing transgender girls to participate on girls' sports teams, Intervenor-Defendants' motion dismiss should be granted.

**ORAL ARGUMENT REQUESTED**

I.      **Title IX Does Not "Define" Girls Who Are Transgender as Boys.**

This Court should reject Plaintiffs' unprecedented argument that Title IX requires schools to discriminate against girls who are transgender by treating transgender girls as though they were cisgender boys. *See* Intervenor-Defendants' Motion to Dismiss ("Mot.") at 16-18 (summarizing cases from Fourth and Seventh Circuits rejecting argument that Title IX defines transgender students' sex based on their sex designated at birth); *Soule v. Conn. Ass'n of Sch., Inc.*, 90 F.4th 34, 94 (2d Cir. 2023) (en banc) (Chin, J., dissenting) (responding to same arguments raised by Plaintiffs here).

Far from requiring discrimination against transgender students, the overwhelming majority of courts has held, in accordance with the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), that Title IX affirmatively requires schools to treat transgender students *consistent* with their gender identity, including with respect to sex-separated facilities and programs.[1] And courts within this circuit have consistently rejected Plaintiffs' assertions that *Bostock*'s "reasoning applies only to Title VII." Opp. 41.[2] While a minority of courts outside this

---

[1] *See B.P.J. by Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 563 (4th Cir. 2024) (sports); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023), *cert. denied sub nom. Metro. Sch. Dist. of Martinsville v. A. C.*, 144 S. Ct. 683 (2024) (restroom); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619 (4th Cir. 2020) (restroom); *Doe v. Horne*, 683 F. Supp. 3d 950, 974 (D. Ariz. 2023), *appeal filed*, No. 23-16026 (9th Cir. July 24, 2023) (sports); *A.M. by E.M. v. Indianapolis Pub. Schs.*, 617 F. Supp. 3d 950, 955 (S.D. Ind. 2022), *appeal dismissed sub nom. A.M. by E.M. v. Indianapolis Pub. Sch. & Superintendent*, No. 22-2332, 2023 WL 371646 (7th Cir. Jan. 19, 2023) (sports).

[2] *See, e.g.*, *Kelepecz v. Children's Learning Ctrs. of Fairfield Cnty., Inc.*, No. 3:21-CV-136, 2024 WL 1141821, at *12 (D. Conn. Mar. 15, 2024) (applying *Bostock* to ADEA); *LeTray v. City of Watertown*, No. 520-CV-1194, 2024 WL 1107903, at *7 (N.D.N.Y. Feb. 22, 2024) (applying *Bostock* to Equal Protection Clause); *Klaneski v. Bristol Hosp., Inc.*, No. 3:22-CV-1158 (VAB), 2023 WL 4304925, at *3 (D. Conn. June 30, 2023) (applying *Bostock* to Title IX and Section 1557); *Walker v. Azar*, 480 F. Supp. 3d 417, 420 (E.D.N.Y. 2020) (same).

Circuit has held that Title IX *allows* schools to exclude transgender students from sex-separated facilities and programs based on their sex designated at birth, no court has ever held that Title IX *requires* schools to do so. *See, e.g.*, *A.C.*, 75 F.4th at 775 (Easterbrook, J, concurring in judgment) (stating that Indiana may choose to "use a social definition [of sex] rather than a genetic one" but "federal law does not compel states to do this").

Because Title IX does not create a federal definition of sex that preempts state and local antidiscrimination laws recognizing girls who are transgender as girls, the Motion to Dismiss should be granted.

## II.     Plaintiffs Fail to State a Claim for Denial of Equal Athletic Opportunity.

Even assuming for argument's sake that Title IX defined girls who are transgender as boys, Plaintiffs' unprecedented arguments would still fail to state a claim. Plaintiffs may believe that any competition between cisgender girls and people designated male at birth is inherently "unfair," but Plaintiffs utterly fail to ground that policy preference in the text of Title IX or its regulations and guidance. No court has ever held that these provisions establish that a denial of equal athletic opportunity occurs whenever a cisgender girl competes against someone with a male sex designated at birth.

Plaintiffs purport to rely on the plain text of Title IX, but Congress deliberately refrained from addressing athletics in the statutory text. Instead, Congress passed a separate statute in 1974 directing the predecessor to the Department of Education to promulgate regulations "with respect to intercollegiate athletic activities [with] reasonable provisions considering the nature of particular sports." See Pub. L. 93-380, Title VIII, Sec. 844, August 21, 1974, 88 Stat. 612. Thus, "[t]he degree of deference" to agency regulations "is particularly high in Title IX cases [concerning athletics] because Congress explicitly delegated to the agency the task of prescribing standards for

3

athletic programs under Title IX." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 287-88 (2d Cir. 2004) (quoting *Cohen v. Brown Univ.*, 991 F.2d 888, 895 (1st Cir. 1993)).

The regulations that were subsequently adopted do not mandate sex separation. They establish a "[g]eneral" rule *prohibiting* schools from "provid[ing] . . . athletics separately" on the basis of sex. 34 C.F.R. § 106.41 (a) (emphasis added), with a limited exception stating that "a recipient *may* operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id.* § 106.41(b) (emphasis added). The only thing mandated by the regulation is that "where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited," members of the "excluded sex" must be allowed to try out for the team unless it is a contact sport. 34 C.F.R. § 106.41(b). Subsection (c) of the regulation further requires schools to provide "equal athletic opportunity," listing factors for recipients to consider when determining whether "equal athletic opportunity" is available, but does not identify sex separation as a relevant factor for consideration. *Id.* § 106.41(c). Instead of requiring schools to provide separate teams, the regulation "simply takes a neutral stand on the subject." *Force by Force v. Pierce City R-VI Sch. Dist.*, 570 F. Supp. 1020, 1024–25 (W.D. Mo. 1983) (holding that Title IX allows mixed competition in contact sports); *cf. Gordon v. Jordan Sch. Dist.*, No. 21-4044, 2023 WL 34105, at *4 (10th Cir. Jan. 4, 2023) (emphasis in original) ("[J]ust because the Constitution *permits* separate teams for girls and boys doesn't mean that the Constitution *requires* separate teams.").

Despite Plaintiffs' assertions to the contrary, the regulations do not provide a right for

4

cisgender girls to lose only when competing against other cisgender girls. Plaintiffs provide no support whatsoever for their bare assertions that the regulation "*requires* sex-separation where male [sic] participation in events results in any exclusion or denial to [cisgender] female athletes." Opp. 20 (citing nothing) (emphasis in original). Rather, as the 1979 Policy Interpretation makes clear, sex-separated teams in non-contact sports such as track and field are required only if "[m]embers of the excluded sex do not possess sufficient skill to be selected for a single integrated team or to compete actively on such a team if selected." *Id.* § VII.C.4.b(3). The test is "active[] participat[ion]," not the ability to win every contest. Thus—as even Plaintiffs' own cited sources establish—"a school would not comply with Title IX if it disbanded 'its women's teams and opened up its men's teams to women, *but only a few women were able to qualify for the men's teams*.'" Opp. 20 (quoting Letter to the Chief State School Officers, Title IX Obligations in Athletics, U.S. Dep't of Educ. (Sept. 1975)) (emphasis added). *See also Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 962 (9th Cir. 2010) (holding that female wrestlers stated Title IX claim where, "[a]s a result of the new requirement that they compete against men under men's rules, [all] the female students were unable to participate on the wrestling team"); *Brooks v. State Coll. Area Sch. Dist.*, 643 F. Supp. 3d 499, 508 (M.D. Pa. 2022) (concluding that "[m]erely allowing female athletes to show up for co-ed tryouts is not enough to satisfy Title IX," where "none of those slots were offered to interested females" afterwards).

That is not what happened here. Intervenors recounted Plaintiffs' many achievements in the Motion to Dismiss, *see* Mot. 8-12, 22-24, and Plaintiffs do not contest the accuracy of those facts or their suitability for judicial notice. The cisgender Plaintiffs successfully tried out and made their respective teams; they competed throughout the season and advanced to post-season competition; and they won a wide array of awards and recognition, including when competing

5

against Andraya and Terry in direct competition. The fact that these particular Plaintiffs did not win *every* competition does not mean that they were denied competitive opportunities under Title IX. And Plaintiffs fail to plausibly allege that presence of a grand total of two transgender girls created an aggregate system-wide imbalance that would be sufficient to support a Title IX claim— especially in light of the fact that girls in Connecticut are already participating on boys' sports teams. *See* Mot. 26-27.[3]

Plaintiffs go through the motions of attempting to fit their claims into the 1979 Policy Interpretation's framework for "effective accommodation" and "equal treatment" claims. Opp 28-33. But instead of attempting to satisfy the 1979 Policy Interpretation's well-established tests, Plaintiffs unilaterally redefine the meaning of key terms to suit their purposes. For example, as used in the 1979 Policy interpretation, the term "participation opportunity" is specifically defined as membership on a team. *See* Mot. 24-25. But because that definition does not match Plaintiffs' policy preferences, Plaintiffs unilaterally redefine participation opportunity as "win[ning] a

---

[3] Plaintiffs assert that Title IX "does not contain the 'no overall harm, no foul' view that Defendants advocate." Opp. 24. But, in the unique context of evaluating "equal athletic opportunities," that is precisely what the regulation requires. The regulation's guarantee of "equal athletic opportunity for members of both sexes," 34 C.F.R. § 106.41(c), "proceeds according to an impact-based model of discrimination that is . . . group-focused or class-wide" and "[o]nly when the institution, in a broad-spectrum inquiry, is first found to be in violation of Title IX . . . does the question of individual or group causes-of-action for relief properly arise." *Beasley v. Ala. State Univ.*, 966 F. Supp. 1117, 1125 (M.D. Ala. 1997). As the 1979 Policy Interpretation explains, "[t]he regulation frames the general compliance obligations of recipients in terms of program-wide benefits and opportunities," which "protects the individual as a student-athlete, not as a basketball player, or swimmer." *Parker v. Franklin Cnty. Sch. Corp.*, 667 F.3d 910, 919 (7th Cir. 2012) (quoting 44 Fed. Reg. at 71,422). Thus, "the Policy Interpretation contemplates that a disparity disadvantaging one sex in one part of a school's athletics program can be offset by a comparable advantage to that sex in another area." *McCormick*, 370 F.3d at 293. In this respect, claims for denial of equal athletic opportunity are different from other Title IX claims—such as claims based on a categorical exclusion from sports teams—which are assessed at the level of individuals, not groups. *See B.P.J.*, 98 F.4th at 563.

championship or advanc[ing] past the preliminary race." Opp. 30 (citing nothing). Similarly, Plaintiffs argue that participation opportunities cannot be "illusory." *See id*. But, as the underlying sources explain, an "illusory" participation opportunity is a specific term that refers to "unfilled slots" on a team that exist on paper but "are not filled by actual athletes." Off. Civ. Rts., U.S. Dep't of Educ., Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (Jan. 16, 1996); *see Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 101 (2d Cir. 2012); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 856 (9th Cir. 2014). A participation opportunity does not become "illusory" whenever a particular athlete fails to win every competition.

In short, the plain text of Title IX says nothing about athletics; the plain text of 34 C.F.R. § 106.41 permits sex-separated sports in specific circumstances but imposes no requirement of sex separation; and the plain text of the 1979 Policy Interpretation requires sex-separated teams if, and only if, women lack the ability to be "selected for" or "compete actively" on a mixed team. Because Plaintiffs fail to plausibly allege that they and other cisgender girls lacked the ability to be selected for or compete actively in athletic events with Andraya and Terry, Plaintiffs have failed to state a claim on which relief can be granted.

## CONCLUSION

Intervenor-Defendants' motion to dismiss for failure to state a claim should be granted.

Respectfully submitted,

/s/ Joshua Block
Joshua Block*
Ria Tabacco Mar*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
jblock@aclu.org

/s/ Elana Bildner
Elana Bildner (ct30379)
Dan Barrett (ct29816)
ACLU Foundation of Connecticut
765 Asylum Avenue, 2nd Floor
Hartford, CT 06105
(860) 471-8475
ebildner@acluct.org

*Counsel for Andraya Yearwood and Terry Miller*

*Admitted *Pro Hac Vice*