IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SELINA SOULE, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No. 3:20-cv-00201-RNC |
| | ) | |
| v. | ) | |
| | ) | |
| CONNECTICUT ASSOCIATION OF SCHOOLS, INC. *et al*, | ) | May 24, 2024 |
| | ) | |
| *Defendants*, | ) | |
| | ) | |

**REPLY BRIEF BY THE CIAC AND THE BOARD DEFENDANTS**

In their Motion to Dismiss, the Connecticut Association of Schools, Inc., d/b/a/ Connecticut Interscholastic Athletic Conference ("CIAC") and the Board of Education defendants (collectively "Defendants") adopted the substantive arguments made by the Intervening Defendants in their Motion to Dismiss. Defendants again adopt the arguments set forth in the Intervening Defendants' reply brief. (Ecf. 219) To extent those arguments do not dispose entirely of Plaintiffs' Third Amended Complaint ("TAC"), Defendants' Motion to Dismiss argues that: (1) Plaintiffs' claims for monetary damages are barred by the *Pennhurst* doctrine; and (2) Plaintiffs failed to state a claim against the Glastonbury, Canton, and Danbury Boards of Education ("the Home Schools"). Nothing in Plaintiffs' Objection ("Obj.") rebuts these arguments. Therefore, Defendants' Motion to Dismiss should be granted.

**I.   PLAINTIFF'S DAMAGES CLAIMS ARE BARRED BY *PENNHURST*.**

It is clear that the En Banc majority opinion vacated the *Pennhurst* portion of this Court's prior opinion on the "narrow ground" that the Court should address the question of adequate notice under *Pennhurst* at or around the time it addressed the merits of the Title IX

1

claim. Meaning, the En Banc court reversed on a timing issue, not a substantive one. The En Banc decision does not address the substance of this Court's prior *Pennhurst* ruling, which found that "[t]here can be no doubt that the clear notice required by *Pennhurst* is lacking here." (Ecf. 178, pg. 22). Defendants' Motion to Dismiss the Third Amended Complaint argues that the Court should quickly reach the same conclusion for the same reasoning now.

Nevertheless, the Objection neither mentions this Court's prior opinion, nor addresses its reasoning. The Objection fails to address the Court's prior analysis of:

- The guidance OCR issued on this topic from 2014-2020 (Ecf. 178 at 23-25);
- The line of cases the Court believed demonstrated that the Defendants lacked clear notice (*Id*. at 26-27)
- Plaintiffs' failure to cite any case permitting liability for conduct that was approved by the agency responsible for providing guidance (*Id*. at 26 n.15);
- The line of cases cited by the Court that "consistently held that Title IX requires schools to treat transgender students consistent with their gender identity." (*Id*. at 28-29).

Instead, Plaintiffs merely regurgitate a part of the arguments made in response to the first motion to dismiss-- that *Pennhurst*'s clear notice requirement does not apply to intentionally adopted official policies, like the CIAC policy. (*See, e.g.*, Opp. at 37)(*see also* Ecf. 154 at 54; arguing that "the complaint plausibly alleges intentional discrimination. SAC ¶¶ 124-132. If Defendants intentionally violated Title IX, then damages are not barred by *Pennhurst*."). The Court appropriately rejected this argument last time, because Plaintiffs' argument "rel[ied] on cases involving claims of sexual harassment in violation of Title IX, which are readily distinguishable from the plaintiffs' claims of denial of equal treatment and

effective accommodation." (Ecf. 178 at 27). Nothing in Plaintiffs' objection not this motion compels the Court to reach a different conclusion.[1]

The CIAC Policy is facially sex-neutral, making no distinction between the treatment of males and females, and Plaintiffs do not claim that the CIAC intended for girls who are transgender to prevail against cisgender females in races or other athletic events. Instead, Plaintiffs simply assert that the CIAC voluntarily adopted and applied its policy, which they contend leads to alleged negative consequences on cisgender female participants. This claim bears the hallmarks of disparate impact, i.e., *unintentional* discrimination. As this Court is aware, though, Title IX bars "intentional *discrimination* on the part of a [funding] recipient." *Pederson v. La. State Univ.*, 213 F.3d 858, 880 (5th Cir. 2000) (emphasis added).

Defendants reiterate, as they did in response to Plaintiffs' objection to their first motion to dismiss, that the cases cited by Plaintiffs do not address the argument made by Defendants. First, this is not a "deliberate indifference" case. *See, e.g.*, *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). Cases addressing "deliberate indifference" turn on *respondeat superior* liability for the sexual harassment between students, a teacher against a student, and/or between school staff members, and stand for the position that to hold a school district liable for that sexual harassment, it must have actual knowledge (rather than

---

[1] Plaintiff's expanded *Pennhurst* argument cites repeatedly to Judge Menashi's opinion concurring in the En Banc decision. Reliance on a concurring opinion that addresses an issue not addressed much less decided by En Banc majority opinion is inappropriate. Moreover, Judge Menashi's reasoning is flawed for many of the same reasons set forth in the text above, in the original panel opinion (Case 21-1365, Doc. 241-1 at 22-29), and in Judge Chin's opinion dissenting in part from the En Banc majority decision, which was joined by five of his colleagues in relevant part. (Case 21-1365, Doc. 428 at 38-48). This Court should disregard Plaintiff's citations to and reliance on Judge Menashi's concurring opinion.

constructive knowledge[2]) that sexual harassment occurred. *Id*. at 642 ("[W]e concluded that the [school] district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge.") (*citing Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998) (under Title IX, a school is liable for sexual harassment only if it had actual knowledge of harassment and failed adequately to respond); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) ("Retaliation against a person because [they] complained of sex discrimination is [a] form of intentional sex discrimination encompassed by Title IX's private cause of action."). In these types of cases, imposing this deliberate indifference standard ensures that any Title IX violation is "attributable to the funding recipient," rather than its agents. *Jackson*, 544 U.S. at 183. This standard honors Congressional intent because "an award of damages in a particular case might well exceed a recipient's level of federal funding," making it unfair and anomalous to hold the entity liable based "on principles of constructive notice." *Gesber*, 524 U.S. at 287-90. As the Sixth Circuit appropriately noted, cases such as *Gesber*, *Davis*, and *Jackson* alleging "deliberate indifference to sexual harassment...are not readily analogous to" claims for denial of equal athletic opportunity. *Horner v. Kentucky High Sch. Athletic Ass'n.*, 206 F.3d 685, 693 (6th 2000), a point this Court reiterated when ruling on Defendants' prior Motion to Dismiss. (Ecf. 178 at 27).

---

[2] This honors Congressional intent because "an award of damages in a particular case might well exceed a recipient's level of federal funding," making it unfair and anomalous to hold the entity liable based "on principles of constructive notice." *Gebser*, *v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287-90 (1998).

Second, Plaintiffs' argument ignores the Supreme Court's clear directive that a litigant invoking a spending clause statute must establish, in addition to anything else, that "the funding recipient engage[d] in intentional conduct that *violates the clear terms of the statute*." *Davis*, 526 U.S. at 642 (emphasis added). Accordingly, a plaintiff must plead and prove "conduct that violates the clear terms of the relevant statute" *in addition to* linking the alleged violations to "an official with power to correct them." *Barnes*, 536 U.S. at 186-87. Given the potential unfairness of surprising a federal-funding recipient with a post hoc money judgment, damages are available only if there is "no question as to what the recipient's obligation under the program was." *Guardians Ass'n v. Civ. Serv. Comm'n*, 463 U.S. 582, 597 (1983) (cited in *Davis*, 526 U.S. at 641); *accord Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296 (2006)* (state official must "clearly understand" pertinent statutory obligations).

As the Supreme Court has held, Title IX's plain terms unquestionably place on a funding recipient the duty not to tolerate sexual harassment in school, i.e., not be deliberately indifferent to it. *Davis*, 526 U.S. at 643. So too is a school's obligation not to retaliate against a sex-discrimination complainant. *See Jackson*, 544 U.S. at 183. But the same is not true of an alleged duty not to enforce policies, like the CIAC Policy, that permit transgender students to participate in school sports according to their gender identities. In essence, Plaintiffs sought to enshrine this uncertain duty in law via their now-moot claims for prospective injunctive relief. As this Court already found, cases decided before this lawsuit was brought "consistently held that Title IX requires schools to treat transgender students consistent with their gender identity." (Ecf. 178 at 28-29)(citing cases).

Third, as already noted, this Court previously found that Plaintiffs failed to cite any case permitting liability in the form of monetary damages for conduct that was approved by the agency responsible for providing guidance. (*Id*. at 26 n15). Plaintiffs still do not cite any such case, which is not surprising given that imposing liability in such a situation is contrary to the rationale of *Pennhurst*.³ That is aptly demonstrated here, where OCR issued guidance in 2014, 2015, and 2106 on this exact topic, "stating unequivocally that 'transgender students must be allowed to participate in such activities . . . consistent with their gender identity.'" (Ecf. 178 at 23)(quoting the 2016 Guidance); *see also Davis*, 526 U.S. at 643 (noting that "the regulatory scheme surrounding Title IX has long provided funding recipients with notice that they may be liable for their failure to respond to the discriminatory acts of certain nonagents.").

Plaintiffs reliance on *Mansourian v. Regents of University of California,* 602 F.3d 957, 962 (9th Cir. 2020), in support of its argument is misplaced. In *Mansourian*, there was no women's wrestling team at the university, but "a handful of women wrestlers participated in what was largely a men's team, practicing with the men and receiving coaching from [the head coach]." *Id*. at 962. Women wrestlers competed only against other women and used international freestyle rules. OCR action began when the university later banned women from the team. *Id* at 963. To resolve the dispute, the university again allowed women to participate on the men's team provided they could beat the men in their weight class under men's wrestling rules, effectively making women unable to participate. *Id*. The issue before the court was whether Title IX required pre-suit notice, to which the court answered no. . The court

---

³ Indeed it would create the anomalous situation where an entity needs to expose itself to litigation for alleged discrimination against female transgender athletes because a court might at some future date determine that the agency guidance was wrong. There can be no finding of intentional discrimination against the plaintiffs in the facts of this case.

reasoned that "[d]ecisions to create or eliminate teams or to add or decrease roster slots for male or female athletes are official decisions" about which an institution already knows. *Id*. at 968. Indeed, the court noted that the university at the time already had "ongoing obligations to certify compliance with Title IX's athletics requirements and to track athletics gender equity data" pursuant to Department of Education regulations to *Id*. Specifically, universities had to report and make available to students the number of undergraduates and athletes, broken down by sex, as well as sex-segregated data on operating expenses, coach salaries, athletic scholarships, recruiting expenditures, and revenues. *Id* Thus, according to the court, a pre-suit notice from the plaintiffs was not necessary in that situation.

The situation in *Mansourian* is the opposite of the situation here, where OCR has issued specific guidance regarding transgender athletes and the CIAC Policy complied with that guidance. (Ecf. 178 at 23)(discussing OCR's guidance). As this Court previously stated, *Pennhurst* itself demonstrates that it would "strain credulity" to impose liability in a situation where parties rely on the relevant government agency's interpretation of a statue.[4] (Ecf. 178 at 26 n15). In addition, cases decided before this lawsuit was filed "consistently held that Title IX requires schools to treat transgender students consistent with their gender identity." (*Id*. at 28-29). Finally, *Mansourian* cites repeatedly to *Jackson*. As the Supreme Court emphasized in *Jackson*, "there can be no knowing acceptance of the terms of the contract if a State is unaware of the conditions imposed by the legislation on its receipt of funds." *Jackson*, 544 U.S. at 182 (cleaned up). For all of these reasons set forth above and in Defendants' opening brief, the

---

[4] In *Cummings v. Premier Rehab Keller, PLLC*, 596 US --- (April 28, 2022), the United States Supreme Court declined to impose emotional distress damages for violations of Section 504 of the Rehabilitation Act of 1973. This case reinforces the importance of adequate notice to recipients of federal funds before liability can be imposed.

Court should once again find that "[t]here can be no doubt that the clear notice required by *Pennhurst* is lacking here." (Ecf. 178, pg. 22).

## II. PLAINTIFFS HAVE FAILED TO ALLEGE THAT TITLE IX PROVIDES A CAUSE OF ACTION AGAINST THEIR HOME SCHOOLS.

In the Third Amended Complaint, Plaintiffs Soule, Smith, and Miller brought claims against the schools they attended, the Home Schools. *See* TAC ¶¶ 10–13. Defendants moved to dismiss the claims against the Home Schools because Plaintiffs failed to plead any plausible claims against the Home Schools. Nothing in the Objection alters this conclusion.

First, Plaintiffs fail to distinguish between the schools attended by Plaintiffs – the Home Schools – from the schools attended by Ms. Yearwood and Ms. Edwards – Cromwell and Bloomfield, respectively. It is only the Home Schools that seek dismissal on these grounds because Plaintiffs do not claim that the Home Schools sponsored any athlete who was transgender on the their track teams. That should be the end of the inquiry.

Second, Plaintiff's argument is nothing that unsupported rhetoric. Plaintiffs do not cite to a single case. They do cite the May 15, 2020 OCR determination, but grossly mischaracterize the nature of its reversal. Although they claim it was merely reversed on procedural grounds, that is incorrect. In fact, on February 21, 2021, Suzanne Goldberg, Acting Assistant Secretary for Civil Rights, advised the parties that OCR "hereby withdraws…the underlying findings and determinations" and that they "*should not be relied upon in this or any other matter*." (Ecf. 172-1 at 3)(emphasis added).

Third, Plaintiff's argument amounts to nothing more than a claim that participating in the CIAC alone is sufficient for them to state a claim against the Home Schools. But it is undisputed that the Home Schools did not have any athlete who was transgender participating

in the girls' track team who ran against Plaintiffs. In other words, the Home Schools could not have been the proximate cause of Plaintiffs' alleged injury. Indeed, had the Home Schools chosen not to participate in CIAC-sponsored track and field, Plaintiffs would not have had a track team on which to compete, thereby causing them injury. The Home Schools are part of the CIAC conference, and, therefore, are required to abide by the CIAC rules, which they did not create.

Thus, to the extent Plaintiffs' claims survive substantively, the Third Amended Complaint as brought against the Home Schools must be dismissed because the Home Schools did not cause Plaintiffs' alleged injury.

## CONCLUSION

For the foregoing reasons, the Third Amended Complaint should be dismissed in its entirety, with prejudice.

By: /s/ Peter J. Murphy

Peter J. Murphy (ct26825)
Linda L. Yoder (ct01599)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
(860) 251-5950
pjmurphy@goodwin.com
*Counsel for CIAC and Danbury Board of Education*


By:  /s/ Johanna G. Zelman

Johanna G. Zelman (ct26966)
FordHarrison, LLP
CityPlace II
185 Asylum Street, Suite 610
Hartford, CT 06103
(860) 740-1355
jzelman@fordharrison.com
*Counsel for Glastonbury, Canton, Bloomfield, and Cromwell Boards of Education*